# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **COMPASS MARKETING, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Case Number: 1:22-cv-00379-GLR** |
| | § | |
| **FLYWHEEL DIGITAL LLC et al.,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |
| | § | |
| | § | |

## RESPONSE IN OPPOSITION TO MOTION TO DISMISS OF DEFENDANTS FLYWHEEL DIGITAL LLC, JAMES COLUMBUS "CHIP" DIPAULA, JR., PATRICK MILLER, AND ASCENTIAL PLC

## <u>TABLE OF CONTENTS</u>

**Page**

I.     THE COMPLAINT MORE THAN EXCEEDS THE NOTICE PLEADING STANDARD FOR TRADE SECRET MISAPPROPRIATION UNDER THE DTSA AND MUTSA (COUNTS I AND II) ..................................................... 6

    A.    The Complaint Adequately Pleads the Misappropriated Trade Secrets ............... 6

    B.    The Complaint Adequately Alleges All Elements of a Protectable Trade Secret.................................................................................................................... 9

        1.    The Trade Secrets Were Independently Developed and Not Generally Known .................................................................................... 9

        2.    The Trade Secrets Are Not Readily Ascertainable Through Proper Means ................................................................................................ 11

II.    COMPASS ADEQUATELY PLEADS ITS RICO CLAIMS (COUNTS III & IV) ....... 13

    A.    Compass Pleads the Requisite Predicate Acts to Establish a Pattern of Racketeering Activity Against the Flywheel Defendants.................................... 13

    B.    Compass Satisfies the Statutory Requirement That the RICO Enterprise Be Sufficiently Distinct.......................................................................................... 15

    C.    The Complaint Alleges Collaboration and Agreement Between the Defendants ....................................................................................................... 16

III.   COMPASS ADEQUATELY PLEADS EACH OF ITS STATE LAW CLAIMS .......... 17

    A.    Compass Alleges a Plausible Breach-of-Contract Claim .................................... 17

    B.    Compass Alleges Plausible Claims for Tortious Interference ............................ 18

    C.    Compass Alleges a Plausible Unfair Competition Claim .................................... 19

    D.    Compass Alleges Plausible Claims for Unjust Enrichment................................. 19

    E.    Compass's Claims for Aiding and Abetting and Conspiracy Are Tied to an Underlying Tort ............................................................................................... 20

    F.    The Claim for Fraudulent Concealment Satisfies the Rule 9(b) Pleading Standard ............................................................................................................ 21

IV.   THE COURT HAS PERSONAL JURISDICTION OVER ASCENTIAL .................... 22

    A.    The Conspiracy Doctrine Confers Personal Jurisdiction Over Ascential........... 22

    B.    Ascential's Business Transactions in Maryland Confer Specific Jurisdiction......................................................................................................... 23

    C.    The Court Should Exercise Personal Jurisdiction Where There Is a Colorable RICO Claim ........................................................................................ 25

V.     DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED BECAUSE COMPASS'S CLAIMS ARE TIMELY ........................................................................ 25

    A.     The Trade Secret Misappropriation Allegations Are Timely ............................. 26

         1.     The Limitations Period for the Trade Secret Claims Accrues on the Date of Compass's Reasonable Notice of the Misappropriation ............. 26

         2.     The Continuous Violations Doctrine Tolls the Statutes of Limitations Based on the Ongoing Use of Compass' Trade Secrets ....... 29

    B.     The Racketeering Allegations and State Law Claims Are Timely ..................... 29

         1.     The Discovery Rule Tolled the Statute of Limitations Until After February 2019 ......................................................................................... 30

         2.     The Continuous Violations Doctrine Tolls the Statutes of Limitation for the Defendants' Ongoing Misconduct............................. 31

         3.     The Statutes of Limitations Were Tolled Until Compass Was Controlled by a Disinterested Majority of Nonculpable Directors......... 32

    C.     Fraudulent Concealment Tolls the Statutes of Limitations for All Claims ........ 33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,
   483 U.S. 143 (1987) ...................................................................................................30

*Albert S. Smyth Co., Inc. v. Motes*,
   No. 17-cv-677, 2018 WL 3635024 (D. Md. July 31, 2018) .....................................8

*Armstrong v. Nat'l Shipping Co. of Saudi Arabia*,
   No. 13-cv-3702, 2015 WL 751344 (D. Md. Feb. 20, 2015) .....................................5

*Bank of Am. v. Jericho*,
   No. 15-cv-02953, 2017 WL 193498 (D. Md. Jan. 17, 2017) ..................................32

*Becker v. Noe*,
   No. 18-cv-931, 2019 WL 1415483 (D. Md. Mar. 27, 2019) ...................................25

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..............................................................................................4, 6

*Bornstein v. Poulos*,
   793 F.2d 444 (1st Cir. 1986) ..................................................................................32

*Brightview Grp. LP v. Teeters*,
   No. 19-cv-2774, 2021 WL 1238501 (D. Md. Mar. 29, 2021) ...................................6

*Brightview Grp. LP v. Teeters*,
   441 F. Supp. 3d 115 (D. Md. 2020) ........................................................................19

*C&R Caulking, LLC v. Bank of Am., N.A.*,
   No. 21-cv-499, 2021 WL 2661875 (D. Md. June 29, 2021) ...................................18

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*,
   334 F.3d 390 (4th Cir. 2003) ....................................................................................6

*Cawley v. Bloch*,
   544 F. Supp. 133 (D. Md. 1982) .............................................................................22

*Cedric Kushner Promotions, Ltd. v. King*,
   533 U.S. 158 (2001) ................................................................................................16

*Chambers v. King Buick GMC, LLC*,
   43 F. Supp. 3d 575 (D. Md. 2014) ..........................................................................33

*Coastal Lab'ys, Inc. v. Jolly*,
   502 F. Supp. 3d 1003 (D. Md. 2020) ....................................................................23

*Combs v. Bakker*,
   886 F.2d 673 (4th Cir. 1989) ...............................................................................5

*ComRent Int'l, LLC v. Smidlein*,
   No. 20-cv-3356, 2021 WL 252554 (D. Md. Jan. 26, 2021).....................................21

*ComRent Int'l, LLC v. Thomson*,
   No. 20-cv-3757, 2021 WL 1733471 (D. Md. May 3, 2021)....................6, 19, 20, 23

*Consulting Eng'rs Corp. v. Geometric Ltd.*,
   561 F.3d 273 (4th Cir. 2009) ...............................................................................5

*Cook v. Britton*,
   No. 11-cv-2305, 2012 WL 14024 (D. Md. Jan. 3, 2012).......................................19

*Dual Inc. v. Lockheed Martin Corp.*,
   383 Md. 151, 857 A.2d 1095 (2004) ....................................................................33

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
   637 F.3d 435 (4th Cir. 2011) ...............................................................................4

*EndoSurg Med., Inc. v. EndoMaster Med., Inc.*,
   71 F. Supp. 3d 525 (D. Md. 2014).................................................................1, 6, 9

*Equity Prime Mortg., LLC v. 1st Fin., Inc.*,
   No. 17-cv-3754, 2019 WL 859135 (D. Md. Feb. 22, 2019) (Russell, J.).........5, 7, 8

*Fed. Sav. & Loan Ins. Corp. v. Williams*,
   599 F. Supp. 1184 (D. Md. 1984) ........................................................................32

*Fin. Info. Techs., Inc. v. iControl Sys., USA, LLC*,
   No. 17-cv-190, 2018 WL 3391379 (M.D. Fla. June 12, 2018) ...............................27

*God's Little Gift, Inc. v. Airgas, Inc.*,
   No. 17-cv-004, 2017 WL 4366751 (W.D.N.C. Oct. 2, 2017) .................................27

*Goodman v. Praxair, Inc.*,
   494 F.3d 458 (4th Cir. 2007) (en banc) .........................................................25, 26

*GovernmentCIO v. Landry*,
   No. 20-cv-949, 2021 WL 1102333 (D. Md. Mar. 22, 2021) ...............................6, 13

*GTSI Corp. v. Wildflower Int'l, Inc.*,
   No. 09-cv-123, 2009 WL 1248114 (D. Md. Apr. 30, 2009) (Russell, J.)..................6

*Hardwire, LLC v. Ebaugh*,
   No. 20-cv-0304, 2021 WL 3809078 (D. Md. Aug. 26, 2021) .................................................13

*Harrison v. Westinghouse Savannah River Co.*,
   176 F.3d 776 (4th Cir. 1999) .................................................33

*Hecht v. Resol. Tr. Corp.*,
   333 Md. 324 (1994) .................................................32

*Hill v. Brush Engineered Materials, Inc.*,
   383 F. Supp. 2d 814 (D. Md. 2005) .................................................21

*IHS Glob. Ltd. v. Trade Data Monitor, LLC*,
   No. 18-cv-1025, 2021 WL 2134909 (D.S.C. May 21, 2021) .................................................9

*iSentium, LLC v. Bloomberg Fin. L.P.*,
   No. 17-cv-7601, 2020 WL 248939 (S.D.N.Y. Jan. 16, 2020) .................................................29

*Ivanti, Inc. v. Staylinked Corp.*,
   No. 19-cv-075, 2019 WL 4645325 (D. Utah Sept. 24, 2019).................................................27

*Johnson v. City of Shelby, Mississippi*,
   574 U.S. 10 (2014) (per curiam) .................................................5

*Jones v. Pohanka Auto N., Inc.*,
   43 F. Supp. 3d 554 (D. Md. 2014) .................................................20

*King v. Rubenstein*,
   825 F.3d 206 (4th Cir. 2016) .................................................5

*Kissinger Fin. Servs., LLC v. Kissinger*,
   No. 18-cv-3978, 2021 WL 1017400 (D. Md. Mar. 17, 2021) .................................................6, 8, 18

*Lake Shore Invs. v. Rite Aid Corp.*,
   67 Md. App. 743, 509 A.2d 727 (1986).................................................18

*Litz v. Md. Dep't of Env't*,
   434 Md. 623, 76 A.3d 1076 (2013) .................................................30

*Lumsden v. Design Tech Builders, Inc.*,
   358 Md. 435 (2000) .................................................30

*MacBride v. Pishvaian*,
   402 Md. 572 (2007) .................................................29, 31

*Mackey v. Compass Mktg., Inc.*,
   391 Md. 117, 892 A.2d 479 (2006) .................................................22

*MD Helicopters, Inc. v. Aerometals, Inc.*,
   No. 16-cv-2249, 2021 WL 978953 (E.D. Cal. Mar. 16, 2021) ..............................................28

