**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **COMPASS MARKETING, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Case Number: 1:22-cv-00379-GLR** |
| | § | |
| **FLYWHEEL DIGITAL LLC, et al.,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |
| | § | |
| | § | |

**RESPONSE IN OPPOSITION TO MOTIONS TO DISMISS OF
DEFENDANTS DANIEL WHITE, GEORGE WHITE, AND MICHAEL WHITE**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

FACTS PLEADED IN THE COMPLAINT.......................................................................... 2

LEGAL STANDARD............................................................................................................ 4

ARGUMENT ........................................................................................................................ 5

I.     THE STATUTE OF LIMITATIONS IS NOT A BAR TO ANY OF
COMPASS'S CLAIMS ............................................................................................ 5

       A.     The White Defendants Have Not Carried Their Burden of
Establishing Any Claim Accrued Prior to February 14, 2019 ................. 6

       B.     Even If Any Claims Accrued Prior to February 14, 2019 (They Did
Not), the Statute of Limitations Would Have Been Tolled .................... 11

II.    THE RICO CLAIMS (COUNTS III AND IV)  ARE ADEQUATELY
PLED...................................................................................................................... 13

       A.     Compass Has Adequately Alleged the RICO Enterprise......................... 14

       B.     Compass Has Adequately Alleged a Pattern of Racketeering
Activity by Each of the White Defendants ............................................. 14

            1.     Michael White............................................................................... 15

            2.     George White ................................................................................ 16

            3.     Daniel White ................................................................................. 17

III.   THE STATE LAW CLAIMS ARE ADEQUATELY PLED ............................... 20

       A.     The White Defendants Do Not Dispute That, If Timely, the
Breach of Fiduciary Duty Claim (Count XXIII) Is Adequately Pled ...... 20

       B.     The Conspiracy Claims (Counts XI, XV, and XVI) Are
Adequately Pled ..................................................................................... 20

       C.     The Fraudulent Concealment/Fraud Claim (Count X) Is
Adequately Pled ..................................................................................... 22

       D.     The Aiding and Abetting Claim (Count XXI) Is Adequately Pled.......... 25

       E.     The Conversion Claim (Count XXII) Is Adequately Pled...................... 26

IV.   IF THE COURT DISMISSES THE RICO CLAIMS, IT SHOULD
EXERCISE SUPPLEMENTAL JURISDICTION OVER THE STATE
LAW CLAIMS ...................................................................................................... 27

CONCLUSION.................................................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adobe Sys. Inc. v. Gardiner*,
  300 F. Supp. 3d 718 (D. Md. 2018) .......................................................................21

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,
  483 U.S. 143 (1987) ...............................................................................................5

*Al-Abood v. El-Shamari*,
  217 F.3d 225 (4th Cir. 2000) ...............................................................................18

*Alleco, Inc. v. Harry & Jeanette Weinberg Found., Inc.*,
  665 A.2d 1038 (Md. 1995) ...................................................................................25

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................4

*Bank of Am. v. Jericho Baptist Church Ministries, Inc.*,
  No. 15-cv-02953, 2017 WL 193498 (D. Md. Jan. 17, 2017)............................ 12-13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................4

*Bornstein v. Poulos*,
  793 F.2d 444 (1st Cir. 1986).................................................................................13

*Cap. Lighting & Supply, LLC v. Wirtz*,
  No. 17-3765, 2018 WL 3970469 (D. Md. Aug. 20, 2018) ........................... *passim*

*Carlucci v. Han*,
  907 F. Supp. 2d 709 (E.D. Va. 2012) ...................................................................22

*Crest Inv. Tr., Inc. v. Comstock*,
  327 A.2d 891 (Md. Ct. Spec. App. 1974) .............................................................24

*CVLR Performance Horses, Inc. v. Wynne*,
  524 F. App'x 924 (4th Cir. 2013) .........................................................................19

*CX Reinsurance Co. v. Leader Realty Co.*,
  219 F. Supp. 3d 542 (D. Md. 2016) ..................................................................6, 11

*DCG & T ex rel. Battaglia/Ira v. Knight*,
  68 F. Supp. 3d 579 (E.D. Va. 2014) .......................................................................8

*Desser v. Woods*,
  296 A.2d 586 (Md. 1972) ..........................................................................9

*Dual Inc. v. Lockheed Martin Corp.*,
  857 A.2d 1095 (Md. 2004) ......................................................................11

*Dwoskin v. Bank of Am., N.A.*,
  850 F. Supp. 2d 557 (D. Md. 2012) ........................................................25

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
  637 F.3d 435 (4th Cir. 2011) .........................................................4, 22, 23

*Ekstrom v. Cong. Bank*,
  No. 20-1501, 2020 WL 6565251 (D. Md. Nov. 9, 2020) ........................19

*Equity Prime Mortg., LLC v. 1st Fin., Inc.*,
  No. 17-cv-3754, 2019 WL 859135 (D. Md. Feb. 22, 2019) (Russell, J.) ................................5

*Fed. Sav. & Loan Ins. Corp. v. Williams*,
  599 F. Supp. 1184 (D. Md. 1984) ..........................................................13

*Frederick Rd. Ltd. P'ship v. Brown & Sturm*,
  360 Md. 76, 756 A.2d 963 (Md. 2000) .................................................8, 9

*Goodman v. Praxair, Inc.*,
  494 F.3d 458 (4th Cir. 2007) (en banc) ...................................................6

*Great Am. Ins. Co. v. Nextday Network Hardware Corp.*,
  73 F. Supp. 3d 636 (D. Md. 2014) .........................................................21

*Hall v. Greystar Mgmt. Servs., L.P.*,
  179 F. Supp. 3d 534 (D. Md. 2016) ................................................. 27-28

*Hecht v. Resol. Tr. Corp.*,
  635 A.2d 394 (Md. 1994) .......................................................................12

*Hill v. Brush Engineered Materials, Inc.*,
  383 F. Supp. 2d 814 (D. Md. 2005) ........................................................21

*Homa v. Friendly Mobile Manor, Inc.*,
  612 A.2d 322 (Md. Ct. Spec. App. 1992) ...............................................24

*Johnson v. City of Shelby*,
  574 U.S. 10 (2014) (per curiam) ..............................................................5

*King v. Rubenstein*,
  825 F.3d 206 (4th Cir. 2016) ...................................................................5

*Mathews v. Cassidy Turley Md., Inc.*,
  80 A.3d 269 (Md. 2013) ....................................................12

*Merchants Mortg. Co. v. Lubow*,
  339 A.2d 664 (Md. 1975) ....................................................8

*Mitchell Tracey v. First Am. Title Ins. Co.*,
  935 F. Supp. 2d 826 (D. Md. 2013) ....................................................14

*Mosesian v. Peat, Marwick, Mitchell & Co.*,
  727 F.2d 873 (9th Cir. 1984) ....................................................13

*Mylan Lab'ys, Inc. v. Akzo, N.V.*,
  770 F. Supp. 1053 (D. Md. 1991) ....................................................5

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
  591 F.3d 250 (4th Cir. 2009) ....................................................4, 7, 11

*Noel v. PACCAR Fin. Corp.*,
  No. 18-3936, 2021 WL 4918059 (D. Md. Oct. 21, 2021) ....................................................27

*Park v. Jack's Food Sys., Inc.*,
  907 F. Supp. 914 (D. Md. 1995) ....................................................17

*Potomac Conf. Corp. of Seventh-day Adventists v. Takoma Acad. Alumni Ass'n, Inc.*,
  2 F. Supp. 3d 758 (D. Md. 2014) ....................................................27

*Sedima, S.P.R.L. v. Imrex Co.*,
  473 U.S. 479 (1985) ....................................................13

*Shanaghan v. Cahill*,
  58 F.3d 106 (4th Cir. 1995) ....................................................27

*Shenker v. Laureate Educ., Inc.*,
  983 A.2d 408 (Md. 2009) ....................................................7

*Spinelli, Kehiayan-Berkman, S.A. v. Imas Gruner, A.I.A., & Assocs.*,
  602 F. Supp. 372 (D. Md. 1985) ....................................................8

