IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| COMPASS MARKETING, INC. | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Civil Action No. 1:22-CV-00379 |
| | : | Judge George Levi Russell, III |
| FLYWHEEL DIGITAL, LLC, *et al.* | : | |
| | : | |
| Defendants | : | |

**REPLY IN SUPPORT OF DEFENDANTS MICHAEL WHITE AND GEORGE WHITE'S MOTION TO DISMISS**

Defendants, Michael White ("Michael") and George White ("George"), by and through counsel, Jeffrey M. Schwaber, Judith G. Cornwell, and Stein Sperling Bennett De Jong Driscoll PC, hereby submit this Reply in Support of Defendants Michael White and George White's Motion to Dismiss the Complaint filed against Michael and George by Compass Marketing, Inc. ("Compass"), and in support thereof, state as follows:

**INTRODUCTION**

In an overtly obnoxious attempt to stir up as much publicity, leverage, and chaos as it can to try to find for himself a payday, John White—acting through the company that he has attempted to take from his brothers and for himself—lumps together hundreds of paragraphs of naked allegations against a potpourri of disparate defendants, alleging conspiracies, misdeeds, and racketeering taking place directly under his watchful eye, over a period of many years. Faced with the predictable—and legally appropriate—challenges to the fact that his claims are

time-barred and in any event are improperly pled, Compass tries to thread needles to bring alleged bad acts more current to suggest they reasonably could have escaped John White's awareness, and to differentiate between the defendants. In all respects, Compass fails.

## ARGUMENT[1]

**I.   NO TOLLING DOCTRINE APPLIES**

   A.   <u>Compass Repudiated its Fiduciary Relationship with Michael.</u>

The existence of a fiduciary relationship will only "toll the statute of limitations if: (1) the relationship continued unrepudiated, (2) there is nothing to put the injured party on inquiry, and (3) the injured party cannot be said to have failed to use due diligence in detecting the fraud." *Windesheim v. Larocca*, 443 Md. 312, n.20 (2015) (quoting *Frederick Rd. Ltd. P'Ship v. Brown & Strum*, 360 Md. 76, 99 (2000)). In this case, on the very face of the Complaint, it is clear that Compass cannot avail itself of this escape hatch to have its Complaint survive the time bar.

Compass relies on the basic principle that "different standards appl[y] where fiduciaries are involved" to excuse wholesale its failure to "exercise ordinary diligence" to discover the White Defendants' purported fraud. Opp. at 8 (quoting *Merchants Mortg. Co. v. Lubow*, 339 A.2d 664, 669 (Md. 1975)). However, Courts are clear that even where there is a fiduciary relationship, "blind[]" trust certainly is not excused, *see Frederick Rd.*, 306 Md. at 109, and "the

---

[1] For the avoidance of any doubt, Michael and George both contest all the allegations against them, but only presume them to be true for purposes of this Motion only, as they are required to do. *See Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted) ("A motion filed under Rule 12(b)(6) challenges the legal sufficiency of the complaint, with the assumption that the facts alleged are true.").

existence of a fiduciary relationship itself … will not indefinitely toll the statute of limitations," *Porter v. GreenPoint Mortg. Funding, Inc.*, Civ. A. No. DKC-11-1251, 2011 WL 6837703, at *6 (Dec. 28, 2011) (applying Maryland law).

Compass's opposition deliberately ignores its concession in the Complaint that on November 23, 2018, John White fired Michael, which stripped Michael of any oversight over the company's financial affairs. *See* Compl. at ¶94. This overt repudiation alone thus negates the possibility that the fiduciary exception postponed accrual beyond November 23, 2018.[2]

      B.      <u>The Statute of Limitations Did Not Toll.</u>

            1.      ***Fraudulent Concealment***

Compass's attempt to the toll statutes of limitations based on "the actions the White Defendants took to fraudulently conceal their misconduct" fairs no better. Opp. at 11. Courts faced with a plaintiff who seeks to invoke Section 5-203 of Md. Code. Ann., Cts. & Jud. Proc., like Compass does here, strictly adhere to the requirement that the complaint must set forth specific allegations related to "how the fraud kept the plaintiff in ignorance of a cause of action, how the fraud was discovered, and why there was a delay in discovering the fraud, despite the plaintiff's diligence." *Porter*, 2011 WL 6837703, at *6 (internal quotations omitted). "Where a plaintiff fails to articulate such facts in the complaint, the doctrine of equitable tolling does not apply." *Id.*

---

[2] Simply because Michael remained a member of Compass's board of directors is of no moment as Compass does not allege that in that role, Michael maintained any financial oversight.