*MicroStrategy Servs. Corp. v. Open Risk, LLC*,
   No. 14-cv-1244, 2015 WL 1221263 (E.D. Va. Mar. 17, 2015) ...............................................7

*Mosesian v. Peat, Marwick, Mitchell & Co.*,
   727 F.2d 873 (9th Cir. 1984) ..................................................................................................32

*Mylan Labs., Inc. v. Akzo, N.V.*,
   770 F. Supp. 1053 (D. Md. 1991) .............................................................................................5

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
   591 F.3d 250 (4th Cir. 2009) .....................................................................................................4

*OSI Sys., Inc. v. KM-Logix, LLC*,
   No. 20-cv-01577, 2021 WL 5987905 (E.D. Va. Dec. 17, 2021) ............................................11

*Phreesia, Inc. v. Certify Glob., Inc.*,
   No. 21-cv-678, 2022 WL 911207 (D. Md. Mar. 29, 2022) ...................................10, 19, 20, 23

*Rogers v. LJT and Assocs., Inc.*,
   No. 14-cv-2823, 2015 WL 11027599 (D. Md. Apr. 21, 2015) (Russell, J.)............................6

*Rojas v. Delta Airlines, Inc.*,
   425 F. Supp. 3d 524 (D. Md. 2019) ........................................................................................16

*S-E-A, Ltd. v. Cornetto*,
   No. 18-cv-1761, 2018 WL 3996270 (D. Md. Aug. 21, 2018) ................................................10

*Salinas v. United States*,
   522 U.S. 52 (1997).................................................................................................................15

*Shaw v. Brown & Williamson Tobacco Corp.*,
   973 F. Supp. 539 (D. Md. 1997) .............................................................................................33

*Spirax Sarco, Inc. v. SSI Eng'g, Inc.*,
   122 F. Supp. 3d 408 (E.D.N.C. 2015).......................................................................................9

*Synergetics USA, Inc. v. Alcon Labs., Inc.*,
   No. 08-cv-3669, 2009 WL 2016872 (S.D.N.Y. July 9, 2009)................................................29

*United States v. Turkette*,
   452 U.S. 576, 101 S. Ct. 2524, 69 L. Ed. 2d 246 (1981).......................................................16

**Statutes**

18 U.S.C. § 1314 ................................................................................................................15

18 U.S.C. § 1343 ................................................................................................................15

18 U.S.C. § 1832 ................................................................................................................30

18 U.S.C. § 1836(d) ...........................................................................................................26

18 U.S.C. § 1839(3) .........................................................................................................9, 11

18 U.S.C. § 1956 ................................................................................................................15

18 U.S.C. § 1961(5) ...........................................................................................................14

18 U.S.C. § 1962 ....................................................................................................14, 15, 16

18 U.S.C. §§ 1965 ..............................................................................................................25

Md. Code Ann. Com. Law § 11-1201(e) ..............................................................................9

Md. Code Ann. Com. Law § 11-1206(b) ............................................................................26

Md. Code. Ann., Cts. Jud. Proc. § 5-101 ...........................................................................30

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1) ...............................................................24

Uniform Trade Secrets Act, § 6 Comment .........................................................................26

**Other Authorities**

Fed. R. Civ. P. 8 .......................................................................................................... *passim*

Fed. R. Civ. P. 9 .......................................................................................................... *passim*

Fed. R. Civ. P. 12 .....................................................................................................4, 5, 25

S. Rep. No. 91–617, 76-77 .................................................................................................16

**INTRODUCTION**

Plaintiff Compass Marketing, Inc.'s ("Compass's") Complaint pleaded, in considerable detail, allegations setting out actionable claims for relief against Defendants Flywheel Digital LLC ("Flywheel"), James Columbus DiPaula ("DiPaula"), Patrick Miller ("Miller"), and Ascential plc ("Ascential") (hereinafter collectively referred to as the "Flywheel Defendants"). Those detailed allegations lay bare intersecting schemes by and among the Flywheel Defendants to misappropriate Compass's trade secrets, unfairly compete with Compass, tortiously interfere with Compass's client relationships, and breach confidentiality obligations owed to Compass, among other actionable conduct, all carried out in secret to unjustly enrich all conspirators.

At this stage, all factual allegations are deemed true and Compass is entitled to all factual inferences drawn in its favor. Accordingly, the Flywheel Defendants cannot evade accountability by filing a motion to dismiss that cherry-picks certain alleged facts, ignores others, and argues for the Court to accept disputed facts in their favor. While the examples of this strategy are innumerable in the motion to dismiss, one particularly glaring exemplar is the Flywheel Defendants' argument that "[o]ne can only *assume* that the eCommerce Guide (if it exists) would confirm Compass had no protectable trade secrets in 2014." Docket No. 23-1 at 4 ("FD Motion") (emphasis added). The Court cannot make such an ***assumption***; instead, Compass pleaded the existence of the eCommerce Guide and the protectable trade secrets reflected therein, and those allegations must be taken as ***true*** and all factual allegations must be ***construed in the light most favorable to Compass***. *EndoSurg Med., Inc. v. EndoMaster Med., Inc*., 71 F. Supp. 3d 525, 534 (D. Md. 2014) (citations omitted).

In short, the Court's duty at this stage is straightforward: to assess the plausibility of the allegations in view of the applicable legal principles. The facts pleaded in the Complaint establish timely allegations supporting all claims against the Flywheel Defendants pursuant to the notice

pleading standard under Federal Rule of Civil Procedure ("Rule") 8 for Counts I-IX, XI-XV, XVII-XX, and XXII-XXIII, and the heightened fraud-based pleading standard under Rule 9 for Counts X, XVI, and XXI and the fraud-based predicate acts in Counts III and IV. The motion to dismiss should be denied in its entirety.

## FACTUAL OVERVIEW

***Compass Positioned Itself for Success in the eCommerce Space.*** Compass began serving clients selling consumer packaged goods ("CPGs") in 1998 prior to the rise of eCommerce platforms. Compl. ¶ 2. After 2005, with the expansion of online retail, Compass tailored its business to optimally position CPG clients and their products on eCommerce platforms such as Staples.com, OfficeDepot.com, OfficeMax.com, SamsClub.com, Walmart.com and Amazon.com. *Id.* ¶¶ 2, 34. Compass spent more than a decade investing in and building out trade secrets and proprietary business strategies relating to its eCommerce offerings. *Id.* ¶¶ 43, 56. By 2013, those efforts set Compass apart. *Id.* ¶¶ 40-42. The rapid growth of the Amazon platform positioned Compass at the forefront of nontraditional channels of distribution for CPGs. *Id.* ¶ 40.

***DiPaula and Miller Stole Compass Trade Secrets and Other Proprietary Business Information to Unfairly Compete Against Compass.*** DiPaula and Miller, members of the Compass eCommerce team who had been trained exclusively at Compass, saw Compass's success in the early Amazon days and usurped Compass's market opportunity for themselves. *Id.* ¶¶ 45-47, 76, 79. Compass had invested in proprietary formulas, methods, processes, and protocols (as identified in paragraph 64 of the Complaint) that allowed Compass to analyze Amazon sales data and implement proprietary strategies that optimized sales and profitability for Compass's clients. *Id.* ¶¶ 56, 64. Compass, and only Compass, was able to "determine which Amazon promotional vehicles deliver[ed] the most value and under what circumstances." *Id.* ¶ 56. Compass relied on its trade secret and proprietary business strategies to harness a "unique line of sight into

[Amazon's] platform minutia [that] allowed Compass to develop and offer clients unparalleled advice and services" in the core areas of eCommerce, such as search optimization, merchandizing, pricing, content, graphic design, and supply chain operations. *Id.* ¶ 59.

DiPaula and Miller copied or otherwise retained access to a Compass step-by-step guide, *id.* ¶¶ 71, 74, 76-77, known as the eCommerce Guide, when they left Compass to launch Flywheel in 2014. The eCommerce Guide memorialized Compass's investment in its trade secrets and proprietary business information. *Id.* ¶ 63. It is the theft of the eCommerce Guide and the subsequent misuse of Compass's proprietary information that gives rise to the allegations of trade secret misappropriation, unfair competition, breach of contract, tortious interference, and other claims against the Flywheel Defendants. While Compass was aware of Flywheel's existence in the years after the departure of DiPaula and Miller, *e.g.*, *id.* ¶¶ 82-86, Compass had no way of knowing until January 2020, at the earliest, that Flywheel was using the exact methods, formulas, protocols, and strategies that were developed at Compass. *Id.* ¶¶ 184-91. That misuse continues today following Ascential's acquisition of Flywheel in November 2018 for an initial payment of $60 million with a possible $340 million available to Flywheel based on identified performance metrics. *Id.* ¶ 209.

DiPaula and Miller concealed not only the scheme to steal trade secrets and unfairly compete with Compass, but also the illicit funding that enabled them to execute the scheme. More than a year after DiPaula and Miller resigned from Compass, they conspired with Michael and Daniel White to embezzle Compass funds—funds that were (on information and belief) infused into Flywheel as startup capital. *Id.* ¶¶ 202-08. And within four years, that embezzled seed money paid many dividends when DiPaula and Miller sold Flywheel to Ascential after expanding into fourteen countries and experiencing astounding growth. *Id.* ¶¶ 209-12.

***Ascential Knowingly Perpetuates DiPaula and Miller's Scheme to Profit from Misuse of Compass Trade Secrets and Other Proprietary Business Information.*** Ascential, the London-based parent of Flywheel and current employer of DiPaula and Miller, became embroiled in DiPaula and Miller's scheme in November 2018 when Ascential began paying Flywheel's founders hundreds of millions of dollars as a de facto reward for Flywheel's ongoing tortious conduct. *Id.* ¶ 209. Today, Flywheel is part of Ascential, *id.* ¶ 210, and the Flywheel Defendants operate as a single entity to use Compass's trade secrets and other proprietary information to provide CPG clients with the exact "Amazon-specific" solutions, tools, and expertise that was developed by Compass. *Id.* ¶ 211.

Ascential comes to this lawsuit with detailed knowledge as to the harm that Flywheel has caused and continues to cause to Compass. Indeed, Ascential has been on notice of the ongoing trade secret theft and Flywheel's continued efforts to tortiously interfere with Compass's business since at least May 2021, when Flywheel's pre-acquisition conduct and the findings of Flywheel's investigation were made known to the Chairman of Ascential's Board. *Id.* ¶¶ 213-23.