*Starr v. VSL Pharms., Inc.*,
  509 F. Supp. 3d 417 (D. Md. 2020) ....................................................14, 15, 19, 20

*Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*,
  197 F. Supp. 2d 298 (D. Md. 2000) ....................................................4

*Todman v. Mayor & City Council*,
  488 F. Supp. 3d 218 (D. Md. 2020) (Russell, J.) ....................................................24

*United States v. Mathis*,
    932 F.3d 242 (4th Cir. 2019) .............................................................................18

**Statutes and Rules**

18 U.S.C. § 1961(1) ..............................................................................................15

18 U.S.C. § 1961(4) ..............................................................................................14

18 U.S.C. § 1962 ..............................................................................................13, 14

Md. Code Ann., Cts. & Jud. Proc. § 5-101 ............................................................5

Md. Code Ann., Cts. & Jud. Proc. § 5-203 ..........................................................11

Fed. R. Civ. P. 8(a) ...........................................................................................4, 27

Fed. R. Civ. P. 8(a)(2) ............................................................................................4

Fed. R. Civ. P. 9(b) ............................................................................................4, 5

Fed. R. Civ. P. 12(b)(6) ......................................................................................4, 6

**Other Authorities**

S. Rep. No. 91–617, 76-77 ...................................................................................14

## INTRODUCTION

The Complaint filed by Plaintiff Compass Marketing, Inc. ("Compass") pled, in overwhelming detail, allegations setting out actionable claims for relief against Defendants Michael White, Daniel White, and George White (collectively referred to as "the White Defendants").  Those detailed allegations set forth ***nine*** separate schemes undertaken by the White Defendants to misappropriate funds, enrich themselves, advantage Compass's competitors (including Defendants Ascential plc and Flywheel Digital LLC, along with Defendants DiPaula and Miller), and – after they were terminated from Compass – inflict devastating harm on Compass and sabotage Compass's relationships with its remaining clients.  With regard to the claims sounding in fraud, the Complaint alleges the "who, what, when, where, and how" of dozens of fraudulent acts committed by the White Defendants.  The Complaint also sets forth the specific actions the White Defendants took to conceal their wrongdoing, and the measures that Compass had to undertake in order to discover the White Defendants' historic and ongoing malfeasance.

It is a fundamental principle of civil procedure that, at this stage in the proceedings, the Court must accept all these allegations as true, and draw all reasonable inferences in Compass's favor.  The White Defendants invite this Court, in the most conclusory terms, to disregard that principle.  They ask the Court to ***assume*** that Compass could have discovered the White Defendants' illegal activities earlier, even though Compass has pled in intricate detail how the White Defendants used their control of Compass's books and records to prevent that from happening.  They also ask the Court to ***disregard*** well-pled allegations in the Complaint in order to dismiss Compass's Racketeer Influenced and Corrupt Organizations Act ("RICO") and state law claims, which the Court may not do.  Accepting the allegations in the Complaint as true, and drawing all reasonable inferences in Compass's favor, it is plain that the Complaint more than

adequately pleads timely, viable claims against each of the White Defendants, and that the White Defendants' motions to dismiss must be denied in their entirety.

### FACTS PLEADED IN THE COMPLAINT

For more than 20 years, Michael and Daniel White took advantage of their roles as officers and directors of Compass to embezzle funds, enrich themselves and their family members, and directly assist the wrongful competitive efforts and trade secret theft by the other corporate and individual Defendants, in a multitude of ways.  Among other acts of wrongdoing described in the Complaint, they stole monies that were intended for Compass and deposited them into personal checking accounts (Compl. ¶¶ 99-107); directed company salaries and benefits to family members who were never actually employed by Compass (*id.* ¶¶ 108-18); paid millions of dollars of Compass funds to the IRS under the guise of "tax withholding," then claimed those millions back as personal tax refunds (*id.* ¶¶ 119-25); paid millions of dollars directly to themselves from Compass's accounts disguised as loan repayments for what they privately described as "BS loan[s]" (*id.* ¶¶ 126-43); used company credit cards for personal expenses, including lavish vacations and outside business interests (*id.* ¶¶ 171-82); conspired with individual Defendants DiPaula and Miller, and other departing employees, to misappropriate trade secrets from Compass in support of a competing venture (*id.* ¶¶ 76, 89-90, 94, 202-08); and materially supported that unfairly competing venture (*id.*).

Michael and Daniel White used their executive influence over Compass's payroll systems and internal controls – especially the influence that Michael White had as Vice President of Operations, and that Daniel White had as a lawyer and the company's acting General Counsel – to doctor Compass's books and records and conceal their wrongful activities from other executives of Compass.  *See, e.g.*, *id.* ¶¶ 118, 119-43, 172-178; *see also id.* ¶¶ 81, 89.  It was only after Michael and Daniel White were removed from Compass's Board of Directors on February 14, 2019, and

Compass retained the services of a forensic fraud examiner and a separate criminal investigator, that Compass first learned of the injuries that Michael and Daniel White had inflicted on Compass during their years as directors.  *See id.* ¶¶ 95-97.

The wrongful conduct did not cease after Michael and Daniel White left the company. Michael and Daniel White continued to misappropriate funds belonging to Compass.  *See id.* ¶ 182. They also commenced an illegal campaign of retribution against their former employer, attempting to sabotage Compass's client relationships and its reputation in the marketplace (*id.* ¶¶ 165-70), and initiating sham legal proceedings to disrupt Compass's business operations (*id.* ¶¶ 158-64). Moreover, in an illegal scheme spearheaded by Compass's former Information Technology ("IT") administrator, George White, the White Defendants sought to extort funds from Compass and – when the attempt at extortion was unsuccessful – locked Compass out of its own web domain, including all of the employee email accounts and business records that were maintained using that domain.  *See id.* ¶¶ 144-57.  George White, the specific individual with the means and access to implement this IT lockout, did so in collusion with Daniel and Michael White.  *See id.*  The Complaint avers evidence that Michael White is financially supporting the IT lockout, the IT lockout has facilitated further misappropriation of trade secrets, and the White Defendants have been using their control of Compass's historical data to spoliate evidence that could further expose Michael and Daniel White's criminal wrongdoing.  *See id.* ¶¶ 156-57, 226.  The IT lockout – which continues to this day – has not only had a devastating impact on Compass's business operations and client relationships, but has also impaired Compass's ability to uncover the full extent of the White Defendants' wrongdoing because Compass has limited access to its communications and business records from the time period when the White Defendants were officers, directors, and employees.  *See id.* ¶¶ 144-57.

On February 14, 2022, three years after the removal of Michael and Daniel White from Compass's Board of Directors, and just under three years from when the White Defendants first blocked Compass from accessing its own email accounts and business records, Compass filed the Complaint initiating this action.

## LEGAL STANDARD

As to the White Defendants, the Complaint asserts some claims that must satisfy the notice pleading requirements of Federal Rule of Civil Procedure ("Rule") 8(a) (Counts XI, XV, XXII), and others that must satisfy the heightened pleading requirement of Rule 9(b) (Counts III, IV, X, XVI, XXI).[1]

For the claims subject to Rule 8(a) to withstand a motion under Rule 12(b)(6), the Complaint must contain "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). A plaintiff need not include "detailed factual allegations" to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. The Court must "accept[] all well-pled facts as true and construe [] these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The Court must also "draw all reasonable inferences [from the facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citation omitted). The purpose of a Rule 12(b)(6) motion is to "'test[] the sufficiency of a complaint,' not to 'resolve contests surrounding the facts, the merits of a claim, or the applicability

---

[1]     The RICO claims (Counts III and IV) must only satisfy Rule 9(b) to the extent that the predicate acts sound in fraud, but since all predicate acts are plainly alleged with the requisite specificity – whether required or not – the distinction is largely immaterial. *See Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F. Supp. 2d 298, 326 (D. Md. 2000) ("Rule 9(b) applies to RICO claims where the alleged predicate acts involved fraud").

of defenses.'" *Equity Prime Mortg., LLC v. 1st Fin., Inc.*, No. 17-cv-3754, 2019 WL 859135, at

\*3 (D. Md. Feb. 22, 2019) (Russell, J.) (alteration in original) (quoting *King v. Rubenstein*, 825

F.3d 206, 214 (4th Cir. 2016)).