Compass baldly posits that its claims were tolled until it hired a forensic fraud examiner and criminal investigator to investigate Michael and Daniel's alleged misconduct prompted by their removal from the Board of Directors in February 2019. *See* Opp. at 12. Except, Michael had been terminated in November 2018. Compl. at ¶94. The Complaint ignores that date for purposes of its tolling argument and omits any facts that explain "why [Compass] did not make the discovery sooner than they did," *Piper v. Jenkins*, 207 Md. 308, 319 (1955), or why more specifically, in February 2019, Compl. at ¶95, Compass now suddenly was placed on notice of something that was wholly unrelated to its grounds (albeit concocted) for Michael's earlier termination. As such, Compass cannot rely on equitable tolling. *Porter*, 2011 WL 68387703, at *7.

### 2. Adverse Domination

As Compass properly concedes in the Opposition, the doctrine of adverse domination "tolls the statute of limitations until a disinterested majority of nonculpable directors controls the corporation." Opp. at 12. Here, accepting the allegations of the Complaint as true—as even Compass must do—Michael and Daniel never controlled Compass, but rather, their brother, John White, did. *See* Compl. at ¶94 ("On November 23, 2018, John White fired Daniel and Michael…."); *id.* at ¶95 ("On February 14, 2019, the Compass Board of Directors held a special meeting and removed Daniel and Michael from the Board."). Thus, based upon the plain language of the Complaint, there never was adverse domination of Compass.

## II.  THE RICO CLAIMS (COUNTS III AND IV) ARE DEFICIENT

### A.  No RICO Enterprise is Pled.

Compass clarifies in the Opposition that rather than an enterprise by an association-in-fact, "the RICO enterprise alleged in the Complaint ***is Compass itself*** … 'through which' the White Defendants conducted a pattern of unlawful racketeering activity." Opp. at 14 (emphasis in original). For Compass itself to have been the purported RICO enterprise, the allegations must portray a scheme whereby the defendants committed the unlawful predicate acts when "engaging in a regular way of conducting [that legitimate corporation's] ongoing legitimate business with the company's customers." *See Gross v. Waywell*, 628 F. Supp. 2d 475, 499 (S.D. N.Y. 2009) (dismissing RICO claims where the allegations failed to demonstrate the statutory requirements under either enterprise theory). *C.f., Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) ("[L]iability depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs") (emphasis in original). It is not enough for the legitimate corporation simply to serve as the vehicle through which the defendants performed "parallel" or "individual acts of self-dealing" like Compass alleges against Michael (and Daniel) here. *See Gross*, 628 F. Supp. 2d at 499.

### B.  Neither George nor Michael Engaged in a Pattern of Racketeering Behavior.

Compass's reliance on *Capital Lighting & Supply, LLC v. Wirtz,* No. 17-3765, 2018 WL 3970469 (D. Md. Aug. 20, 2018) is unavailing. Opp. at 15-16. In fact, as *Wirtz* makes clear, the

allegations against Michael do not constitute "the type of ongoing escalating criminal endeavor that RICO was intended to target." *Wirtz*, 2018 WL 3970469, at *8.

More specifically, in *Wirtz*, what began as a "straightforward overbilling kickback scheme" ultimately led to a total of ten (10) defendants—including 5 individuals and 5 entities—inflating and creating fake invoices and "rout[ing] invoices and payments through multiple shell companies to obscure their fraud." *Id.* at *7-8. Through one insider defendant employed by plaintiff, the *Wirtz* defendants also used a division of the plaintiff's company "to essentially bankroll their own companies that provided similar and competing services to those provided by [p]laintiff … caus[ing] [p]laintiff to order excess product and then divert[ing] that material from [p]laintiff's jobs to side jobs [d]efendants profited from." *Id.* at *8. Then when their intricate scheme appeared in jeopardy, the *Wirtz* defendants quickly "evolved and came up with a solution to keep [it] going," which demonstrated they "had no intention of stopping their racketeering activity and, if anything, they were becoming more brazen." *Id.* at *7-8. This use of "multiple schemes [by the *Wirtz* defendants] to infiltrate, corrupt, and profit from an otherwise legitimate business," *see* Opp. at 16 (citing *Wirtz*, 2018 WL 3970469 at *9), is no way akin to the family dispute alleged here, among brothers/owners in this case about how their family-run company's funds should be used.

As to George, the Opposition lacks any authority in support of Compass's absurd suggestion that an employee's alleged request for a raise somehow equates to criminal extortion RICO seeks to curtail. *See* Opp. at 16-17. Moreover, while the Complaint baldly accuses George

of "spoliation," Compl. at ¶156-57, *nowhere* in its 372 paragraphs does the Complaint identify or even allude to any *criminal* investigation that was obstructed by the alleged spoilation.