## LEGAL STANDARD

**Notice Pleading Requirements Under Rule 8(a).** To survive a motion under Rule 12(b)(6), a complaint must contain "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff need not include "detailed factual allegations" to satisfy Rule 8(a)(2). *Id.* at 555. Maryland federal courts must "accept[] all well-pled facts as true and construe [] these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). In reviewing a Rule 12(b)(6) motion, a court must "draw all reasonable inferences [from the facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). The purpose

4

of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Equity Prime Mortg., LLC v. 1st Fin., Inc*., No. 17-cv-3754, 2019 WL 859135, at *3 (D. Md. Feb. 22, 2019) (Russell, J.) (quoting *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016)).

**Heighted Pleading Requirement Under Rule 9(b).**  Rule 9(b) requires particularity when pleading "fraud or mistake," while allowing "[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally."  Fed. R. Civ. P. 9(b).  Rule 9(b) "does not require the elucidation of every detail of the alleged fraud."  *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1074 (D. Md. 1991).  Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby, Mississippi*, 574 U.S. 10, 11 (2014) (per curiam).

**Rule 12(b)(2) Standard for Jurisdictional Challenges.**  A motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction challenges a court's authority to exercise its jurisdiction over the moving party.  *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).  A court may hold an evidentiary hearing or permit discovery as to the jurisdictional issue, but it also may resolve the issue on the basis of the complaint, motion papers, affidavits, and other supporting legal memoranda.  *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009); *see also Armstrong v. Nat'l Shipping Co. of Saudi Arabia*, No. 13-cv-3702, 2015 WL 751344, at *3 (D. Md. Feb. 20, 2015).  In the latter situation, a plaintiff need only make "a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge."  *Consulting Eng'rs Corp.*, 561 F.3d at 276.  When considering whether the plaintiff has made the requisite showing, "the court must take all disputed facts and reasonable inferences

in favor of the plaintiff." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

**ARGUMENT**

**I.    THE COMPLAINT MORE THAN EXCEEDS THE NOTICE PLEADING STANDARD FOR TRADE SECRET MISAPPROPRIATION UNDER THE DTSA AND MUTSA (COUNTS I AND II)**

The fact pattern presented here, where a former employee is accused of misappropriating trade secrets in order to unfairly compete with the former employer, routinely survives a motion to dismiss. *See, e.g.*, *ComRent Int'l, LLC v. Thomson*, No. 20-cv-3757, 2021 WL 1733471, at *1 (D. Md. May 3, 2021); *Brightview Grp. LP v. Teeters*, No. 19-cv-2774, 2021 WL 1238501 at *1-3 (D. Md. Mar. 29, 2021); *Kissinger Fin. Servs., LLC v. Kissinger*, No. 18-cv-3978, 2021 WL 1017400, at *2-3 (D. Md. Mar. 17, 2021).   For trade secret misappropriation claims, the plaintiff need only plead a ***plausible claim*** for violation of the DTSA and MUTSA.   *EndoSurg Med.*, 71 F. Supp. 3d at 546-47; *GovernmentCIO v. Landry*, No. 20-cv-949, 2021 WL 1102333, at *6 (D. Md. Mar. 22, 2021) (at the pleading stage, a plaintiff need only plausibly allege the existence of a trade secret and misappropriation).   This Court has applied *Twombly* to a trade secret misappropriation claim and emphasized that the inquiry is whether the alleged conduct is plausible in the context of all facts as pled.   *GTSI Corp. v. Wildflower Int'l, Inc.*, No. 09-cv-123, 2009 WL 1248114, at *7 (D. Md. Apr. 30, 2009) (Russell, J.).   If the allegations are plausible when taken together and construed in favor of Compass, the motion must be denied.   *Rogers v. LJT and Assocs., Inc.*, No. 14-cv-2823, 2015 WL 11027599, at *3 (D. Md. Apr. 21, 2015) (Russell, J.) (denying motion to dismiss where "[plaintiff] has provided a factual basis to establish a claim of misappropriation").

**A.    The Complaint Adequately Pleads the Misappropriated Trade Secrets**

Compass pleaded that the Compass-created eCommerce Guide compiled Compass's trade secrets and proprietary business information "into a step-by-step guide used to train the Compass

eCommerce team and execute on Compass's business strategy."  Compl. ¶ 63.  This compilation "memorialized years of research and work that Compass invested to develop its proprietary processes designed to increase and maximize its clients' sales on Amazon and other platforms." *Id.*  The Complaint's description of the contents of the eCommerce Guide satisfies the Rule 8 notice pleading requirements.  *See Equity Prime*, 2019 WL 859135, at *3.  Paragraph 64 of Compass's Complaint goes further, providing additional detail beyond what is required under the notice pleading standards.  In the Complaint, Compass identifies ten representative categories of trade secrets, including:

- formulas on which Compass relies;
- protocols developed by Compass to dissect Amazon sales data and generate client pricing recommendations;
- processes to optimize client supply-chain strategies when selling products on the Amazon platform; and
- processes to position client product offerings to enhance visibility on the Amazon platform in response to user searches.

Compl. ¶ 64.  The detailed itemization of representative trade secrets in paragraph 64 contradicts the erroneous contention by the Flywheel Defendants that there are no facts surrounding the claimed trade secrets.  During discovery, the parties will have an opportunity to gather additional information relating to the identified categories of trade secrets.  At the pleading stage, Compass has adequately provided notice as to the information it alleges was misappropriated.[1]

---

[1] The Flywheel Defendants seem to suggest that without access to the eCommerce Guide as an attachment to the Complaint, Compass cannot claim its contents as trade secrets.  FD Motion at 3.  There is no requirement that trade secret allegations need to be supported by exhibits attached to the Complaint, and the eCommerce Guide was not attached to the Complaint ***because of*** its contents—information entitled to trade secret status—and the inherent risks that would arise by submitting the Guide when there is no Protective Order yet in place.  *See, e.g.*, *MicroStrategy Servs. Corp. v. Open Risk, LLC*, No. 14-cv-1244, 2015 WL 1221263, at *7 (E.D. Va. Mar. 17, 2015), *on reconsideration*, 2015 WL 2126924 (E.D. Va. May 6, 2015) ("[T]rade secret protection is eviscerated when otherwise protected information is disclosed to others who have no obligation to protect its confidentiality.").

The Flywheel Defendants are also incorrect to suggest that Compass is limited to trade secret protection over the narrow trade secret categories of "proprietary algorithm, database, or software." FD Motion at 3. As an initial matter, Compass **has alleged** that it developed formulas or algorithms that were misappropriated. Compl. ¶¶ 64, 74. Moreover, the categories of information available for trade secret protection are not nearly as limited as the Flywheel Defendants suggest. Courts in this district have recognized a wide swath of competitive information as comprising protectable trade secrets. Indeed, in *Equity Prime*, this Court accepted as sufficient under the MUTSA the plaintiff's identification of "processes, procedures, methods, innovations and production" related to its business operations. 2019 WL 859135, at *6. Similarly, this Court has accepted as trade secrets under the DTSA "information about potential customers and their buying habits, a competitor's pricing, and business strategies." *Kissinger Fin.*, 2021 WL 1017400, at *7 (quoting *Albert S. Smyth Co., Inc. v. Motes*, No. 17-cv-677, 2018 WL 3635024, at *4 (D. Md. July 31, 2018)). Given that the categories of trade secrets pled in the Complaint are indistinguishable from the types of information that this Court has previously recognized as trade secrets, the Flywheel Defendants' narrow focus on algorithms, databases, and software is without merit. *See generally* Melvin F. Jager, Nontechnical Secrets, 1 Trade Secrets Law § 3:3 (May 2022 update) ("Trade secrets . . . could relate to nontechnical aspects of business, such as price codes, customer lists, economic studies, cost reports, and bookkeeping methods.").

Finally, the Flywheel Defendants' criticism of the representative trade secret categories fails to recognize that Compass alleged that the misappropriated trade secrets include **compilations** of materials. Compl. ¶ 64 ("Compilation of protocols to assist CPG clients navigating the competitive eCommerce landscape[.]"). It is "axiomatic that compilations of information receive trade secret protection" so long as the compilation satisfies the elements of a trade secret as defined

in the DTSA.  *IHS Glob. Ltd. v. Trade Data Monitor, LLC*, No. 18-cv-1025, 2021 WL 2134909, at *7 (D.S.C. May 21, 2021).  Where a plaintiff has developed lists compiling industry trade information over the course of years, as Compass has here, then those compilations are protected as trade secrets.  *Id.*; *see also EndoSurg Med.*, 71 F. Supp. 3d at 547 (concluding that compilations of customer preferences were trade secrets under the MUTSA); *Spirax Sarco, Inc. v. SSI Eng'g, Inc.*, 122 F. Supp. 3d 408, 426 (E.D.N.C. 2015) (finding that "old and new product prices" and other information related to products offered to or requested by previous consumers constituted trade secrets).  Here, in addition to the other nine categories presented in paragraph 64, Compass specifically pled a compilation of protocols as a protectable trade secret, and such a category is widely recognized as a trade secret.

> **B.      The Complaint Adequately Alleges All Elements of a Protectable Trade Secret**

The elements of a trade secret are the same under the DTSA and the MUTSA: a trade secret is information the owner has taken reasonable measures to keep secret and which derives independent economic value from being not generally known or not readily ascertainable through proper means.  *See* 18 U.S.C. § 1839(3); Md. Code Ann. Com. Law § 11-1201(e).  The Flywheel Defendants do not challenge the sufficiency of the pleadings relating to (1) reasonable measures to protect the trade secrets, or (2) the independent economic value of the trade secrets.  Compass addresses in turn the two statutory elements addressed in the motion.  FD Motion at 22.

> **1.      The Trade Secrets Were Independently Developed and Not Generally Known**

The Flywheel Defendants first argue, without support, that Compass has not alleged independent development.  *See* FD Motion at 22-24.  This position is contrary to the facts set forth in the Complaint, in which Compass alleged that it began developing its trade secrets and associated know-how for eCommerce strategies in 2005.  Compl. ¶ 34.  Between 2005 to 2014,

Compass made significant operational investments in its eCommerce business, *id*. ¶ 44, and, beginning in 2011, was one of the few companies granted access to Amazon vendor sales data, *id*. ¶ 54. Compass also alleged its requirement that employees, including DiPaula and Miller, sign confidentiality and non-disclosure agreements to protect confidential information. *Id*. ¶¶ 45, 47, 48. From at least 2011 onward, Compass exerted significant time, resources, investment, and employee effort to analyze the Amazon sales data and eCommerce algorithms in order to build its *proprietary formulas and platform*. *Id*. ¶ 56. Compass alleges that over a "long period of time" it compiled its "data-driven insights" to build out *proprietary* work product that is protected as trade secrets. *Id*. ¶¶ 56-58; *see also id.* ¶ 63 ("The eCommerce Guide memorialized years of research and work that Compass invested to develop its *proprietary processes* designed to increase and maximize its clients' sales on Amazon and other platforms.") (emphasis added).