Rule 9(b) requires particularity when pleading "fraud or mistake," while allowing

"[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally."

Fed. R. Civ. P. 9(b).  Rule 9(b) "does not require the elucidation of every detail of the alleged

fraud." *Mylan Lab'ys, Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1074 (D. Md. 1991).  Moreover,

federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the

legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per

curiam).

## ARGUMENT[2]

## I.   THE STATUTE OF LIMITATIONS IS NOT A BAR TO ANY OF COMPASS'S CLAIMS

The statute of limitations does not begin to run until the injured party either discovers the

injury or should have discovered it through reasonable diligence.  Based on the filing date of this

case, any RICO claims accruing after February 14, 2018 (*i.e.*, four years prior to the filing of the

Complaint) and tort claims accruing after February 14, 2019 (*i.e.*, three years prior to the filing of

the Complaint) are timely.  *See Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S.

143, 152 (1987) (holding that civil RICO claims have a statute of limitations of four years); Md.

Code Ann., Cts. & Jud. Proc. § 5-101 ("A civil action at law shall be filed within three years from

the date it accrues").  In order to prevail on their motions to dismiss, the White Defendants have

---

[2]     The White Defendants incorporate by reference certain arguments raised in the motions to dismiss by Defendants Flywheel Digital LLC, James Columbus DiPaula, Patrick Miller, and Ascential plc (collectively referred to herein as the "Flywheel Defendants").  Compass, in turn, incorporates by reference all the responsive arguments made in its opposition to the Flywheel Defendants' motion to dismiss.  *See* ECF No. 44 (the "Flywheel Opposition").

the burden to prove Compass's claims accrued before these dates.  *See CX Reinsurance Co. v. Leader Realty Co.*, 219 F. Supp. 3d 542, 546 (D. Md. 2016) (denying motion to dismiss based on the statute of limitations, holding it is the "defendant[] who bears the burden of establishing the defense").  The White Defendants have failed to carry their burden, and so their motions must be denied.[3]

### A.  The White Defendants Have Not Carried Their Burden of Establishing Any Claim Accrued Prior to February 14, 2019

The Court "generally cannot reach the merits" of a statute of limitations defense at the pleading stage. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc).  Only "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint" will a court, under Rule 12(b)(6), dismiss a complaint based on an affirmative defense.  *Goodman*, 494 F.3d. at 464.  Motions to dismiss are rarely granted on statute of limitation defenses precisely because the application of a limitations period often entails a fact-intensive inquiry, *id*. at 465-66, and the defendants bear "the burden of establishing the affirmative defense" predicated on limitations.  *Id*. at 464.  The White Defendants have failed to carry that burden here.

The Parties agree that the statute of limitations did not begin to run on any of Compass's claims until it "discovered, or should have discovered, the injury."  Daniel Br. at 4; M&G Br. at 7 (standard for RICO claims); Daniel Br. at 5; M&G Br. at 9 (standard for tort claims).  As set forth in the Complaint, Compass did not discover any harm inflicted by the White Defendants until ***after*** February 14, 2019, when it removed Michael and Daniel White from Compass's Board of Directors and retained a forensic fraud examiner and separate criminal investigator to investigate

---

[3]     Michael and George White's memorandum of law in support of their motion to dismiss, ECF No. 41, is cited herein as "M&G Br."  Daniel White's memorandum of law in support of his motion to dismiss, ECF No. 42-1, is cited herein as "Daniel Br."

Michael and Daniel White's conduct during their time at Compass.[4]  *See* Compl. ¶¶ 95-97.  In their

motions to dismiss, the White Defendants do not contest the allegation that Compass was unaware

of the injuries inflicted by the White Defendants until after February 14, 2019.  *See* M&G Br. at

7-10; Daniel Br. at 4-6.

Instead, the White Defendants' only argument in support of their motions to dismiss is that

they contend their illegal activities **could have** been discovered "on or about the time they occurred

with reasonable diligence from Compass's own accounting records."  Daniel Br. at 5; *see also*

M&G Br. at 8-9 (contending the misconduct was discoverable by "reasonable diligence through

Compass's financial and accounting records").[5]  But, as a threshold matter, the White Defendants

do not dispute that Michael and Daniel White were both directors of Compass, that Michael White

was also the "Vice President of Operations and Comptroller of Compass," entrusted with

"overseeing the bookkeeping and financial accounts," and that both he and Daniel White owed

Compass a fiduciary duty.[6]  *See* Compl. ¶¶ 19, 93.  That fiduciary relationship did not conclude

until February 14, 2019, when Michael and Daniel White were removed from Compass's board of

directors.  *See Shenker v. Laureate Educ., Inc.*, 983 A.2d 408, 420 (Md. 2009) (Maryland law

---

[4]  Michael White argues – in a single sentence in a footnote – that claims against him should accrue no later than November 23, 2018, because that was the date he was supposedly "terminated from Compass."  M&G Br. at 10 n.6.  But the Complaint specifically alleges that (i) this was the date he lost his role as Vice President of Operations, not the date when he was removed from Compass's Board of Directors; (ii) his termination as Vice President of Operations was the result of an unprofessional email, not because Compass had uncovered any of his many acts of wrongdoing alleged in the Complaint; and (iii) Compass did not learn of the harm Michael had caused while a director of Compass until after February 14, 2019.  *See* Compl. ¶¶ 94-97.  The Court must construe these allegations as true for the purposes of resolving this motion.  *See Nemet Chevrolet*, 591 F.3d at 255.

[5]  Although the White Defendants address the RICO and tort claims separately, they advance the same argument as to each category of claims.  *See* Daniel Br. at 4-6; M&G Br. at 7-10.

[6]  The misconduct personally attributable to George White occurred within three years of the filing of the Complaint.  *See* Comp. ¶¶ 144-57.

imposes a fiduciary duty on directors of corporations); *DCG & T ex rel. Battaglia/Ira v. Knight*, 68 F. Supp. 3d 579, 587 (E.D. Va. 2014) (Virginia law imposes a fiduciary duty on directors of corporations).   This is relevant to determining when Compass's claims accrued because, "[a]lthough a party is usually required to exercise ordinary diligence to discover fraudulent conduct of the opposite party, ***different standards are applied where fiduciaries are involved***." *Merchants Mortg. Co. v. Lubow*, 339 A.2d 664, 669 (Md. 1975) (emphasis added) (holding lower standard of diligence applied to claims asserted against former officer and director of corporation).   The reason for this is that "the existence of a continuous, fiduciary relationship permits a complaining party to trust, albeit not blindly, that such a relationship will not be violated and that the [services] he or she receives will not be provided negligently." *Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 360 Md. 76, 108–09, 756 A.2d 963, 980 (Md. 2000)*; see also Spinelli, Kehiayan-Berkman, S.A. v. Imas Gruner, A.I.A., & Assocs.*, 602 F. Supp. 372, 375 (D. Md. 1985) ("[W]here a fiduciary duty or relationship exists between the plaintiff and defendant, the failure to use due diligence in discovering the claim may be excused.").

Thus, for the White Defendants to suggest that an ***independent audit*** of Compass's accounting records could have uncovered their wrongdoing is irrelevant.   Unless and until it was on inquiry notice of the alleged wrongdoing, Compass was under no obligation to conduct such an audit.   Compass was entitled to rely on the fiduciary it entrusted with "overseeing [its] bookkeeping and financial accounts" (Comp. ¶ 93) and was "under no duty to make inquiries about the quality or bona fides of the services received" in order to prevent the statute of limitations from running. *Frederick Rd. Ltd. P'ship*, 756 A.2d at 974-75.   Michael and George White do not contend that Compass was on inquiry notice as to their wrongdoing, *see* M&G Br. at 9-10 (arguing only that "reasonable diligence" could have uncovered the wrongdoing), and while Daniel White makes the

conclusory contention that Compass should have been on inquiry notice, he does not identify <u>any</u> facts that were known to Compass that should have prompted such an inquiry.  *See* Daniel Br. at 5-6.  Accordingly, the White Defendants have failed to establish that any of Compass's claims are time-barred. *See Frederick Rd. Ltd. P'ship*, 756 A.2d at 976 ("facts placing the confiding party upon inquiry [notice]" about a fiduciary's misconduct may trigger the statute of limitations, but "the burden is upon the trusted party to prove such [] knowledge") (quoting *Desser v. Woods*, 296 A.2d 586, 593 (Md. 1972)).