### III.   COMPASS CANNOT REWRITE ITS STATE LAW CLAIMS

A. <u>The Complaint Fails to Articulate What Vicarious Liability Theory(ies) it Asserts Against Michael and/or George (Counts XI, XV-XVI, and XXI).</u>[3]

The Complaint contains this near identical last paragraph under each four (4) vicarious liability counts pled against *All Defendants*: "As a result of Defendants' coordinated effort to benefit Flywheel and secure personal gain, Compass suffered and continues to suffer actual damages." Compl. at ¶¶ 315 (Count XI),[4] 327 (Count XV), 330 (Count XVI), 345 (Count XXI). Whether read alone or in context, this reoccurring paragraph can only be construed to assert a "coordinated effort" by *All Defendants* rather than some unidentified permutation of them.

In apparent acknowledgement of the implausible link between the White Defendants and the Flywheel Defendants, Compass now tries magically to suggest that it pled that it was the White Defendants who "conspired," Opp. at n.7., or "cooperated," *id.* at 25, with one another to commit the underlying torts. Even assuming, *arguendo*, Compass could rectify its poor pleading—which Michael and George contend it cannot—it is inappropriate for it to do so through the Opposition. *Yesko v. Fell*, 2014 WL 4406849, at *7 (D. Md. Sept. 5, 2014) ("[I]t is

---

[3] Pursuant to Rule 10(c), Michael and George hereby adopt and expressly incorporate by reference the Flywheel Defendants' Reply in support of their Motion to Dismiss as to the arguments the state law claims are time-barred and/or fail to state a claim upon which relief may be granted.

[4] The Complaint at ¶315 includes a slight variation by replacing "secure personal gain" with "financial harm and reputational damage to Compass."

axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

   B. <u>There is No Plausible Claim for Conversion Pled Against Michael (Count XXII).</u>

Compass claims it satisfied the notice pleading standard for its conversion claim against Michael and thus, with all "plausible inferences" drawn in its favor, the count must survive dismissal. Opp. at 26-27. This argument is unpersuasive. Indeed, it remains unclear exactly what Michael purportedly converted. While the Complaint vaguely refers to emails delivered to Michael's old Compass email address from "Google Payments" related to the Compass domain name, Compl. at ¶157—*the very same domain that Compass concedes it regained access to*, *id.* at ¶156—Compass leaps from there to the scurrilous and entirely unsupported conclusion that through this fact alone, Michael became "an active participant in the IT lockout," Opp. at 26 (alleged to include not just the company domain, but its "Microsoft, Quickbooks, and other business records and accounts," *see* Compl. at ¶149).[5] This lone "fact" of Google's alert of receipt of payment by someone who is not even alleged to be Michael does "not permit the court to infer more than the mere possibility of misconduct, [and thus,] the [C]omplaint has alleged—

---

[5] To be clear, despite Compass's continued mischaracterization in the Opposition of its own Complaint, there are no "well-pled" facts that the White Defendants have been using the IT lockout to destroy incriminating evidence of Michael White's own wrongdoing." Opp. at 27 (citing Compl. at ¶¶156-57). Rather, all that the Complaint does is accuse unidentified "actors" of deleting email addresses under the compassmarketinginc.com domain while at the same time conceding that Compass regained access to all incoming emails to its old domain such that it presumably could verify the good faith basis for this allegation. Rather than do so—or perhaps having done so and trying to conceal the conclusion of its investigation—Compass has chosen simply to cast unfounded aspersions, with no suggestion that it has concluded anything was destroyed.

but it has not shown—[Compass] is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal citations omitted).[6]

In any event, assuming, *arguendo*, Michael is the unidentified payer of Compass's monthly domain fee, Compass still does not articulate how that fact alone establishes the requisite "dominion and control" over the domain name—let alone the company's "Microsoft, Quickbooks, and other business records and accounts"—necessary to establish conversion by Michael.

**CONCLUSION**

For the foregoing reasons as well as those set forth the Memorandum of Law in Support of Defendants Michael White and George White's Motion to Dismiss, this Court should grant Defendants' Michael White and George White's Motion to Dismiss and dismiss with prejudice all claims asserted against Michael White and George White.

---

[6] It is telling that Compass does not—because it cannot—allege that the emails Compass saw from Google Payments evidence that it was Michael who in fact made the payments. *See* Compl. at ¶156.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY, that on this 31st day of May, 2022, a copy of the foregoing was electronically filed and served on all counsel of record via CM/ECF.

/s/ *Jeffrey M. Schwaber*
Jeffrey M. Schwaber

Respectfully submitted,

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

/s/ Jeffrey M. Schwaber
Jeffrey M. Schwaber (Bar ID 06095)
jschwaber@steinsperling.com
Judith G. Cornwell (Bar ID 20777)
jcornwell@steinsperling.com
(301) 354-8131 (facsimile)
1101 Wootton Parkway, Suite 700
(301) 340-2020

*Attorneys for Michael White and George White*