Compass has more than satisfied the statutory requirement that it plead that the trade secrets were independently developed and not generally known by alleging that for years Compass worked on its own—fueled by its own investment—to develop trade secrets that it did not share with third parties.[2] *Phreesia, Inc. v. Certify Glob., Inc*., No. 21-cv-678, 2022 WL 911207, at *12 (D. Md. Mar. 29, 2022) (considering similar arguments and denying motion to dismiss because the plaintiff "paints a reasonably detailed picture of the alleged trade secrets at issue. . . It can be reasonably inferred from these allegations that the information Phreesia describes is not generally known in the industry or readily ascertainable through proper means"). Furthermore, Compass specifically

---

[2] The allegations here are not akin to the *S-E-A* case the Flywheel Defendants rely on. *S-E-A, Ltd. v. Cornetto*, No. 18-cv-1761, 2018 WL 3996270 (D. Md. Aug. 21, 2018). In that case, the plaintiff alleged that "its Microsoft Outlook client contact database [was] a trade secret." *Id*. at *2. Amassing an electronic address book of client contacts—an activity that nearly every Outlook user engages in—is very different from the years of investment and analysis alleged in Compass's Complaint. The *S-E-A* allegations relating to a 3D-scanning process are further inapposite because the descriptions of the alleged trade secrets there were too conclusory to be plausible. *Id*. at *3. Ultimately, the level of detail in Compass's Complaint and the specific allegations as to *how* the Compass trade secrets were developed cannot be reasonably compared to the pleadings the court encountered in *S-E-A*.

alleges that "the trade secrets at issue in this matter are not generally known or readily available to the public or Compass's competitors."  Compl. ¶ 231.

The Flywheel Defendants also seek dismissal based on the disputed factual question of whether the trade secrets could ***hypothetically*** be independently developed by a third party.  FD Motion at 22.  This is not an inquiry for the pleading stage.  At this stage, Compass must plausibly allege the existence of a trade secret, including whether the trade secret "was not generally known."  18 U.S.C. § 1839(3).  Once Compass states the pertinent facts, it survives a motion to dismiss.  It will later be the Flywheel Defendants' burden to prove independent derivation if they ultimately rely on that defense.  *See OSI Sys., Inc. v. KM-Logix, LLC*, No. 20-cv-01577, 2021 WL 5987905, at *4 (E.D. Va. Dec. 17, 2021) (explaining, at the summary judgment stage, that "[d]efendants ***offered proof*** of Mr. Kmec ***independently developing*** FARclause.com in August 2015 and of his progress at various stages in FARclause.com's development") (emphasis added).  Because the inquiry at this stage is whether Compass has satisfied the pleading requirements, the plausibility of the facts alleged in the Complaint should be determinative.

**2.     The Trade Secrets Are Not Readily Ascertainable Through Proper Means**

The Flywheel Defendants next argue that Amazon sales data is available through proper means and therefore Compass has not demonstrated the existence of a trade secret.  FD Motion at 23.  This argument misconstrues the allegations in the Complaint.  Although access to Amazon vendor data is scarce, Compl. ¶ 55, Compass is not alleging that access to the sales data alone qualifies as a trade secret.  It is similarly inaccurate to suggest that Compass avers trade secret protection "over how to use Amazon.com's online vendor portal."  FD Motion at 1.  Compass alleges that its internal efforts ***after receiving the Amazon sales data*** and the methods/processes/protocols that Compass implements to analyze the data and assist its clients in

11

*optimizing their business potential* on eCommerce platforms is entitled to trade secret protection. Importantly, the tools that Compass provides its clients to implement insights gleaned from Amazon sales data are not available through proper means.  Instead, DiPaula and Miller had access to the Compass trade secrets and, without permission, accessed Compass's assets to use the trade secrets, at Flywheel and later at Ascential, to compete with Compass.  Compl. ¶¶ 228-29, 232, 238.  Access to the Amazon sales data alone would not have driven Flywheel's undeserved success.  The allegation is that what drove Flywheel's, and now Ascential's, success is its reliance on *the Compass protocols compiled in the eCommerce Guide*.  *See id.* ¶¶ 57-65, 235.  These trade secrets could not have been reproduced at Flywheel or Ascential to unfairly compete with Compass *but for* the misappropriation and ongoing misuse subsequent thereto (i.e., access through improper means).  *Id.* ¶¶ 292-94.

The Flywheel Defendants' final "proper means" argument is that the eCommerce Guide was later automated on software and therefore should be construed as "general industry knowledge."  FD Motion at 23.  This position mistakenly asks the Court to draw factual interferences against Compass at the pleading stage and relies on a misunderstanding of the CDAP software tool.  The CDAP software tool is "open-source," meaning that the program is publicly available, but the *modified code (i.e., customized code)* used at Compass is and *remains proprietary, even today*.  Compass specifically pled that the source code for the CDAP software tool that Compass uses today can only be accessed by two Compass employees.  Compl. ¶ 72 ("Today, only two Compass employees have access to the CDAP source code.").

Nonetheless, the focus on the CDAP software tool is completely misplaced since Compass alleges that the contents of the eCommerce Guide were first misappropriated at the time DiPaula and Miller started Flywheel in 2014.  *Id.* ¶¶ 65, 67, 72.  By the time that Compass migrated from

the hard-copy eCommerce Guide to the CDAP platform around 2016, *id*. ¶ 55, the trade secret misappropriation ***had already taken place*** and Flywheel's tortious conduct was already underway.

The only inquiry for the Court at this stage for the DTSA and MUTSA claims is whether Compass has stated facts that satisfy the Rule 8 notice pleading standard. *GovernmentCIO*, 2021 WL 1102333, at *5-6. Because Compass has provided robust allegations that more than meet this standard, the arguments challenging the existence of a trade secret fail.

*     *     *

In sum, when it comes to the trade secret allegations, the Complaint is determinative. Compass has satisfied the pleading requirements for the allegations under the DTSA and MUTSA.

## II.    COMPASS ADEQUATELY PLEADS ITS RICO CLAIMS (COUNTS III & IV)

The Defendants contend that the Complaint fails to establish the requisite predicate acts against Ascential, Flywheel, DiPaula, and Miller to allege a valid RICO enterprise. FD Motion at 24-25. Their argument is premised on the Court construing the facts in favor of the ***Flywheel Defendants***—the polar opposite of the standard at the motion-to-dismiss stage. Instead, when the well-pled facts of the Complaint are accepted as true, the only conclusion is that Compass has more than sufficiently alleged four predicate acts and identified the enterprise built on the illicit collaboration by and among Ascential, Flywheel, DiPaula and Miller, and the White Defendants.

### A.    Compass Pleads the Requisite Predicate Acts to Establish a Pattern of Racketeering Activity Against the Flywheel Defendants

The Flywheel Defendants contend that the only predicate act alleged against them is the theft of trade secrets. FD Motion at 25. In support of their argument, the Flywheel Defendants cite the *Hardwire* decision, where the court held that the trade secret predicate offense does not apply to trade secret theft before May 11, 2016. *Id.* at 17 (citing *Hardwire, LLC v. Ebaugh*, No. 20-cv-0304, 2021 WL 3809078, at *7 (D. Md. Aug. 26, 2021)). This argument completely

13

disregards that Compass pleads **three predicate acts in addition to the trade secret theft**. Separately, Count IV in the Complaint, the RICO conspiracy count, does not require that a defendant commit or agree to commit two or more predicate offenses.

Compass asserts claims under Sections 1962(c) and (d) of the RICO Act.  Compl. ¶¶ 59-63.  To state a claim for a Section 1962(c) violation, a plaintiff must allege a "pattern of racketeering activity."  18 U.S.C. § 1962(c).  The pattern element requires at least two acts of racketeering activity, also referred to as "predicate acts."  18 U.S.C. § 1961(5).  The Complaint more than meets this standard in alleging four predicate acts attributable to Flywheel, DiPaula, and Miller.[3]  The first predicate act is trade secret misappropriation, and the other three predicate acts arise from the severance payment scheme.  Compl. ¶¶ 251-52, 255(b), 261-62, 265(b).  The severance payment scheme, standing alone, is sufficient to demonstrate a pattern of racketeering:

- Daniel White caused **two separate checks** to be issued to DiPaula on October 14, 2015 and December 9, 2015.  *Id.* ¶¶ 203-05.

- Michael White caused a Compass Marketing check to be issued to Daniel White for "Final Payments to James DiPaula and Patrick Miller" on December 1, 2015.  *Id.* ¶ 204.

- Michael White and Daniel White issued the checks **under the false premise** that Compass owed DiPaula and Miller severance payments.  *Id.* ¶¶ 203, 206.

- The payments were made "to DiPaula and Miller to support their funding and operation of Flywheel."  *Id.* ¶ 207.

---

[3] One day after the Flywheel Defendants filed their motion to dismiss in this case, Ascential released to the public its 2021 Annual Report (attached as Exhibit "A").  In it, Ascential disclosed "the risk of **fraudulent revenue recognition**, in particular the risk that Flywheel Digital revenue is **recorded in an inappropriate financial year** and the risk that Group and component management may be in a position to make **inappropriate accounting entries** and the risk of **bias in accounting estimates and judgements** such as the related accrued revenue." Ex. A. at 135 (emphasis added). This information is highly relevant to Compass's lawsuit and its RICO claims because it relates to Compass's allegation that Ascential failed to properly perform due diligence on the Flywheel acquisition (Compl. ¶ 220); that Ascential had notice of Flywheel's misappropriation, interference, and unfair competition (Compl. ¶ 213); and that, notwithstanding the notice Compass provided to Ascential in 2021, "Ascential has chosen to allow the harms to continue and to escalate, continuing to profit from same as the parent company of Flywheel. Ascential's endorsement of and continued facilitation of Flywheel's wrongful conduct renders Ascential a participant in the ongoing misappropriation and unfair competition, as well as an active participant in the ongoing conspiracy." Compl. ¶ 223.

Each of the fraudulent payments identified in the Complaint is a ***separate violation*** of money laundering (18 U.S.C. § 1956), wire fraud (18 U.S.C. § 1343), and financial institution fraud (18 U.S.C. § 1314).