Furthermore, even setting aside the fiduciary obligations of the White Defendants, the Complaint alleges in detail how the White Defendants controlled and manipulated "Compass's own accounting records" in order to prevent anyone exercising a reasonable level of diligence from discovering their wrongdoing.  Because manipulation of the accounting records was not facially apparent, it was only through the heightened scrutiny of a forensic fraud examiner and a separate criminal investigator – retained after February 14, 2019 – that Compass was able to identify the harms that had been covered up by Michael and Daniel White during their time as directors.  *See* Compl. ¶¶ 95-97.

Below is a summary of the Complaint's allegations with regard to the White Defendants' personal misconduct prior to February 14, 2019, and the specifically pled bases for why a reasonably diligent review of "Compass's own accounting records" would not have uncovered the alleged wrongdoing:

- **The Secret Compass Bank Account Scheme:**  Michael and Daniel White created ***secret*** bank accounts, "without Compass's knowledge or approval," into which they deposited stolen checks from Compass's clients, and which they then used for personal expenses.  Compl. ¶¶ 99-107.  A reasonably diligent review of Compass's accounting records would not have revealed the existence of secret bank accounts that were intentionally concealed from Compass.  *See id.*

- **The Ghost Employee Scheme:** Michael and Daniel White added several family members and friends to the Compass payroll and benefits programs, none of whom were employees. *See id.* ¶¶ 108-18. "Michael intentionally covered up these ghost employees in the Compass payroll system by creating fictitious spreadsheets and reports to provide to corporate leadership . . . . Michael's falsified records prevented Compass from discovering the ghost employee scheme until Compass later initiated an investigation following the removal of Daniel and Michael from their roles at Compass." *Id.* ¶ 118.

- **IRS Tax Check Scheme:** Michael White manipulated Compass's payroll system so that millions of dollars were sent to the IRS as "tax withholding" payments for Michael White, Daniel White, and their spouses, with the intention that these individuals would later claim those overpayments from the IRS as "tax refunds." *Id.* ¶¶ 119-25. This allowed Michael and Daniel White to embezzle millions of dollars from Compass, while concealing those sums in ordinary payments Compass made to the IRS each month, such that a reasonably diligent review of Compass's accounting records would not have uncovered the malfeasance. *See id.*

- **The Shareholder Loan Scheme:** Michael and Daniel White embezzled more than $1 million in direct payments from Compass, which they disguised as principal and interest payments on shareholder loans they purportedly had made to the company. *See id.* ¶¶ 126-43. A reasonably diligent review of Compass's accounting records would not have been sufficient to determine that these payments were fraudulent in nature, and not legitimate installment payments on outstanding debt. *See id.*

- **Personal Use of Company Credit Cards:** Compass issues American Express cards to its employees, but uses a platform called "Expensables" to ensure that the cards are only used for legitimate business expenses. *See id.* ¶¶ 172-73. The employee responsible for reviewing and approving credit card charges was Michael White. *See id.* Michael White terminated the link between his and Daniel White's corporate credit cards and Expensables so that Compass would not be able to learn that they had been using the company credit cards for personal expenses. *See id.* ¶¶ 174, 178.

- **Aiding and Abetting the Flywheel Defendants' Theft of Trade Secrets and Unfairly Competing Enterprise:** In late 2015, when the Flywheel Defendants were building their competing business venture based on trade secrets and proprietary information stolen from Compass, Michael and Daniel White stole tens of thousands of dollars from Compass and transferred it to the Flywheel Defendants. *See id.* ¶¶ 202-08. The payments to the Flywheel Defendants were made as cashiers' checks, using funds drawn from personal checking accounts, meaning they were unknown to Compass. *See id.* The theft of funds from Compass was disguised as a severance payment and was not paid directly to its intended recipients (Defendants DiPaula and Miller) but rather to an intermediary (Daniel White), meaning a reasonably diligent review of Compass's accounting records would not have been sufficient to determine the improper nature of the transaction. *See id.*

Accepting these allegations as true – as the Court must for purposes of this motion – Compass could not have learned of its claims through the exercise of reasonable diligence prior to February 14, 2019. *See Nemet Chevrolet*, 591 F.3d at 255 (on a motion to dismiss, the court must "accept[] all well-pled facts as true and construe [] these facts in the light most favorable to the plaintiff"). Accordingly, the White Defendants have failed to carry their burden of proving any claim is time-barred on the face of the Complaint, and their motion should be denied. *See CX Reinsurance*, 219 F. Supp. 3d at 546 (court denies motion to dismiss based on the statute of limitations because it is the "defendant[] who bears the burden of establishing the defense," and that burden is rarely carried at the pleading stage).

### B. Even If Any Claims Accrued Prior to February 14, 2019 (They Did Not), the Statute of Limitations Would Have Been Tolled

Even if the White Defendants had established that any of Compass's claims accrued more than three years prior to commencement of this action – which for the reasons set forth above, they have not – there are two separate tolling doctrines that would apply and toll the statute of limitations until at least February 14, 2019: the doctrines of fraudulent concealment and adverse domination. The application of either doctrine renders Compass's claims timely, and both are applicable here.

<u>Fraudulent concealment</u>: When a defendant acts through fraud or concealment to frustrate a plaintiff's ability to discover a claim, the statute of limitations is tolled until "the party discovered, or through the exercise of ordinary diligence should have discovered the fraud." *Dual Inc. v. Lockheed Martin Corp.*, 857 A.2d 1095, 1105 (Md. 2004) (quoting Md. Code Ann., Cts. & Jud. Proc. § 5-203). Even if Compass's claims accrued prior to February 14, 2019 – which they did not – the statute of limitations would have been tolled by the actions the White Defendants took to fraudulently conceal their misconduct. As set forth above, the Complaint pleads the

specific steps the White Defendants took to fraudulently conceal their wrongdoing from Compass and others.  *See* Compl. ¶¶ 99-143, 171-82, 202-08.  The Complaint also pleads facts establishing Compass's due diligence.  *See id.* ¶¶ 95-96. Specifically, the Complaint demonstrates that when Michael and Daniel White began acting in a manner that was openly disruptive to Compass's business operations, Compass removed them from the company's Board of Directors, and promptly hired a forensic fraud examiner and separate criminal investigator to investigate whether they had engaged in any misconduct while directors.  Compl. ¶¶ 94-96.  For the purposes of a motion to dismiss, the Court must interpret these facts in the light most favorable to Compass, and they preclude dismissal based on the statute of limitations.  *See Mathews v. Cassidy Turley Md., Inc.*, 80 A.3d 269, 290 (Md. 2013) ("Whether a plaintiff's failure to discover a cause of action was attributable to fraudulent concealment by the defendant is ordinarily a question of fact to be determined by the factfinder, typically a jury.").

Adverse domination:  Where, as here, the plaintiff is a corporation that has been injured by the malfeasance of its own officers or directors, the doctrine of adverse domination tolls the statute of limitations until a disinterested majority of nonculpable directors controls the corporation. *Hecht v. Resol. Tr. Corp.*, 635 A.2d 394, 402 (Md. 1994).  Maryland courts adopted the adverse domination doctrine because "control of the association by culpable directors and officers precludes the possibility of filing suit because these individuals can hardly be expected to sue themselves or to initiate any action contrary to their own interests."  *Id.* (citations and internal quotation marks omitted).  The adverse domination doctrine tolls the statutes of limitations for not only officers and directors of a corporation, *i.e.*, Daniel White and Michael White, but also individuals whose misconduct went unaddressed due to the culpable directors' influence over the corporation, *i.e.*, George White, who reported directly to Michael White (Compl. ¶ 92).  *See Bank*

*of Am. v. Jericho Baptist Church Ministries, Inc.*, No. 15-cv-02953, 2017 WL 193498, at *4 (D. Md. Jan. 17, 2017); *see also Bornstein v. Poulos*, 793 F.2d 444, 448 (1st Cir. 1986) (applying the adverse domination doctrine to toll claims against an outside attorney); *Fed. Sav. & Loan Ins. Corp. v. Williams*, 599 F. Supp. 1184, 1194 (D. Md. 1984) (applying the adverse domination doctrine to toll claims against a lower-level employee); *Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873, 879 (9th Cir. 1984) (applying the adverse domination doctrine to toll claims against an outside audit firm).   As set forth in the Complaint, a disinterested majority of nonculpable directors did not control Compass until February 14, 2019, when the Compass Board of Directors voted to remove Michael and Daniel White as directors.  Compl. ¶ 95.