Furthermore, a defendant can violate Section 1962(d) without "himself commit[ting] or agree[ing] to commit two or more" acts of racketeering activity.  *Salinas v. United States*, 522 U.S. 52, 65-66 (1997).  Section 1962(d) merely provides that "[i]t shall be unlawful for any person to ***conspire*** to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d) (emphasis added).  There is no requirement that a defendant ***commit*** "some overt act or specific act in the [RICO statute], unlike the general conspiracy provision applicable to federal crimes, which requires that at least one of the conspirators have committed an 'act to effect the object of the conspiracy.'"  *Salinas*, 522 U.S. at 61.  By the plain language of the statute, Ascential can be liable for the RICO conspiracy allegations regardless of whether Ascential was involved in the trade secret theft.  *See* FD Motion at 25.  Because Compass alleges that Ascential conspired with Flywheel and its employees DiPaula and Miller to carry out the pattern of racketeering, the allegations against Ascential do not turn on whether Ascential committed an overt act.  The claims arising under Sections 1962(c) and 1962(d) should survive.

### B.    Compass Satisfies the Statutory Requirement That the RICO Enterprise Be Sufficiently Distinct

The Flywheel Defendants argue that the RICO allegations fail to differentiate between the "person" and the "enterprise," and therefore cannot show distinctiveness as required by Section 1962(c).  FD Motion at 25.  Accepting the Complaint's well-pled facts as true, the RICO enterprise is sufficiently distinct because the legitimate enterprise is Compass Marketing, Inc., which is separate from the "persons" that committed the racketeering activity:  Ascential, Flywheel, DiPaula, Miller, and the White Defendants.

Congress intended the RICO Act to address the infiltration of legitimate enterprises by organized crime and other illegal ventures. *See* S. Rep. No. 91–617, 76-77. Section 1962(c) makes it unlawful for any person "employed by or associated with any enterprise" engaged in or affecting interstate or foreign commerce "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). An entity cannot serve as both the "person" and the "enterprise" under Section 1962(c). *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). The "enterprise" refers to the vehicle through which the unlawful pattern of racketeering is committed. 18 U.S.C. § 1962(c). Under Sections 1962(c) and (d), a legitimate enterprise may be the victim of racketeering activity. *See* S. Rep. No. 91–617, 76-77 (listing examples of legitimate businesses including retail stores and labor unions).

The legitimate enterprise that the Defendants infiltrated is Compass. The "persons" that are engaged in the racketeering activity are Ascential, Flywheel, DiPaula, Miller, and the White Defendants. Therefore, since Compass is not alleging that the "person" and "enterprise" are the same, the Defendants' Motion to Dismiss Compass's RICO claims should be denied.

### C.   The Complaint Alleges Collaboration and Agreement Between the Defendants

The Flywheel Defendants challenge Compass's allegations of collaboration or agreement by and among Ascential, Flywheel, DiPaula and Miller, and the White Defendants. FD Motion at 26 (citing *Rojas v. Delta Airlines, Inc*., 425 F. Supp. 3d 524, 537 (D. Md. 2019)). The *Rojas* court discussed the need for collaboration or agreement in a case where the alleged RICO enterprise was an association in fact. *Id.* at 538 ("Plaintiffs contend that the Amended Complaint adequately pleads an association-in-fact enterprise."). Here, the RICO enterprise is a distinguishable, legal entity, so collaboration/agreement requirement does not apply. *See United States v. Turkette*, 452

U.S. 576, 581-82, 101 S. Ct. 2524, 2527-28, 69 L. Ed. 2d 246 (1981) (The RICO Act encompasses two kinds of enterprises: legal entities and "associations in fact").  Although the case law does not require it, the well-pled facts in the Complaint do establish that the Flywheel Defendants and White Defendants collaborated to steal Compass's trade secrets and use them to unfairly compete (Compl. ¶¶ 1, 7, 8, 10, 76) and executed the severance payment scheme to embezzle money from Compass as startup capital (upon information and belief) to operate Flywheel, *id.* ¶¶ 202-08.  At the motion-to-dismiss stage, these well-pled facts are accepted as true and must be viewed in the light most favorable to Compass.  As a result, the Defendants' Motion to Dismiss Compass's RICO claims should be denied.

*       *       *

In sum, the well-pled facts in the Complaint assert a pattern of racketeering activity and a valid RICO enterprise.  These allegations make out a prima facie civil RICO and civil RICO conspiracy case, and the request to dismiss these claims should be denied.

### III.   COMPASS ADEQUATELY PLEADS EACH OF ITS STATE LAW CLAIMS

Defendants erroneously claim that Compass's state law claims are inadequately pled.  The Complaint demonstrates that Compass's state law claims satisfy the pleading requirements of Rule 8 and, where applicable, Rule 9(b).

### A.   Compass Alleges a Plausible Breach-of-Contract Claim

The Complaint sufficiently pleads a breach-of-contract claim against both DiPaula and Miller, and the motion to dismiss focuses on factual issues not appropriate for resolution at the pleading stage.  The Complaint recites:

- DiPaula and Miller agreed to be bound by the terms of the Employment Agreement and the Handbook in consideration for jobs, salaries, and benefits.  Compl. ¶ 273.
- DiPaula and Miller breached the terms of the Employment Agreement by stealing Compass's trade secrets and misusing confidential information to launch Flywheel,

17

soliciting Compass clients to join Flywheel, and soliciting Proctor & Gamble ("P&G") through fraudulent means. *Id.* ¶¶ 82-88, 184-201, 274, 323.

- DiPaula and Miller breached the terms of the Handbook by stealing Compass's trade secrets, particularly the eCommerce Guide, by disclosing Compass's trade secrets to Flywheel, Flywheel's customers, and the public without authorization, and by obtaining/attempting to obtain confidential client information after leaving Compass. *Id.* ¶¶ 82-88, 184-201, 275.

- Compass has suffered damages through these breaches. *Id.* ¶¶ 82-88, 196-97, 276.

The facts recited above satisfy the Rule 8(a) plausibility standard, and the motion to dismiss this claim should be denied. *Kissinger*, 2021 WL 1017400, at *8 (finding a breach-of-contract claim sufficiently pled when there is reference to the breached confidentiality provision in an employment agreement and the misconduct that breached the provision and resulted in damage).

## B. Compass Alleges Plausible Claims for Tortious Interference

Defendants argue that the Complaint pleads no breach of any contracts and otherwise fails to state a claim for tortious interference. FD Motion at 31. To the contrary, the absence of a contractual breach by a third party is not fatal to Compass's tortious interference claim. *Id.* Courts in Maryland have found the existence of tortious interference with contract claims where a plaintiff alleges interference by "prevention of performance" or by "causing a party to cancel a contract . . . even if there is no breach of contract." *See C&R Caulking, LLC v. Bank of Am., N.A.*, No. 21-cv-499, 2021 WL 2661875, at *6 (D. Md. June 29, 2021); *Lake Shore Invs. v. Rite Aid Corp.*, 67 Md. App. 743, 748, 509 A.2d 727, 729 (1986). The Complaint alleges that Defendants caused Compass's eCommerce clients to terminate their contracts with Compass and hire Flywheel instead through an intentional and malicious course of action and misinformation, including telling P&G that Compass was leaving the eCommerce industry and poaching the entire Compass eCommerce department. Compl. ¶¶ 82-88, 184-201, 282. Allegations of identified customers terminating their relationships with Compass because of the Flywheel Defendants' tortious conduct, *id.* ¶¶ 186, 193-200, is sufficient to state a claim for tortious interference with contract

under Maryland law.  *See Cook v. Britton*, No. 11-cv-2305, 2012 WL 14024, at *1 (D. Md. Jan. 3, 2012) (denying motion to dismiss when plaintiff named three specific former customers that allegedly began purchasing from defendant days after the false statements were published).  The motion to dismiss this claim should be denied.

### C.   Compass Alleges a Plausible Unfair Competition Claim

What constitutes unfair competition in a given case is a flexible inquiry governed by the particular facts and circumstances presented.  *ComRent*, 2021 WL 1733471, at *8.  In Maryland, it is accepted that acts that interfere with the ability to compete can constitute unfair competition.  *Id.* (citing *Brightview Grp. LP v. Teeters*, 441 F. Supp. 3d 115, 134-35 (D. Md. 2020) (allegations of misuse of confidential and proprietary information establish a claim for unfair competition)).  The Complaint alleges numerous examples of the Flywheel Defendants using a wrongful competitive advantage to gain customers that Flywheel or Ascential would not have but for the wrongful acts.  Compl. ¶¶ 186, 193-200.  Accordingly, Compass plausibly alleges a claim for unfair competition under Maryland law.  *Phreesia*, 2022 WL 911207, at *14.  Thus, the motion to dismiss this claim should be denied.

### D.   Compass Alleges Plausible Claims for Unjust Enrichment

Unjust enrichment requires proof of three elements: (1) a benefit conferred upon the defendant by the plaintiff, (2) an appreciation or knowledge by the defendant of the benefit, and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value.  *Phreesia*, 2022 WL 911207, at *15 (citations omitted).  The Complaint identifies facts that satisfy these elements and details the varied instances of ill-begotten gains received by Flywheel, DiPaula, Miller, and Ascential.  Compl. ¶¶ 81, 84, 86-88, 186, 193-200.  By way of example, Flywheel stands to realize upward of $400 million from an acquisition for a company built on the theft of stolen trade secrets

and other proprietary information.  *Id.* ¶ 209.  Similarly, Ascential's ongoing operations continue to unjustly profit from Flywheel's market success, which is driven by the unauthorized use of Compass's intellectual property.  *Id.* ¶ 9.  The Flywheel Defendants' history of benefitting from use of Compass's stolen trade secrets and other proprietary information is classic unjust enrichment and there is no basis to dismiss a claim buttressed by well-pled facts.[4]  *See Phreesia*, 2022 WL 911207, at *15 (finding that allegations of unauthorized access of trade secrets and confidential information to gain a competitive advantage adequately sets forth a claim of unjust enrichment).  The motion to dismiss this claim should be denied.

### E.  Compass's Claims for Aiding and Abetting and Conspiracy Are Tied to an Underlying Tort

Next, Defendants argue that because Maryland law does not recognize aiding and abetting and conspiracy as "causes of action independent of an underlying tort," these claims must fail.  FD Motion at 28.  But Defendants misconstrue the pleadings; rather than pleading aiding and abetting and conspiracy as causes of action in isolation or "independent of an underlying tort," the Complaint ties each claim to a separate, underlying tort.  *See* Compl. at Counts XI–XXI.