Accordingly, under either of the doctrines described above, even if Compass's claims had accrued prior to February 14, 2019 – which they did not – the statutes of limitations for Compass's claims against the White Defendants would have been tolled until February 14, 2019, rendering all of Compass's claims timely.

## II.      THE RICO CLAIMS (COUNTS III AND IV)  ARE ADEQUATELY PLED

Compass brings claims under Sections 1962(c) and (d) of the RICO Act.  *See* Compl. ¶¶ 249-68.  "A violation of § 1962(c) . . . requires (1) [injurious] conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).  Section 1962(d) of the RICO Act makes it independently unlawful for any person to "conspire" to commit a violation of Section 1962(c).  *See* 18 U.S.C. § 1962.  The White Defendants seek dismissal of the RICO claims against them by contesting the second and third elements:  the use of an "enterprise," and a "pattern" of racketeering activity.  *See* Daniel Br. at 7; M&G Br. at 11-13.  For the reasons set forth below, the White Defendants' arguments for dismissal are without merit and their motions should be denied.

**A.      Compass Has Adequately Alleged the RICO Enterprise**

In order to plead a viable RICO claim, the Complaint may allege *either* a formal enterprise

through which the defendants committed their pattern of racketeering activities, *or* an "association-

in-fact." *Mitchell Tracey v. First Am. Title Ins. Co.*, 935 F. Supp. 2d 826, 842 (D. Md. 2013).  The

White Defendants contend the Complaint fails to identify "any specific enterprise among the White

Defendants" at all.  M&G Br. at 11-12; Daniel Br. at 8-9.  But this is simply incorrect.  The RICO

enterprise alleged in the Complaint ***is Compass itself***; a legitimate enterprise "engaged in . . .

interstate commerce," "through which" the White Defendants conducted a pattern of unlawful

racketeering activity.  *See* 18 U.S.C. § 1962; *see also* ECF No. 44 at 13-17.  The RICO Act itself

defines the term "enterprise" as including "corporations," and the legislative history of the Act

makes it clear that the drafters envisioned scenarios where a legitimate business – such as Compass

– would be infiltrated by bad actors, rendering it both a victim of racketeering activity and also the

"enterprise" through which that racketeering activity was committed.  *See* 18 U.S.C. § 1961(4);

*see also* ECF No. 44 at 13-17.

There is no dispute that the White Defendants were officers and directors of Compass and

that the Complaint alleges in detail how they committed their racketeering activities through their

positions as officers and directors of Compass.  *See, e.g.*, Compl. ¶¶ 99-182.  Accordingly, the

"enterprise" element of Compass's RICO claims is adequately pled.  *See* S. Rep. No. 91–617, 76-

77 (listing examples of legitimate enterprises to include advertising agencies, banking institutions,

and insurers, among others).

**B.      Compass Has Adequately Alleged a Pattern of Racketeering Activity by Each
of the White Defendants**

A "pattern of racketeering activity" requires at least two related predicate acts of

racketeering activity within a ten-year time-period.  *Starr v. VSL Pharms., Inc.*, 509 F. Supp. 3d

417, 438 (D. Md. 2020).   The types of misconduct that constitute "racketeering activity" are enumerated in Section 1961.   *See* 18 U.S.C. § 1961(1).   "Predicate acts are 'related' if they have 'the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'"   *Starr*, 509 F. Supp. 3d at 438. (citation omitted).   The Complaint pleads that each of the White Defendants engaged in a pattern of racketeering activity, and – for the reasons set forth below – the White Defendants' arguments to the contrary are without merit.

### 1.   Michael White

Michael White's only argument as to why the Complaint supposedly does not plead a pattern of racketeering against him is a single, conclusory sentence asserting that the Complaint "depicts nothing more than a 'garden variety' dispute among brothers/owners about the use of their family-run company's funds," and therefore is not the kind of "organized, longterm, habitual criminal activity" that the RICO statute was intended to address.   *See* M&G Br. at 11, 13-14.   But "organized, longterm, habitual criminal activity" is an apt description of precisely what is alleged in the Complaint, especially as to Michael White.   The Complaint sets forth particularized allegations of ***dozens of predicate acts*** committed by Michael White, in furtherance of no fewer than ***nine separate schemes***, perpetrated over the course of ***more than 20 years***.   *See generally* Compl.   ¶¶ 99-182, 202-08.

This is no "garden variety" dispute or family squabble; it concerns a decades-long criminal undertaking, whose participants went so far as to employ government instrumentalities in furtherance of their fraudulent acts.   *See id.* ¶¶ 119-25 (White Defendants used the IRS to launder embezzled funds).   A recent precedent from this District is instructive.   In *Capital Lighting & Supply, LLC v. Wirtz*, the court recognized that the "initial scheme" the defendants had engaged in was a "rather straightforward" plan, whereby an "inside man" would allow companies to overbill

his employer and then use his authority within the company to "cover their tracks."  No. 17-3765, 2018 WL 3970469, at *7 (D. Md. Aug. 20, 2018).  The court held that, "had it stopped there, perhaps Plaintiff's RICO claims would be unsustainable.  It did not stop there, however."  *Id.*  "On the contrary, the Complaint alleges a host of schemes that evolved over time to increase Defendants' returns and to avoid detection."  *Id.*   Thus, while a single scheme might not rise to the level of a RICO violation, "the scope, duration, and degree of Defendants' conduct mandates a different result.  Defendants did not engage in a single scheme to defraud Plaintiff.  Nor is this a narrow dispute between former family friends.  Rather, the Complaint alleges . . . a years' long endeavor by *multiple* individuals . . . using *multiple* schemes to infiltrate, corrupt, and profit from an otherwise *legitimate business*.  **Put simply, Defendants allegedly turned an entire division of Plaintiff's company into their own personal piggy bank.  This type of extensive, ongoing, commercial fraud falls squarely within the purview of RICO's pattern requirement**."  *Id.* at *9 (emphasis in bold added).

That is precisely the situation here.  As the years went by, the White Defendants engaged in an increasing number of fraudulent schemes to extract funds from Compass and employed increasingly extreme measures to cover up their illegal activities, culminating in the IT lockout in 2019.  *See* Compl.  ¶¶ 99-182, 202-08.  Thus, as in *Capital Lighting*, what began as a "garden variety" fraud metamorphosed into the kind of "years' long endeavor . . . using *multiple* schemes to infiltrate, corrupt, and profit from an otherwise *legitimate business*" that warrants liability under RICO.  2018 WL 3970469, at *9.  Accordingly, Michael White's motion to dismiss the RICO claim must be denied.

### 2.     George White

George White argues that he only stands accused of one act of racketeering activity – the IT lockout of Compass's email accounts and business records that began on April 30, 2019 – and

that this is insufficient to establish a "pattern" of racketeering activity by him.  M&G Br. at 13.

The Complaint alleges, however, that George White personally committed *at least three* predicate

criminal acts, which is sufficient to establish liability under the RICO Act.  *See Park v. Jack's

Food Sys., Inc*., 907 F. Supp. 914, 919 (D. Md. 1995) (denying motion to dismiss where each

defendant was alleged to have committed two predicate acts).  Aside from the IT lockout itself –

which George White does not dispute is adequately alleged – the Complaint further alleges that

George committed a separate criminal act by attempting to extort money from Compass prior to

the IT lockout (Compl. ¶¶ 146-49), and subsequently engaged in spoliation of evidence of the other

White Defendants' criminal activity, *i.e.*, obstruction of a criminal investigation (*id.* ¶¶ 156-57).