The Flywheel Defendants' argument was recently considered, and rejected, in a different case where Defendants similarly argued that Maryland law does not recognize civil conspiracy as an independent cause of action.  *ComRent*, 2021 WL 1733471, at *9 (citations omitted).  But civil conspiracy claims will survive when linked to liability for a substantive tort, such as the torts of unfair competition or tortious interference with contract, which Compass pleads here.  *Id.*  As in the *ComRent* case, Compass

---

[4] Defendants baselessly argue that Compass's unjust enrichment claim "is based on the same alleged misappropriation as its breach of contract claims," and therefore the Complaint must allege bad faith in the formation of the contract at issue.  FD Motion at 33 (citing *Jones v. Pohanka Auto N., Inc.*, 43 F. Supp. 3d 554, 573 (D. Md. 2014)).  But, unlike *Jones*, no contract "exists between **the parties** covering the same subject as the unjust enrichment claim."  *Id.* (emphasis added).  In the circumstances presented here, neither Flywheel nor Ascential were parties to DiPaula's or Miller's Employment Agreements or the Employee Handbook.

may prevail on a claim for civil conspiracy if it prevails on its other tort claims.  The same is true for claims of aiding and abetting.  *See ComRent Int'l, LLC v. Smidlein*, No. 20-cv-3356, 2021 WL 252554, at *8 (D. Md. Jan. 26, 2021) (approving independent claim for aiding and abetting).  Accordingly, the request to dismiss the civil conspiracy and aiding and abetting allegations should be denied because these claims are tied to underlying torts.

### F.   The Claim for Fraudulent Concealment Satisfies the Rule 9(b) Pleading Standard

"Under Maryland law, the elements of fraudulent concealment are: (1) that the defendant owed a duty to the plaintiff to disclose a material fact, (2) that the defendant failed to disclose that fact, (3) that the defendant intended to defraud or deceive the plaintiff, (4) that the plaintiff took action in justifiable reliance on the concealment, and (5) that the plaintiff suffered damages as a result of the defendant's concealment."  *Hill v. Brush Engineered Materials, Inc.*, 383 F. Supp. 2d 814, 820 (D. Md. 2005).  The Complaint sufficiently pleads a fraudulent concealment claim against the Flywheel Defendants in alleging that DiPaula and Miller, using embezzled funds from Compass and support from the White Defendants, "secretly built Flywheel upon the trade secret information and proprietary business know how that rightfully belonged to Compass."  Compl. ¶¶ 6, 76, 88, 191-200.  Compass was unable to discover the misappropriation of its trade secrets and confidential information until 2020 due to DiPaula, Miller, and the Whites' "extensive and ongoing concealment efforts."  *Id.* ¶¶ 6, 88, 144-57.  The Complaint gives the who, what, when, where, and why required by Rule 9, down to the specific dates that emails were sent.  *Id.* ¶¶ 75, 78-80.

Ascential is also a key participant in the scheme to utilize Compass trade secrets to unfairly compete with Compass in the market.  *See id.* ¶¶ 9, 209, 223.  Ascential has knowledge of the misappropriation and has taken no action to correct the course of conduct.  *Id.* ¶¶ 213, 223.  Instead, Ascential has continued to profit from Compass's stolen trade secrets, only recently disclosing to

the public its own audit uncovering significant risk of fraud in connection with Flywheel and its own "Group and component management." *Id.* ¶ 223; *see supra* note 3.

Compass has satisfied the Rule 9(b) requirements as to all the Flywheel Defendants, and the Court should deny the request to dismiss the claims for fraudulent concealment.

## IV.     THE COURT HAS PERSONAL JURISDICTION OVER ASCENTIAL

Under any of the three separate grounds identified below, the Court can exercise personal jurisdiction over Ascential, and the Court should do so to ensure that Ascential faces liability for harms caused in Maryland.

### A.     The Conspiracy Doctrine Confers Personal Jurisdiction Over Ascential

Maryland courts interpret the Maryland long-arm statute, Md. Courts Jud. Pro. Code Ann. § 6-103, to recognize the conspiracy doctrine of jurisdiction.  The conspiracy doctrine "permits certain actions done in furtherance of a conspiracy by one co-conspirator to be attributed to other co-conspirators for jurisdictional purposes." *Mackey v. Compass Mktg., Inc*., 391 Md. 117, 127, 892 A.2d 479, 484 (2006).  Under the doctrine of conspiracy jurisdiction, "when (1) two or more individuals conspire to do something (2) that they could reasonably expect to lead to consequences in a particular forum, if (3) one co-conspirator commits overt acts in furtherance of the conspiracy, and (4) those acts are of a type which, if committed by a non-resident, would subject the non-resident to personal jurisdiction under the long-arm statute of the forum state, then those overt acts are attributable to the other co-conspirators, who thus become subject to personal jurisdiction in the forum, even if they have no direct contacts with the forum." *Cawley v. Bloch*, 544 F. Supp. 133, 135 (D. Md. 1982).

Application of the conspiracy doctrine should be dispositive based on the facts alleged in the Complaint.  For the Court to exercise personal jurisdiction over Ascential in Maryland, it need

only satisfy itself that Compass has made out a civil conspiracy claim against Ascential.  The Court need not look further than the conspiracy allegations premised on the unfair competition tort to conclude that there is personal jurisdiction under the conspiracy doctrine.  *See Coastal Lab'ys, Inc. v. Jolly*, 502 F. Supp. 3d 1003 (D. Md. 2020) (nonresident COVID-19 testing suppliers were subject to court's personal jurisdiction under conspiracy theory of jurisdiction where there were plausible allegations that defendants conspired to engage in tortious interference with prospective business and economic relations, civil conspiracy, unfair competition, fraud, and conversion).

The facts alleged in the Complaint tie Flywheel's, and now Ascential's, success to the misappropriation and misuse of Compass proprietary information to gain an unfair market advantage.  Compl. ¶¶ 9, 212; *see also id.* ¶ 30 (alleging Ascential's activities in Maryland are in furtherance of a conspiracy).  Ascential is alleged to have conspired with Flywheel, DiPaula, and Miller to "damage and destroy Compass's business and ultimately steal Compass's eCommerce customers." *Id.* ¶ 326.  These allegations are a textbook example of conspiracy to commit unfair competition.  *See ComRent*, 2021 WL 1733471, at *8; *Phreesia*, 2022 WL 911207, at *13-14.  The existence of a conspiracy by Ascential to unfairly compete in Maryland is all that is needed to satisfy the specific jurisdiction inquiry under the conspiracy doctrine.

**B.    Ascential's Business Transactions in Maryland Confer Specific Jurisdiction**

The Complaint alleges Ascential's ongoing contacts with Maryland, including regular visits by Ascential's CEO and CFO to manage Flywheel's operations.  Compl. ¶ 30.  The Flywheel Defendants maintain that Ascential has no employees in Maryland, but the Complaint alleges that Ascential employees DiPaula and Miller reside in Maryland, and publicly available materials support those statements.  Compl. ¶¶ 16-17.  For example, DiPaula has long served as Chairman of the University of Maryland Medical System Board of Directors while also serving as "President

of Digital Commerce for Ascential."[5]  The Complaint also avers that Ascential employee Dayna Acevedo, a resident of Maryland, was a Flywheel employee, and is now a corporate officer at Ascential.  *Id*. ¶ 15.  No further facts are needed to establish sufficient contacts with the forum, but the very Declaration of Ascential's Company Secretary, Louise Meads, attached to the Flywheel Defendants' motion to dismiss (Docket No. 23-7) ("Meads Decl."), reaffirms Ascential's regular dealings in Maryland to manage Maryland-based Flywheel.

Maryland's long-arm statute confers personal jurisdiction over any person who "[t]ransacts any business . . . in [Maryland]."  Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1).  The Complaint establishes (and the Meads Declaration confirms) that Ascential officers, including CEO Duncan Painter and CFO Mandy Gradden, served on the Flywheel Board of Directors and have frequently visited Maryland in connection with the management of Flywheel.  Compl. ¶ 30; Mead Decl. ¶ 8 (Ascential is the "ultimate parent company of Flywheel"), ¶ 10 ("In connection with their roles on the Flywheel Board of Directors, Mr. Painter has taken approximately eleven trips to Maryland, and Ms. Gradden has taken approximately two trips to Maryland.").  Compass has established personal jurisdiction based on Ascential's contacts with the forum and ongoing tortious activities in Maryland, but, at the very least, Compass has pleaded a prima facie case of personal jurisdiction over Ascential where jurisdictional discovery would only further uncover Ascential's efforts to avail itself of the forum.[6]

---

[5] Zach Hill, *Weeks After Being Named in A Federal Lawsuit, DiPaula Resigns from UMMS Board*, The Bay Net (Mar. 10, 2022), https://thebaynet.com/weeks-after-being-named-in-federal-lawsuit-dipaula-resigns-from-umms-board/ (attached as Exhibit "B").

[6] Even in the weeks since the filing of the Complaint, Ascential has publicly announced its plans to demerge its digital operations, which includes Flywheel, and list them separately on the New York Stock Exchange.  Mark Kleinman, *Cannes Lions owner Ascential Plots £1.5bn Transatlantic Break-Up*, Sky News (Apr. 9, 2022) https://news.sky.com/story/cannes-lions-owner-ascential-plots-1-5bn-transatlantic-break-up-12585917#:~:text=The%20owner%20of%20the%20Cannes,the%20Atlantic%20to%20New%20York. (attached as Exhibit "C") ("[L]ikely to be driving Ascential's" decision is the high value that "[d]igital marketing and insight providers" have with U.S. equity markets—namely "brands such as Flywheel").

**C.     The Court Should Exercise Personal Jurisdiction Where There Is a Colorable RICO Claim**

Finally, Ascential is subject to personal jurisdiction because there are colorable claims for racketeering in Maryland.  RICO provides for personal jurisdiction over all nonresident defendant-members of a racketeering enterprise as long as the court may exercise personal jurisdiction over one of the defendant-members.  18 U.S.C. §§ 1965(b), (d).  A defendant may defeat personal jurisdiction by establishing that the RICO claim is not "colorable" because it is "implausible, insubstantial, or frivolous." *Becker v. Noe*, No. 18-cv-931, 2019 WL 1415483, at \*17 (D. Md. Mar. 27, 2019).  "A claim can be colorable while still failing to satisfy the pleading requirements of [Rule 12(b)(6) of] the Federal Rules of Civil Procedure." *Id.*  Here, the RICO counts are far from "implausible, insubstantial, or frivolous" and provide detailed factual support for the schemes and trade secret theft underlying the predicate acts.  Compl. ¶¶ 99-208.  Additionally, it is clear from the face of the Complaint that the Court has personal jurisdiction over more than one Defendant as required by RICO.  18 U.S.C. §§ 1965(b), (d).  For example, Defendants Chip DiPaula, Patrick Miller, Daniel White, Michael White, and George White have lived and worked in Maryland during all the relevant periods in the litigation.  Accordingly, the Court has personal jurisdiction over nonresident Defendant Ascential because the Complaint presents a colorable RICO claim.