Moreover, George White is still preventing Compass from accessing its email and business

records, meaning in addition to committing several predicate acts of criminal activity, he is

engaged in an ongoing wrong that has been continuing for more than three years.  *See* Compl. ¶¶

151, 156-57.  That is precisely the kind of ongoing, illegal behavior that gives rise to liability under

the RICO Act.  Accordingly, George White's motion to dismiss the RICO claim must be denied.

### 3. Daniel White

Daniel White asserts several arguments why he contends there is no "pattern of

racketeering activity" alleged against him.  *See* Daniel Br. at 9-12.  All are equally meritless.

*First*, Daniel White argues in conclusory terms that the Complaint only accuses him of

"single, limited scheme to defraud," as opposed to multiple, related acts of illegal conduct.  *Id.* at

10.  This is plainly not the case.  The Complaint alleges that Daniel participated in *nine* separate

illegal schemes over the course of 20 years.  *See* Compl. ¶¶ 99-182, 202-08.  Specifically, in

addition to the theft of trade secrets from Compass, Daniel is alleged to have participated in the

"Secret Compass Bank Account Scheme," "Ghost Employee Scheme," "IRS Tax Check Scheme,"

"Shareholder Loan Scheme," "Information Technology Lockout of Compass Business Records

and Accounts," "Sham Legal Campaign," "Anonymous Campaign Against Compass," and "Personal Use of Compass Corporate Credit Cards." *See id.* As alleged in the Complaint, these nine separate schemes all shared "the same or similar purposes, results, participants, victims, [and/or] methods of commission," and as such they are sufficiently related to constitute a pattern of racketeering activity. *See United States v. Mathis*, 932 F.3d 242, 260 (4th Cir. 2019) (racketeering acts committed by various combinations of the defendants, sharing a common purpose, gave rise to RICO liability).

**Second**, Daniel White argues that a RICO claim typically involves multiple alleged victims, and the present case is only being brought by a single plaintiff, Compass. *See* Daniel Br. at 11. But he acknowledges that a plethora of victims is not a necessary element of a RICO claim, and that the Fourth Circuit has held "there is no *per se* rule against a RICO claim with only one victim." *Id.* (citing *Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000)). Indeed, a recent decision in this District upheld a RICO claim based on precisely the type of conduct alleged here: "***Put simply, Defendants allegedly turned an entire division of Plaintiff's company into their own personal piggy bank. This type of extensive, ongoing, commercial fraud falls squarely within the purview of RICO's pattern requirement***." *Cap. Lighting & Supply*, 2018 WL 3970469, at *9 (emphasis added); *see also id* at *8 ("even assuming" the alleged misconduct had only one victim, the complaint still stated a claim for relief under RICO).

Moreover, Compass was not the only entity who has been victimized by the White Defendants' fraudulent representations. In pursuit of their fraudulent schemes, they have victimized individual employees and officers of Compass (*see, e.g.*, Compl. ¶ 159 (describing harassment and defamation of Compass president Todd Mitchell)), disrupted the business relationships of Compass's clients (*see, e.g.*, *id.* ¶¶ 165-68 (describing interference with

18

contractual relationships of Colgate Company, Johnson & Johnson, Duracell, and Bush's Beans)),
and defrauded the IRS in order to use this government instrumentality in a money-laundering
operation (*see id.* ¶¶ 119-25).  Thus, even if there were a rule that required multiple victims in
order to plead a viable RICO claim – which there is not – the Complaint adequately pleads that
others besides Compass have been victimized by the White Defendants' misconduct.  *See CVLR
Performance Horses, Inc. v. Wynne*, 524 F. App'x 924, 926 (4th Cir. 2013) (denying motion to
dismiss where defendants' racketeering activity had injured not just plaintiff corporation but also
victimized that corporation's individual employees and insurers).

     ***Third***, Daniel White argues that his illegal activities ceased when he was terminated from
Compass's Board of Directors, and that there is therefore no "continuous" misconduct capable of
sustaining a RICO claim.  *See* Daniel Br. at 9-10.  As a threshold matter, this argument fails
because it contradicts the allegations in the Complaint, which specifically allege that Daniel is
***continuing*** to commit predicate, illegal acts against Compass.  *See, e.g.*, Compl.  ¶¶ 165-70 (the
"Anonymous Campaign Against Compass" has been continuing "[f]rom October 2019 to present,"
and is specifically tied to Daniel White).  Moreover, Daniel White is simply wrong as a matter of
law to argue that there must be a threat of ongoing future harm in order for a RICO claim to lie.
The law is abundantly clear that in order to establish a pattern of racketeering activity, a plaintiff
can ***either*** point to ongoing, "open-ended" conduct that threatens to continue into the future ***or***
historical, "closed-ended" conduct that continued for a "substantial" period of time.  *Starr*, 509 F.
Supp. 3d at 438.  "The period of time to establish this 'closed-ended' form of continuity typically
must last over a year."  *Id.* (citation omitted); *see also Ekstrom v. Cong. Bank*, No. 20-1501, 2020
WL 6565251, at *23 (D. Md. Nov. 9, 2020) (illegal conduct that allegedly stretched over an 18-
month period was sufficient to state a viable RICO claim for a "closed-ended" scheme).  Here, the

Complaint not only alleges ongoing racketeering activities, but also a historical course of misconduct by Daniel White that lasted ***more than 20 years***. *See* Compl. ¶¶ 99-182, 202-08. This is plainly sufficient to establish a "continuous" course of racketeering activity under either an "open-ended" or "closed-ended" theory of liability. *See Starr*, 509 F. Supp. 3d at 438.

Accordingly, accepting the allegations in the Complaint as true and drawing all reasonable inferences in Compass's favor, Compass has adequately pleaded RICO claims against each of the White Defendants, and their motions to dismiss must be denied.

## III.   THE STATE LAW CLAIMS ARE ADEQUATELY PLED

### A.   The White Defendants Do Not Dispute That, If Timely, the Breach of Fiduciary Duty Claim (Count XXIII) Is Adequately Pled

Aside from the statute of limitations, the White Defendants raise no arguments for dismissal of Compass's breach of fiduciary duty claim. *See* Compl. ¶¶ 352-57. For the reasons set forth above, this claim is timely, and so it must be allowed to proceed.

### B.   The Conspiracy Claims (Counts XI, XV, and XVI) Are Adequately Pled

The White Defendants advance two arguments regarding the conspiracy claims. First, they make the unremarkable argument that ***if*** (and only if) the Court dismisses the underlying tort claims, then it should dismiss the conspiracy claims as well. M&G Br. at 15; Daniel Br. at 14, 17. But, as set forth herein and in Compass's Flywheel Opposition, all of the underlying tort claims are well-pled and so there is no basis for dismissal of the conspiracy claims. *See Cap. Lighting & Supply*, 2018 WL 3970469, at *15 (denying motion to dismiss conspiracy claims where underlying tort claims were adequately pled).

Next, the White Defendants argue that the Complaint only contains "conclusory allegations" as to a "meeting of the minds" or "agreement" between the conspirators. Daniel Br. at 15, 17; M&G Br. at 15-16. But it is well-established that a complaint does not need to allege a

formal agreement between the defendants in order for a civil conspiracy claim to be adequately pled.  *See Great Am. Ins. Co. v. Nextday Network Hardware Corp.*, 73 F. Supp. 3d 636, 643 (D. Md. 2014); *see also Adobe Sys. Inc. v. Gardiner*, 300 F. Supp. 3d 718, 731 (D. Md. 2018).  The reason for this is that "[p]roof of civil conspiracy . . . can be in the form of circumstantial evidence. A civil conspiracy can be established 'by inferences drawn from the nature of the acts complained of[,] the individual and collective interests of the alleged conspirators, the situation and relation of the parties, their motives and all the surrounding circumstances preceding and attending the culmination of the common design.'"  *Great Am. Ins. Co.*, 73 F. Supp. 3d at 643 (citation omitted).