**V.     DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED BECAUSE COMPASS'S CLAIMS ARE TIMELY**

The Defendants argue that all of Compass's claims are time-barred.  Such arguments generally do not support a motion to dismiss because the trial court "generally cannot reach the merits" of a statute-of-limitations defense at the pleading stage. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc).  Only "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint" will a court, under Rule 12(b)(6), dismiss a complaint based on an affirmative defense. *Id.* at 464.  Motions to dismiss are

rarely granted on statute-of-limitations defenses because the application of a limitations period often entails a fact intensive inquiry, *id*. at 465-66, and the defendants bear "the burden of establishing the affirmative defense" predicated on limitations *id*. at 464.

The statute-of-limitations arguments involve two sets of claims: the allegations of trade secret misappropriation and the allegations of racketeering and torts arising under Maryland law. Defendants cannot establish that either set of allegations are barred as untimely.

### A.    The Trade Secret Misappropriation Allegations Are Timely

#### 1.    The Limitations Period for the Trade Secret Claims Accrues on the Date of Compass's Reasonable Notice of the Misappropriation

The trade secret claims cannot be dismissed without the Court engaging in exactly the type of fact-finding that the *Goodman* court warned against.  The Flywheel Defendants' two main theories are that (1) Compass should have known of the Defendants' wrongdoing and trade secret theft "in 2014 and no later than 2016," FD Motion at 13, and (2) because Compass knew Flywheel was a competitor, that knowledge should have prompted Compass to realize that DiPaula and Miller stole Compass's trade secrets.  *Id*. at 16.  In both instances, the reasonableness of when Compass should have realized that DiPaula and Miller acted in secret to steal Compass's trade secrets is a question of disputed fact.

Under the DTSA and the MUTSA, an action for misappropriation must be brought within three years after the misappropriation "is discovered or by the exercise of reasonable diligence should have been discovered."  18 U.S.C. § 1836(d); Md. Code Ann. Com. Law § 11-1206(b).  In order to "start the clock," a plaintiff must have had "objectively reasonable notice" of misappropriation.  Uniform Trade Secrets Act, § 6 cmt.  Here, the Complaint alleges facts to support the inference that Compass ***did not have reasonable notice*** of any misappropriation until Compass learned that Flywheel was repurposing the Digital Grocery Presentation that "included

key pieces of information that could only be known from the original Compass eCommerce Guide." Compl. ¶ 187.   Because Compass's discovery regarding the Digital Grocery Presentation was in January 2020, the three-year statute of limitations did not start until then, at the earliest. *God's Little Gift, Inc. v. Airgas, Inc.*, No. 17-cv-004, 2017 WL 4366751, at *3 (W.D.N.C. Oct. 2, 2017) (assessing claim arising under the DTSA and concluding that plaintiff had "three years starting from the date of that realization [regarding defendant's misappropriation] to bring this action"); *see also Ivanti, Inc. v. Staylinked Corp*., No. 19-cv-075, 2019 WL 4645325, at *2-3 (D. Utah Sept. 24, 2019) (denying motion to dismiss where plaintiff averred that it had "no knowledge that [defendant] would misappropriate confidential information until the release of [competing product]"); *Fin. Info. Techs., Inc. v. iControl Sys., USA, LLC*, No. 17-cv-190, 2018 WL 3391379, at *5 (M.D. Fla. June 12, 2018) (identifying disputed issues of fact and explaining that suspicion regarding a competitor's activities is not sufficient to infer that the misappropriation should have been discovered by that point in time).

The Flywheel Defendants emphasize that Compass "should have known" that Flywheel was potentially misappropriating trade secrets because Flywheel was operating in the same competitive space and competing for clients.   FD Motion at 16.   However, while Compass may have known Flywheel was a competitor, there was no ***notice*** to Compass that Flywheel was ***using Compass's stolen intellectual property***.   The Complaint alleges that DiPaula and Miller acted in secret; it is therefore "objectively reasonable" that Compass was not on notice of the misappropriation until January 2020, when Compass's Comptroller, Luis Fernandez, located a Flywheel-branded PowerPoint embedded with Compass metadata.   Compl. ¶¶ 184-88.

The Flywheel Defendants also claim that Compass "admittedly knew enough to seek legal counsel as to potential claims concerning Flywheel's founding in 2014 and the 'mass exodus' in

2016." FD Motion at 16. This argument misstates the Complaint. Regarding the legal advice Compass sought, the Complaint states:

> With respect solely to the question concerning whether Compass should seek to enforce the non-competition provisions in the DiPaula Agreement and the Miller Agreement, and with no corresponding knowledge or suspicion that DiPaula and Miller had stolen Compass's trade secrets and proprietary information and know how, John presented the emails to Daniel White, Compass's acting General Counsel, and sought legal advice regarding how the Company should proceed.

Compl. ¶ 81.

John White brought his concerns to Compass's attorney Daniel White and asked for legal advice concerning whether Compass could pursue DiPaula, Miller, and Flywheel *for non-solicitation issues* associated with the 2016 gutting of the eCommerce Department. *Id.* ¶ 89. At the time, Compass was unaware of Daniel's involvement in Flywheel, his conflict of interest, or the real reasons (as pleaded in the Complaint) why his legal advice was to not have Compass pursue non-solicitation litigation. *Id.* ¶ 90. The legal advice Compass sought was never for *trade secret claims* because Compass did not know of the trade secret theft until January 2020. *Id.* ¶¶ 11, 184, 191.

When the facts presented can be interpreted in more than one way, the question of when the limitations period begins to accrue is a question of fact for the jury. *See MD Helicopters, Inc. v. Aerometals, Inc.*, No. 16-cv-2249, 2021 WL 978953, at *3 (E.D. Cal. Mar. 16, 2021). Because Compass was not reasonably put on notice of the misappropriation until January 2020, the statute of limitations began to accrue at that point and does not expire until January 2023.

2.     **The Continuous Violations Doctrine Tolls the Statutes of Limitations Based on the Ongoing Use of Compass' Trade Secrets**

In Maryland, the "continuing harm" or "continuous violation" doctrine tolls the statute of limitations for a violation that is continuous in nature. *MacBride v. Pishvaian*, 402 Md. 572, 584 (2007). Under this doctrine, a claim is not barred simply because one or more of the violations occurred earlier in time. *Id.* However, to qualify as continuing violations, the acts must be "continuing unlawful acts [] not merely the continuing effects of a single earlier act." *Id.*

For the trade secret misappropriation claim, Compass extensively pleaded that the misappropriation is ongoing, with Flywheel/Ascential currently engaging in ***new acts*** of trade secret misappropriation through the ongoing unauthorized uses of Compass's trade secrets. Compl. ¶¶ 11, 184, 191. In New York, another jurisdiction to recognize the continuous violations doctrine, the doctrine has been specifically applied to DTSA allegations. *See iSentium, LLC v. Bloomberg Fin. L.P.*, No. 17-cv-7601, 2020 WL 248939, at *8 (S.D.N.Y. Jan. 16, 2020). For allegations of trade secret misappropriation, the accrual date may be extended "where the defendant has kept a secret confidential but ***continued to use it for commercial advantage***." *Id.* (emphasis added) (citing *Synergetics USA, Inc. v. Alcon Labs., Inc.*, No. 08-cv-3669, 2009 WL 2016872, at *2 (S.D.N.Y. July 9, 2009)).

The facts pleaded in the Complaint establish that the misuse of Compass's trade secrets by the Flywheel Defendants—conduct that continues today—is an ongoing harm. Compl. ¶¶ 74, 223. Maryland's recognition of the continuous violations doctrine should apply here to the trade secret claims (as well as other torts discussed below) such that the Flywheel Defendants' continuous and present use of the Compass trade secrets extends the limitations period.

B.     **The Racketeering Allegations and State Law Claims Are Timely**

The Flywheel Defendants also argue that Compass's RICO and state law claims are time-

barred.  FD Motion at 17-18.  While they posit that "Compass should have discovered the alleged [RICO] theft no later than 2014," they do not state when Compass purportedly ***should have known*** of the facts underlying the state law claims.  *See id.* at 17.  The Flywheel Defendants also incorrectly assert that "the only RICO predicate act alleged against [them] is a violation of 18 U.S.C. § 1832 – i.e., a criminal theft of trade secrets."  *Id.*; *see also supra* Section II(A) (detailing four predicate acts attributable to the Defendants).  The Court should deny the Flywheel Defendants' Motion to Dismiss because Maryland's discovery rule, continuous violations doctrine, and adverse domination doctrine tolled the statutes of limitations, making each of Compass's RICO and state law claims timely.

### 1.     The Discovery Rule Tolled the Statute of Limitations Until After February 2019

Compass's RICO claims are subject to a four-year statute of limitations period and the various state law claims are subject to a three-year statute of limitations period.  Md. Code. Ann., Cts. Jud. Proc. § 5-101; *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 152 (1987) (holding that civil RICO claims have a statute of limitations of four years).  Maryland's discovery rule tolls statutes of limitations until a plaintiff knows or should know of the potential claim.  *Lumsden v. Design Tech Builders, Inc.*, 358 Md. 435, 443-44 (2000).  "When it is necessary to make a factual determination to identify the date of accrual, however, those factual determinations are generally made by the trier of fact, and not decided by the court as a matter of law."  *Litz v. Md. Dep't of Env't*, 434 Md. 623, 641, 76 A.3d 1076, 1086 (2013).

The well-pled facts in the Complaint establish that the earliest date on which Compass knew or should have known of a potential RICO or state law claim occurred sometime after February 14, 2019, the date that the Compass Board of Directors removed Daniel White and Michael White from the Board.  Compl. ¶¶ 95-96.  After the removal, Compass hired criminal

investigator Ron Bateman and certified forensic fraud examiner Luis Fernandez to investigate Daniel's and Michael's conduct as Compass officers. *Id.* ¶ 96. The investigation revealed fourteen years of misconduct that provide extensive factual support for Compass's RICO and state law claims against all of the Defendants. *Id.* ¶ 97. The numerous schemes were discovered piecemeal, with the trade secret theft not being discovered until January 2020 at the earliest. *Id.* ¶¶ 11, 184, 191.