Here, the Complaint undoubtedly pleads circumstantial evidence indicative of a conspiracy among all the Defendants.[7]  The Complaint pleads specific facts showing:  Michael and Daniel White abused their positions within Compass to enrich one another, their family members and friends in the same ways (Compl. ¶¶ 99-143, 171-82); Michael White doctored books and records to cover up not just his own tracks, but also those of his brother, Daniel (*id.*); Michael White has provided financial support to the IT lockout spearheaded by his son, George White (*id.* ¶¶ 156-57); George has in turn used the IT lockout to help cover up the wrongdoing of his father and uncle (*id.*); all the White Defendants have worked toward a common goal of undermining Compass and damaging its relationship with its clients, which is a goal shared by the Flywheel Defendants (*id.* ¶¶ 75-90, 144-70); Daniel White has an undisclosed financial interest in Flywheel Digital LLC

---

[7]      The White Defendants contend the Complaint does not plead facts sufficient to establish that they conspired with the Flywheel Defendants to misappropriate trade secrets and unfairly compete with Compass.  *See* M&G Br. at 15-16, Daniel Br. at 14-15.  This is not the case, but even if it were, the Court must still deny their motions to dismiss as to Count XVI because there is no serious dispute that the Complaint contains well-pled allegations that the White Defendants conspired **with one another** to defraud Compass.  *See Hill v. Brush Engineered Materials, Inc.*, 383 F. Supp. 2d 814, 821 (D. Md. 2005) (plaintiff does not have to plausibly allege all defendants conspired with all other defendants in order to state a viable claim; plausible allegations of "different combinations of two or more persons conspiring to fraudulently conceal" are sufficient).

("Flywheel") (*id.* ¶¶ 81, 89, 202-08); the White Defendants have provided material financial support to the Flywheel Defendants (*id.*); and Daniel White abused his position as acting General Counsel to prevent Compass from discovering or addressing the theft of trade secrets and unfair competition by the Flywheel Defendants (*id.*).   At this stage in the proceedings, where all these facts must be accepted as true and all reasonable inferences that can be drawn from them construed in Compass's favor, the Complaint plainly pleads sufficient circumstantial evidence to infer the existence of a civil conspiracy.  *See E.I. du Pont de Nemours & Co.*, 637 F.3d at 440.

## C.      The Fraudulent Concealment/Fraud Claim (Count X) Is Adequately Pled

The White Defendants contend that Compass's fraudulent concealment/fraud claim is inadequately pled because the Complaint supposedly does not plead the necessary element of "reliance" on their deceitful representations and omissions.  M&G Br. at 14; Daniel Br. at 15-16. This argument strains credulity.   The Complaint alleges, with specificity, how the White Defendants doctored Compass's books and records in order to make their theft of millions of dollars' worth of Compass's funds appear to be legitimate business expenses. *See* Compl. ¶¶ 99-182.  It is self-evident that Compass would not have willingly funneled ***millions of dollars*** to people who were not employed by Compass, and companies not engaged by Compass, had the White Defendants not fraudulently misrepresented and concealed where those funds were going or how they were being used.  The facts pled in the Complaint are more than sufficient to establish the element of reliance for Compass's fraudulent concealment/fraud claim, especially given that "reliance is a fact-intensive inquiry" not suitable for resolution on a motion to dismiss. *Carlucci v. Han*, 907 F. Supp. 2d 709, 741 (E.D. Va. 2012).

Rather than addressing the allegations referenced above, the White Defendants focus their attention on ***one*** of the many fraudulent misrepresentations and omissions underlying Count X of

the Complaint.[8]  *See* M&G Br. 14; Daniel Br. at 15-16.  Specifically, the White Defendants contend the element of reliance is inadequately pled with regard to Daniel White's fraudulent omission of the fact that he had a financial interest in Flywheel when – in his capacity as acting General Counsel to Compass – he advised Compass's CEO not to pursue any legal action against the Flywheel Defendants in 2014 and 2016.[9]  *See id.*; *see also* Compl. ¶¶ 81, 89.  The White Defendants' sole basis for this argument is that a ***2013 organizational chart*** excerpted in the Complaint identifies Daniel White as a "Senior Advisor" to Compass, as opposed to assigning him an explicitly legal title such as "General Counsel" or "Senior Legal Advisor."  Daniel Br. at 16.  According to the White Defendants, this "disproves" the allegation that Daniel White – who is a barred attorney in the State of Maryland – was acting as legal counsel when he dispensed his fraudulent advice to Compass's CEO and means that any reliance on that advice was *de facto* unreasonable.  *See id.*

But the fact that Daniel White's job title in ***2013*** did not specifically identify him as a lawyer in no way contradicts or disproves the allegation in the Complaint that he was Compass's acting General Counsel in ***2014 and 2016***.  *See* Compl. ¶ 81.  It certainly does not disprove the allegation that he was asked – in his capacity as a barred attorney, as well as an officer of director and Compass – to provide ***legal advice*** on whether Compass should pursue action against the

---

[8]    The White Defendants' fixation appears to be based on the fact that this act of reliance is specifically discussed under the heading "Count X," whereas the other acts of reliance are pled in the hundreds of paragraphs preceding the heading "Count X," which were then incorporated by reference.  *See* Compl. ¶ 307.

[9]    In a footnote, Daniel White contends there are "no facts" in the Complaint demonstrating he had a financial interest in Flywheel.  Daniel Br. at 16 n.6.  Not so.  The Complaint pleads with specificity that Daniel White made tens of thousands of dollars in unexplained payments to the founders of Flywheel during that company's early stages.  *See* Compl. ¶¶ 203, 205.  Compass is entitled to the "reasonable inference" that Daniel White was an investor in Flywheel.  *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440.

Flywheel Defendants, and fraudulently omitted that he had a financial interest in Flywheel when providing that advice.  *See id.* ¶¶ 81, 89.  At this stage in the proceedings, those allegations must be accepted as true, and they establish a viable claim for fraud.

Next, still focusing on this one and only allegation of fraud, and not the dozens of other allegations underlying Count X, Daniel White contends that his personal financial interest in Flywheel was not a "material fact" necessary to be disclosed, and that Compass has not pled facts sufficient to prove he would have advised Compass any differently had he not had a conflict of interest.  *See* Daniel Br. at 16-17.  But as a matter of law, if an attorney dispensing legal advice has a conflict of interest, then they have a duty to disclose that conflict of interest.  *See Homa v. Friendly Mobile Manor, Inc.*, 612 A.2d 322, 327 (Md. Ct. Spec. App. 1992) ("once an attorney-client relationship exists the attorney owes the client certain fiduciary duties including the duty to disclose any conflicts of interest") (citing *Crest Inv. Tr., Inc. v. Comstock*, 327 A.2d 891, 904-06 (Md. Ct. Spec. App. 1974)).  Daniel White cannot escape liability for his fraudulent omission by claiming his breach of that legal duty was harmless, especially when that would require the Court to resolve a factual dispute over what advice Daniel White would have dispensed ***but for*** his conflict of interest.  *Todman v. Mayor & City Council*, 488 F. Supp. 3d 218, 223 (D. Md. 2020) ("'The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint,' not to 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'") (Russell, J.) (citation omitted).

Daniel White also argues that it is unlikely Compass suffered any damages by not taking immediate legal action against the Flywheel Defendants in 2014 and 2016.  *See* Daniel Br. at 16. But the Complaint alleges that the Flywheel Defendants stole valuable trade secrets from Compass, that Daniel White self-interestedly and fraudulently dissuaded Compass from pursuing legal action

against the Flywheel Defendants, and that as a result Compass faced unfair competition for years longer than it would have done otherwise.  *See* Compl. ¶¶ 81-90.  Accepting these allegations as true, and drawing all reasonable inferences in Compass's favor, as the Court must, it is more than plausible that Compass suffered damages as a result of Daniel White's fraudulent legal advice. *See Dwoskin v. Bank of Am., N.A.*, 850 F. Supp. 2d 557, 570 (D. Md. 2012) (denying motion to dismiss fraud claim where it was "reasonable to infer that but for the alleged misrepresentation" plaintiffs might have been in a more financially advantageous position).