The Flywheel Defendants' argument that Compass **should have** discovered the facts supporting its potential RICO and state law claims "no later than 2014" runs directly counter to the dates of discovery alleged in the Complaint, *see* FD Motion at 17, which are accepted as true for purposes of the motion-to-dismiss analysis. The factual dispute over whether Compass should have known of the potential claims sooner is a jury question for trial; it is inappropriate for resolution at the motion-to-dismiss stage. As a result, the motion to dismiss the RICO and state law claims on the basis of the statute of limitations should be denied.

### 2. The Continuous Violations Doctrine Tolls the Statutes of Limitation for the Defendants' Ongoing Misconduct

The continuous violations doctrine, as previously explained in Section V(A)(2) addressing the timeliness of the trade secret claims, applies equally to the allegations of racketeering and other misconduct addressed by the state law claims. *See MacBride*, 402 Md. at 584. Similar to the Flywheel Defendants' use of Compass's trade secrets, the subsequent intentional interference with Compass's clients and business opportunities is continuous and ongoing. Compl. ¶¶ 74, 200, 276. The Defendants' misconduct amounts to an ongoing harm that prevents the RICO and state law statutes of limitations from running.

3.     **The Statutes of Limitations Were Tolled Until Compass Was Controlled by a Disinterested Majority of Nonculpable Directors**

The doctrine of adverse domination provides an alternative basis to toll accrual of the statutes of limitation until February 14, 2019, as it delays the accrual of a cause of action and tolls the statute of limitations for injuries to the corporation until a disinterested majority of nonculpable directors controls the corporation.  *Hecht v. Resol. Tr. Corp.*, 333 Md. 324, 339 (1994).  Maryland courts adopted the adverse domination doctrine because "control of the association by culpable directors and officers precludes the possibility of filing suit because these individuals can hardly be expected to sue themselves or to initiate any action contrary to their own interests."  *Id.* at 340.

As relevant to the racketeering and state law claims, the adverse domination doctrine tolls the statutes of limitations for officers and directors of a corporation, as well as third parties.  *Bank of Am. v. Jericho*, No. 15-cv-02953, 2017 WL 193498, at *4 (D. Md. Jan. 17, 2017); *see also Bornstein v. Poulos*, 793 F.2d 444, 448 (1st Cir. 1986) (applying the adverse domination doctrine to toll claims against an outside attorney); *Fed. Sav. & Loan Ins. Corp. v. Williams*, 599 F. Supp. 1184, 1194 (D. Md. 1984) (applying the adverse domination doctrine to toll claims against a lower-level employee); *Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873, 879 (9th Cir. 1984) (applying the adverse domination doctrine to toll claims against an outside audit firm).

Applying the doctrine to the facts as alleged in the Complaint, a disinterested majority of nonculpable directors did not control Compass until February 14, 2019, when the Compass Board of Directors voted to remove Defendants Daniel White and Michael White as directors.  Compl. ¶ 95.  Accordingly, the statutes of limitations for Compass's RICO and state law claims were tolled until February 14, 2019, and Compass had until February 14, 2022 to file its state law claims and has until February 14, 2023 to file its civil RICO claims.  Since Compass filed the instant Complaint within these deadlines, Compass's RICO and state law claims are timely.

### C.  Fraudulent Concealment Tolls the Statutes of Limitations for All Claims

Contrary to the Flywheel Defendants' mantra that the Complaint "failed to establish any due diligence by Compass," FD Motion at 19-20, the Complaint sets forth numerous examples of both Compass's due diligence and the Defendants' fraudulent concealment that prevented Compass from learning of the actionable conduct.  Where, as alleged here, the Defendants concealed the acts giving rise to the allegations in the Complaint, tolling of the statute of limitations is available as an equitable means to ensure relief remains available for the aggrieved party.

When a defendant acts through fraud or concealment to frustrate a plaintiff's ability to discover a claim, the statute of limitations is tolled until "the party discovered, or through the exercise of ordinary diligence should have discovered[,] the fraud." *Dual Inc. v. Lockheed Martin Corp.*, 383 Md. 151, 170, 857 A.2d 1095, 1105 (2004).  Allegations arising under Rule 9(b) "typically include the time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby" but "[i]n cases involving concealment or omissions of material facts, however, meeting Rule 9(b)'s particularity requirement ***will likely take a different form***."  *Chambers v. King Buick GMC, LLC*, 43 F. Supp. 3d 575, 586 (D. Md. 2014) (emphasis added); *Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. 539, 552 (D. Md. 1997) (recognizing that an omission likely "cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation").  "A court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant[s were] made aware of the particular circumstances for which [they] will have to prepare a defense at trial and (2) that [the] plaintiff has substantial prediscovery evidence of those facts." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

The Complaint details the Defendants' fraudulent concealment with particularity, including ghost employees, the use of the Internal Revenue Service and secret bank accounts to embezzle and launder money, and the severance scheme to fund and operate Flywheel.  With respect to the trade secret claim, Section B of the Factual Background within the Complaint, titled "DiPaula and Miller Secretly Found a Competing eCommerce Marketing Company Called Flywheel," lays out precisely how Defendants DiPaula, Miller, and Flywheel misappropriated Compass's trade secrets, used the trade secrets to operate Flywheel, and poached Compass's clients and employees.  Compl. ¶¶ 75-90.  Compass also affirmatively pleads that the Flywheel Defendants' trade secret theft was done in secret.  *See, e.g.*, *id*. ¶ 76 ("Although Compass did not know it at the time, DiPaula and Miller's departure was part of a calculated plan, with surreptitious support by Daniel and Michael White, to start a rival eCommerce company by stealing virtually all of Compass's trade secrets and proprietary business know how and employing it in their new, competing eCommerce company."); *id*. ¶ 80 ("[U]nbeknownst to John White and Compass, DiPaula and Miller had already stolen [the trade secrets] and were using for Flywheel's benefit to Compass's detriment."); *id.* ¶ 88 ("Flywheel's achievements are not a business success story, but rather are attributable to DiPaula and Miller's long-secret scheme to steal Compass's trade secrets and proprietary business know how to unfairly compete with Compass.").

The Complaint relatedly details the severance scheme, a predicate act of embezzlement, that gives rise to racketeering allegations.  Specifically, Compass pled that Defendants DiPaula, Miller, Daniel White, and Michael White conspired to embezzle Compass funds under the false premise that Compass owed DiPaula and Miller severance payments, all designed to facilitate the use of that money to found and operate Flywheel.  *Id.* ¶¶ 202-08.  The facts as pled provide the exact dates and copies of the checks.  *Id.* ¶¶ 203-05.

There are likewise many examples of Compass's due diligence.  Compass sought legal advice when DiPaula and Miller left and its employees quit to join Flywheel.  Compl. ¶¶ 81, 89. The Compass Board of Directors replaced Defendants Daniel White and Michael White when it determined that they were not upholding their fiduciary duties and acting in the best interest of the company.  *Id.* ¶ 95.  Compass hired criminal investigator Ron Bateman and certified forensic fraud examiner Luis Fernandez to perform an internal investigation after Defendants Daniel White and Michael White were removed from the Board.  *Id.* ¶ 96.  During the investigation, Fernandez discovered the Profitero article and the Digital Grocers Summit Power Point Presentation that led to Compass's discovery of the trade secret theft.  *Id.* ¶¶ 184, 186.  For purposes of the motion-to-dismiss analysis, the Court should interpret these facts in a light most favorable to Compass.  The pleadings sufficiently establish that Compass acted with due diligence and, despite that, the Defendants were able to fraudulently conceal their misconduct and omissions.  As a result of the extensive efforts to conceal the misconduct, the statute of limitations should be tolled until Compass discovered the fraud through its own ordinary diligence.

*      *      *

The Flywheel Defendants' timeliness challenge cannot succeed at this stage because Compass first discovered the White Defendants' misconduct after February 2019 and the trade secret theft in January 2020.  The Complaint establishes both Compass's diligence in uncovering the actionable conduct, and that, for the trade secret, racketeering, and other state law claims, the Defendants actively concealed the underlying events from Compass.  The claims are also timely through application of the continuing violation doctrine and the adverse domination doctrine.

## CONCLUSION

For all the reasons stated herein, the Flywheel Defendants' Motion to Dismiss should be denied in its entirety. In the alternative, Compass requests leave to amend its Complaint.

Dated: May 4, 2022                                    Respectfully submitted,

                                                     */s/ Troy. S. Brown, Esq.*
                                                     Steven A. Luxton, Esq. (MD Bar No. 9812160173)
                                                     Natalie A. Bennett, Esq. (admitted pro hac vice)
                                                     **Morgan, Lewis & Bockius LLP**
                                                     1111 Pennsylvania Avenue
                                                     Washington, DC 20004-2541
                                                     steven.luxton@morganlewis.com
                                                     natalie.bennett@morganlewis.com
                                                     T. (202) 739-5559
                                                     F. (202) 739-3001

                                                     Troy S. Brown, Esq. (admitted pro hac vice)
                                                     Rachel A. Ward, Esq. (admitted pro hac vice)
                                                     **Morgan, Lewis & Bockius LLP**
                                                     1701 Market Street
                                                     Philadelphia, PA 19103
                                                     troy.brown@morganlewis.com
                                                     rachel.ward@morganlewis.com
                                                     T. (215) 963-5000
                                                     F. (215) 963-5001

                                                     James J. Kritsas, Esq. (admitted pro hac vice)
                                                     **Morgan, Lewis & Bockius LLP**
                                                     110 North Wacker Drive
                                                     Chicago, IL 60606
                                                     james.kritsas@morganlewis.com
                                                     T. (312) 324-1000
                                                     F. (312) 324-1001

                                                     Susan K. Stradley, Esq. (admitted pro hac vice)
                                                     **Morgan, Lewis & Bockius LLP**
                                                     1000 Louisiana Street
                                                     Suite 4000
                                                     Houston, TX 77002
                                                     susan.stradley@morganlewis.com
                                                     T. (713) 890-5000
                                                     F. (713) 890-5001

                                                     Rod J. Rosenstein, Esq. (MD Bar No. 14793)
                                                     **King & Spalding LLP**
                                                     1700 Pennsylvania Avenue, NW
                                                     Suite 900
                                                     Washington DC 20006-4707
                                                     rrosenstein@kslaw.com

T. 202-626-9220
F. 202-626-3737

Mark S. Brown, Esq. (Federal Bar No. 09100)
**King & Spalding LLP**
1700 Pennsylvania Avenue, NW
Suite 900
Washington DC 20006-4707
mbrown@kslaw.com
T. 202-626-5443
F. 202-626-3737

*Counsel for Plaintiff Compass Marketing, Inc.*