### D.       The Aiding and Abetting Claim (Count XXI) Is Adequately Pled

"In Maryland, a person may be held liable for aiding and abetting 'if he, by any means (words, signs, or motions) encouraged, incited, aided or abetted the act of the direct perpetrator of the tort.'"  *Cap. Lighting & Supply*, 2018 WL 3970469, at \*14 (quoting *Alleco, Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 665 A.2d 1038, 1049 (Md. 1995)).   The White Defendants contend that the Complaint contains no well-pled allegations that the Defendants knowingly encouraged or assisted one another in any of their tortious activity.  *See* Daniel Br. at 17-18.  For the reasons already set forth above, this is untrue.  The Complaint pleads in detail how the White Defendants cooperated to enrich one another at Compass's expense and conceal one another's wrongdoing; and how the White Defendants provided financial support to the Flywheel Defendants as they engaged in their unfair competition and helped protect the Flywheel Defendants from having their theft of Compass's trade secrets uncovered.  *See* Compl. ¶¶ 81, 89, 99-182, 202-08.  At this stage in the proceedings, those allegations are sufficient to state a claim under an aiding and abetting theory of liability.  *See Cap. Lighting & Supply*, 2018 WL 3970469, at \*15 (denying motion to dismiss aiding and abetting claim where the complaint alleged knowing, substantial assistance and, "at least at this stage of the proceeding, Plaintiff's allegations are entitled to all reasonable inferences").

25

Furthermore, while Michael White contends that there are no well-pled facts that suggest he and George White personally aided and abetted the Flywheel Defendants' theft of trade secrets, this is also not the case. The Complaint specifically alleges that on December 1, 2015, Michael White used a fraudulently issued check to steal funds from Compass and transfer them to the Flywheel Defendants to support their unfairly competing enterprise. *See* Compl. ¶ 204. While Michael contends this fraudulently issued check is insufficient to prove that he knew the Flywheel Defendants were building their business based on trade secrets stolen from Compass, this is plainly a factual dispute, and at this stage in the proceedings Compass is entitled to have all reasonable factual inferences drawn in its favor. Similarly, and as set forth above, the Complaint alleges that George White spearheaded the IT lockout and has been destroying Compass's records in part to conceal Michael and Daniel White's previous illegal activity, including their collusion with the Flywheel Defendants. *See id.* ¶¶ 144-57. Again, at this stage in the proceedings, and especially before Compass has been able to conduct discovery, Compass is entitled to have all reasonable factual inferences drawn in its favor. Accordingly, the White Defendants' motions to dismiss must be denied.

### E.    The Conversion Claim (Count XXII) Is Adequately Pled

The White Defendants do not dispute that the conversion claim against George White is adequately pled, and they have not sought to dismiss that claim. *See* M&G Br. at 4. Instead, they move to dismiss the claim solely as to Michael White, falsely claiming that the only fact in the Complaint tying Michael White to the IT lockout is his familial relationship with George White. *See id.* at 16-17. Not so. The Complaint alleges that Michael White was himself an active participant in the IT lockout, an allegation that is supported by the well-pled fact that Michael White has been ***paying*** for the web domain that George White wrongfully seized, and an allegation that is eminently plausible given the well-pled facts that the White Defendants have been using

the IT lockout to destroy incriminating evidence of Michael White's own wrongdoing while a director of Compass. *See* Compl. ¶¶ 156-57. The conversion claim against Michael White is only required to satisfy the notice pleading requirements of Rule 8(a) and, drawing all plausible inferences in Compass's favor, the claim is plainly adequately pled. *See Potomac Conf. Corp. of Seventh-day Adventists v. Takoma Acad. Alumni Ass'n, Inc.*, 2 F. Supp. 3d 758, 771-72 (D. Md. 2014) (where plaintiff pled that defendant had wrongfully taken information from electronic database, and had refused plaintiff's requests to return that information, this was sufficient to state a claim for conversion); *Noel v. PACCAR Fin. Corp.*, No. 18-3936, 2021 WL 4918059, at *9 (D. Md. Oct. 21, 2021) (conversion claim only requires the complaint plead facts sufficient to show the plaintiff had a right to certain property, and the defendant intentionally took possession of that property "without authority or permission").

## IV.    IF THE COURT DISMISSES THE RICO CLAIMS, IT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION OVER THE STATE LAW CLAIMS

In the event the RICO claims are dismissed – which, for the reasons set forth above, they should not be – the Court should exercise supplemental jurisdiction over Compass's state law claims, especially because there is a well-pled claim for trade secret misappropriation against the Flywheel Defendants under the federal Defend Trade Secrets Act, which will continue to proceed before this Court, and overlaps with the state law claims against the White Defendants. "[T]rial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished. Among the factors that inform this discretionary determination are . . . considerations of judicial economy." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (citation omitted). By the time the Court has ruled on the multiple pending dispositive motions, it will have gained considerable familiarity with the underlying factual and legal issues in this case, which weighs in favor of retaining jurisdiction. *See Hall v. Greystar*

27

*Mgmt. Servs., L.P.*, 179 F. Supp. 3d 534, 537 (D. Md. 2016) (holding that, even though "the parties have not yet commenced discovery and that a trial schedule has not been established," the court's familiarity with the issues warranted exercise of supplemental jurisdiction over state law claims after federal claim was dismissed).

## CONCLUSION

For all the reasons stated herein, the White Defendants' motions to dismiss should be denied in their entirety.

Dated: May 16, 2022                     Respectfully submitted,

                                        */s/ Troy. S. Brown, Esq.*
                                        Troy S. Brown, Esq. (admitted pro hac vice)
                                        Rachel A. Ward, Esq. (admitted pro hac vice)
                                        **Morgan, Lewis & Bockius LLP**
                                        1701 Market Street
                                        Philadelphia, PA 19103
                                        troy.brown@morganlewis.com
                                        rachel.ward@morganlewis.com
                                        T. (215) 963-5000
                                        F. (215) 963-5001

                                        Steven A. Luxton, Esq. (MD Bar No. 9812160173)
                                        Natalie A. Bennett, Esq. (admitted pro hac vice)
                                        **Morgan, Lewis & Bockius LLP**
                                        1111 Pennsylvania Avenue
                                        Washington, DC 20004-2541
                                        steven.luxton@morganlewis.com
                                        natalie.bennett@morganlewis.com
                                        T. (202) 739-5559
                                        F. (202) 739-3001

                                        Susan K. Stradley, Esq. (admitted pro hac vice)
                                        **Morgan, Lewis & Bockius LLP**
                                        1000 Louisiana Street
                                        Suite 4000
                                        Houston, TX 77002
                                        susan.stradley@morganlewis.com
                                        T. (713) 890-5000
                                        F. (713) 890-5001
                                        *[continued on next page]*

James J. Kritsas, Esq. (admitted pro hac vice)
**Morgan, Lewis & Bockius LLP**
110 North Wacker Drive
Chicago, IL 60606
james.kritsas@morganlewis.com
T. (312) 324-1000
F. (312) 324-1001

Michael J. Ableson, Esq. (admitted pro hac vice)
**Morgan, Lewis & Bockius LLP**
101 Park Avenue
New York, NY 10178
michael.ableson@morganlewis.com
T. (212) 309-6000
F. (212) 309-6001

Rod J. Rosenstein, Esq. (MD Bar No. 14793)
Mark S. Brown, Esq. (Federal Bar No. 09100)
**King & Spalding LLP**
1700 Pennsylvania Avenue, NW
Suite 900
Washington DC 20006-4707
rrosenstein@kslaw.com
mbrown@kslaw.com
T. (202) 626-9220
F. (202) 626-3737

*Counsel for Plaintiff Compass Marketing, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on May 16, 2022 I electronically served the foregoing documents by ECF on all counsel of record and a courtesy copy by mail to:

Clerk's Office
Attn: Judge Russell
United States District Court
101 W. Lombard St., 4th Floor
Baltimore, MD 21201

*/s/ Troy S. Brown, Esq.*
Troy S. Brown, Esq.