**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(NORTHERN DIVISION)**

COMPASS MARKETING, INC.,
Plaintiff,
v. Civil Action No. 1:22-cv-00379-GLR
FLYWHEEL DIGITAL LLC, et al.,
Defendants.

**REPLY OF COMPASS MARKETING, BY ITS COURT-APPOINTED CUSTODIAN, IN SUPPORT OF MOTION TO COMPEL FORMER COUNSEL (ECF NO. 74)**

Compass Marketing, Inc. ("Compass"), by Daniel J. White, its court-appointed Custodian pendente lite, submits this reply in support of its Motion to Compel Former Counsel to Produce File to Custodian (ECF No. 74) (the "Motion") and in answer to the oppositions of Morgan, Lewis & Bockius LLP ("Morgan Lewis") (ECF Nos. 77, 80) and King & Spalding LLP ("King & Spalding") (ECF No. 79), as permitted by ECF No. 78. Since the oppositions were filed, a Maryland court has registered the order appointing the Custodian. Exhibit A at 2.

**Introduction**

The Motion asks the Court to direct the lawyers who appeared for Compass in this action to deliver Compass's file, and the related engagement, billing, and trust-account records, to the Custodian appointed by an order of the Circuit Court for Arlington County, Virginia, entered May 1, 2026, and in full force today (the "Custodian Order," ECF No. 74-2). Both firms now tell the Court that they are willing to deliver the file. King & Spalding "has no objection to providing the client file to Compass upon request from a person authorized to speak for Compass." ECF No. 79 at 2-3. Morgan Lewis "stands ready to deliver the file once it is clear who is lawfully authorized to receive it." ECF No. 80 at 1. Neither firm identifies a stay, a competing order, or a defect in the Custodian's appointment, and neither has produced the file. Maryland Rule 19-

301.16(d) requires counsel to surrender the client's papers on termination of the representation, and the obligation binds each attorney who appeared here individually. Local Rule 704 applies the Maryland Attorneys' Rules of Professional Conduct to every attorney who practices before this Court. Each Morgan Lewis attorney admitted pro hac vice certified knowledge of the Maryland Attorneys' Rules of Professional Conduct and acknowledged being subject to this Court's disciplinary jurisdiction. ECF Nos. 4-8, 45, ¶¶ 5, 9.

That should settle both whether Compass's file goes to the Custodian and who must deliver it: each attorney who appeared for Compass in this action. Because the three papers filed for its former law firms raise other matters, ECF Nos. 77, 79, 80, the Custodian answers them.

The complaint was a scurrilous attack on honest and decent men and women. It falsely called James DiPaula and Patrick Miller racketeers and accused them of the federal crime of theft of trade secrets, 18 U.S.C. § 1832, and it made like charges against others. ECF No. 1 at 64-66. It was used as leverage in what amounted to a demand for payment under threat of criminal accusation. *See* Exhibit B at 3-4; Exhibit C at 2. Compass has told the Court that those claims had no factual or legal basis. ECF No. 73 at 2. The complaint was filed without substantial justification, and at least some of those who brought it knew its allegations were false. It caused real harm to real people. Compass must answer for that harm, and it needs the file to do so.

A month before the complaint was filed, Compass's purported chief executive (the "purported CEO") wrote that he had two term sheets from litigation funders and contingency commitments from two large law firms. Exhibit D at 2. One funder's term sheet conditioned its money on retaining Morgan Lewis; another named Morgan Lewis and King & Spalding as outside counsel and referred to "the MLB Retainer Agreement, Success Definition Paragraph." Exhibit E at 2-3. Compass borrowed heavily in the months that followed, and millions of dollars

in legal fees were deducted as ordinary and necessary business expenses. A lawsuit with no legitimate basis is not a legitimate business expense. Those who lent Compass money while the suit was pending will expect to be repaid, and those wrongfully sued in its name may seek redress; Compass is entitled to know who exposed it to both. Maryland investigators are examining Compass's affairs, and the Department of Labor has sued to enforce a subpoena for Compass's records after its process server was told at Compass's office that the purported CEO "no longer worked at Compass Marketing." *State of Md. Dep't of Labor v. Compass Mktg., Inc.*, No. C-02-CV-26-002511 (Md. Cir. Ct. Anne Arundel Cnty.). The purported CEO told the Arlington court he has no Compass files. That makes the firms' files the more critical.

Between them, the firms offer four reasons to deny the Motion: that this Court is the wrong forum, that no dispute is ripe, that the Custodian's authority is uncertain, and that the relief is overbroad. None withstands the record. On July 31, 2026, the Fourth Circuit vacated an order of this Court holding that it lacked authority to grant a former client's motion to compel former counsel to produce the file; neither opposition mentions that decision. The Custodian Order remains in force, and a Maryland court has registered it.

**I. The Court has authority to order former counsel to deliver the file.**

1. The Motion invoked the Court's ancillary jurisdiction "to manage its proceedings, vindicate its authority, and effectuate its decrees," *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 379-80 (1994), and its inherent power to supervise the attorneys who appear before it. Mot. ¶¶ 13-16. The firms answer that the case is closed and that no order requires continuing supervision. ECF No. 79 at 3-4; ECF No. 80 at 3-5.

2. The day after the Motion was filed, the Fourth Circuit rejected the premise of both oppositions. In *United States v. Perez-Chach*, No. 25-6951 (4th Cir. July 31, 2026) (per curiam)

(unpublished) (Exhibit F), a former client moved in this Court to compel his former counsel to produce his file in a 2013 criminal case, and the motion was denied for want of authority. The Fourth Circuit vacated. Applying Maryland Rule 19-301.16(d), it concluded that the district court "abused its discretion in holding that it did not have the authority to grant" the motion to compel, and it remanded with instructions to consider the motion and to order former counsel "to respond if necessary for the resolution of the motion." Slip op. at 2 (citing *United States v. Basham*, 789 F.3d 358, 388 (4th Cir. 2015)). Morgan Lewis asserts that the Custodian "fails to present any case in which a federal court has exercised ancillary jurisdiction to determine the custody of a client file, particularly in connection with litigation that has long since ended." ECF No. 80 at 4. *Perez-Chach* recognizes that authority in a case arising from this Court. The same authority exists here: former counsel appeared in this action, and the demand comes from the client's court-appointed representative.

3. The firms' authorities address a different question. *Kokkonen* held that a district court could not adjudicate breach of a settlement agreement that its dismissal order did not incorporate. 511 U.S. at 380-82. *Wudi Industrial (Shanghai) Co. v. Wong*, 143 F.4th 250 (4th Cir. 2025), likewise concerned settlement enforcement, and there the Fourth Circuit held that ancillary jurisdiction existed. The Motion asserts no new claim and seeks no damages; it asks the Court, in the original action, to require attorneys who appeared before it to surrender the file generated here. *Compare Peacock v. Thomas*, 516 U.S. 349, 357 (1996) (no ancillary jurisdiction over a new action to impose an existing federal judgment on a person not already liable for it), *with Perez-Chach*, slip op. at 2. Morgan Lewis adds that "[t]he federal docket is not a forum of convenience." ECF No. 80 at 6. The lawyers chose this forum by filing here in Compass's name.

4. Morgan Lewis argues that inherent power reaches only "attorneys participating in active proceedings before the court, not attorneys who were terminated long ago." ECF No. 80 at 5. *Kokkonen* itself cites *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), as an example of the second branch of ancillary jurisdiction. 511 U.S. at 379-80; *see Chambers*, 501 U.S. at 43-46; *United States v. Shaffer Equipment Co.*, 11 F.3d 450, 461-62 (4th Cir. 1993). This Court's rules do not end its authority over counsel when a case ends: any attorney "who has practiced before this Court in any way" is subject to its disciplinary jurisdiction, and the Maryland Attorneys' Rules of Professional Conduct govern that practice. Local Rules 703, 704.

5. Morgan Lewis describes *Novinger v. E.I. DuPont de Nemours & Co.*, 809 F.2d 212 (3d Cir. 1987), and *Jenkins v. Weinshienk*, 670 F.2d 915 (10th Cir. 1982), as decisions that "pre-date *Kokkonen*" and turn on pending litigation. ECF No. 80 at 4-5. *Kokkonen* did not disturb them, and *Novinger* and *Jenkins* provide persuasive support for resolving litigation-related attorney-client disputes; the requested relief falls within *Kokkonen*'s second branch because it concerns counsel's obligations arising from their representation in this action. The Third Circuit held:

> [T]here cannot be any question that the court has authority to enter orders such as those directing Kramer to surrender the file . . . . [T]he rule of necessity with respect to attorney-client disputes growing out of the substitution of attorneys in the course of litigation must be broad enough to permit the resolution of those disputes after the underlying case has been resolved by judgment or settlement.

*Novinger*, 809 F.2d at 217. *Jenkins* held that a fee dispute over "the work done in the suit being litigated" "easily fits the concept of ancillary jurisdiction," 670 F.2d at 918, and drew the line only at "matters unrelated to litigation before the court," *id.* at 919.

6. Neither firm disputes the obligation to surrender the file. The obligation binds each attorney, not only the firm. Maryland Rule 19-301.16(d), which Local Rule 704 makes binding on every attorney who appeared in this case, provides that "[u]pon termination of representation, an attorney shall take steps to the extent reasonably practicable to protect a client's interests, such

as . . . surrendering papers and property to which the client is entitled." *See Perez-Chach*, slip op. at 2. The Motion is directed "to attorneys who appeared or practiced before this Court in connection with this action," Mot. at 4, and the Court had it sent to Compass's current and former counsel of record. ECF No. 78. Both oppositions are filed for the firms, each styling itself a non-party, and neither says whether it also represents the attorneys to whom the Motion is directed. ECF No. 79 at 1; ECF No. 80 at 1. Morgan Lewis itself describes the duty as "a professional-responsibility obligation." ECF No. 80 at 2. The rule does not permit a firm holding a certified order still in full force to wait until every filing by the person that order enjoins has run its course. The firm invokes its "ethical obligation to protect its former client's confidential information from unauthorized disclosure." ECF No. 80 at 6. Delivery to the client's court-appointed representative is not unauthorized disclosure.

**II. The dispute is ripe: the firms' conditions appear nowhere in the Custodian Order.**

7. Morgan Lewis has had the Custodian's demand under the Custodian Order since May 13, 2026. Exhibit G at 6-7. On May 22 its General Counsel wrote that the firm "will be in a position to start transferring the file to you next week." *Id.* at 3. On May 28 the firm wrote that it would "need to wait to transfer the file" until after a hearing on the purported CEO's motions. *Id.* at 1-2. On June 8 the Arlington court denied those motions and found them frivolous, and on June 10 the Custodian reported the ruling to the firm. *Id.* at 2; Exhibit H at 1. On June 16 the firm asked for "confirmatory materials" on the control disputes. ECF No. 77-1 at 1. On July 1 the Arlington court denied a stay. Ex. H at 2. On July 13 the condition became the resolution of the purported CEO's appeal, "assuming it is done so in your favor." ECF No. 77-1 at 1. The condition is now that it be "clear who is lawfully authorized to receive" the file, which the firm expects "when the Virginia appeal concludes." ECF No. 80 at 1, 6.

8. Each new condition followed a filing by the enjoined party. None appears in the Custodian Order, which directs "all current and former officers, agents, and counsel of Compass" to "produce records, credentials, and account access on demand." ECF No. 74-2 ¶ 2. The Custodian answered the firm's July 13 email the next day, Exhibit I at 1, and twice offered to collect the file in person at the firm's office. *Id.*; Exhibit J at 1. The firm's own email acknowledges that the motion to stay the Custodian Order "was recently denied." ECF No. 77-1 at 1.

9. King & Spalding contends that no dispute is ripe because the Custodian's letters were "caught in the firm's email spam filter" and the firm "learned of the Motion on September 8, 2026." ECF No. 79 at 2. Mr. Brown, who signs that opposition, had himself received the Court's CM/ECF notice of the Motion, at the same address under which he signs, on July 30, 2026, and again on September 1, 2026, when the Court referred the Motion. Exhibit K at 1-2; Exhibit L at 1-2; ECF No. 79 at 4. King & Spalding's statement that it has no objection to producing the file is limited to the "client file," says nothing of the engagement, billing, and trust-account records, and is conditioned on a request "from a person authorized to speak for Compass." ECF No. 79 at 2-3. That request has been made. A firm that holds the order and the demand, and declines to deliver, presents a ripe dispute.

10. Both firms rest on an appeal in Virginia. ECF No. 79 at 3; ECF No. 80 at 2, 6. The notice of appeal was filed 68 days after the Custodian Order was entered, Exhibit M at 1; *see* Va. Sup. Ct. R. 5A:6(a) (30 days), and a motion to dismiss the appeal is pending in the Court of Appeals of Virginia, Record No. 1246-26-4. No court has stayed the Custodian Order. A notice of appeal does not suspend an order without a suspending bond, and the Arlington court denied a

stay on July 1, 2026. Va. Code § 8.01-676.1(C); Ex. H at 2. Neither firm identifies a stay, supersedeas, or suspending bond, because none exists.

**III. A court order still in force establishes the Custodian's authority.**

11. King & Spalding says there is "reason to question" the Custodian's authority; Morgan Lewis calls the matter "hopelessly murky." ECF No. 79 at 3; ECF No. 80 at 2. The Custodian Order appoints Daniel J. White "Custodian pendente lite of Compass Marketing, Inc. with full authority over its assets, books, records, bank accounts, contracts, and pending litigation." ECF No. 74-2 ¶ 1. Under Virginia law the appointing court "has exclusive jurisdiction over the corporation and all its property wherever located," and the custodian "may exercise all of the powers of the corporation, through or in place of its board of directors or officers, to the extent necessary to manage the affairs of the corporation in the best interest of its shareholders and creditors." Va. Code § 13.1-748(A), (C)(2). Federal courts give the Arlington court's proceedings the same full faith and credit they have in Virginia, 28 U.S.C. § 1738, and in Virginia the Custodian Order is in full force.

12. In Arlington, the purported CEO was permitted to participate only as an individual, "not on behalf of Compass Marketing"; his motions were denied as frivolous, and a stay was denied. Ex. G at 2; Ex. H at 1-2. The Anne Arundel County case Morgan Lewis cites, ECF No. 80 at 2, was ordered "closed" by order docketed August 17, 2026, five weeks before Morgan Lewis filed its opposition. And by order entered October 1, 2026, the Circuit Court for St. Mary's County, Maryland, after a hearing, ordered that the Custodian Order be "REGISTERED in the State of Maryland" and "given the full force and effect of an Order of Court within the State of Maryland." Exhibit A at 2.

13. Morgan Lewis first told the Court that the purported CEO "served as Compass's chairman and CEO" during this litigation. ECF No. 77 at 1. It now says that he is "still currently listed by Virginia's State Corporation Commission as Compass' Chairman and CEO," and that Compass was "then controlled by" him when this action was filed. ECF No. 80 at 2. A listing is not a court order and does not displace one. As to the period in which this action was filed, Compass's annual report, filed with the Commission on March 7, 2022, three weeks after the complaint, lists P. Todd Mitchell as chief executive officer. Exhibit N at 1. Compass does not concede that the purported CEO held that office at any time relevant here, or that he or the counsel he retained had authority to file anything in its name.

14. Both firms note that the Custodian was a defendant in this bogus action. ECF No. 79 at 3; ECF No. 80 at 6. Neither cites a rule or decision that makes that fact a ground for withholding a corporation's file from the person a court has placed in charge of the corporation. The Custodian Order contains no exception for this action; it gives the Custodian "full authority over" Compass's books and records and directs its former counsel to produce them on demand. ECF No. 74-2 ¶¶ 1-2. The Arlington court appointed the Custodian on a record that described this action and attached its complaint. First Am. Compl. ¶¶ 84-87 & Ex. 2, No. CL21004012-00 (Va. Cir. Ct. Arlington Cnty. filed Feb. 13, 2026). The St. Mary's County court registered the order after the Custodian reported that this Motion was pending here. Custodian's Resp. ¶ 4, No. C-18-CV-26-000352 (Md. Cir. Ct. St. Mary's Cnty. filed Sept. 17, 2026). When control of a corporation passes to new management, the authority over its attorney-client privilege passes as well. *See CFTC v. Weintraub*, 471 U.S. 343, 348-49 (1985). The file belongs to the client.

**IV. The need for the file is present.**

15. Morgan Lewis says that "there is no exigency" and that this action is "long-closed." ECF No. 80 at 1, 5. The Fourth Circuit's mandate issued on October 8, 2024. ECF No. 72. This Court dismissed the complaint, finding that Compass's claimed inability to discover the alleged misappropriation until 2020 "strains credulity," ECF No. 64 at 15, and the Fourth Circuit held that Compass "should have discovered its DTSA and RICO claims against the Flywheel Defendants by 2016 at the latest." *Compass Mktg., Inc. v. Flywheel Digital LLC*, No. 23-1324, slip op. at 4 (4th Cir. July 3, 2024) (per curiam) (unpublished). Compass is entitled to learn who authorized such a complaint and on what information.

16. The file will also show what the action was for. Morgan Lewis's April 2021 draft settlement presentation said this was "the last clear chance to reach a reasonable business resolution short of all-out war" and Compass "will seek and recover $400 million or more." Ex. B at 3, 4. Its engagement gave it 7.5 percent of any settlement "from dollar one." Exhibit O at 3.

17. Compass's defense in *Boshea v. Compass Marketing, Inc.*, No. 1:21-cv-00309-ELH (D. Md.), in which several of the same firms billed Compass, ended in two jury verdicts against it, a judgment of $1,020,000 plus $160,069.32 in prejudgment interest, a pending petition for more than $1,000,000 in fees, and a dismissed appeal. *Boshea*, ECF Nos. 246, 361, 365, 409, 419. *Boshea* also served as a stalking horse for this action. In July 2021, the purported CEO wrote to counsel in both matters, among them Mr. Troy Brown, Mr. Kritsas, and Mr. Brown of King & Spalding, that Compass "should be able to dig into [the severance payments] as well, and still be in bounds tying the inquiry to the Boshea case," that "this could be a great way to get into the trade secrets scheme," and that counsel should "get the pad of subpoenas Stephen is preparing to write, and really blow the lid off this thing." Exhibit P at 1. Three months later, Mr.

Moorad warned the Custodian against contacting the purported CEO, citing the Custodian's "current status as a witness under federal subpoena, scheduled to be deposed by Compass Marketing shortly." Exhibit Q at 1. The lawyers who defended *Boshea* are withholding Compass's file in that case as well; the Custodian's motion to compel them is before Magistrate Judge Chelsea Crawford, who has set it for hearing on October 8, 2026. *Boshea*, ECF No. 432.

18. On the Custodian's review of the records recovered to date, Compass's operating account is overdrawn, the corporation carries debts of several million dollars, and more than twenty million dollars in Compass funds are unaccounted for. The Custodian cannot account for Compass's money while the lawyers who were paid from it withhold their ledgers.

**V. The accounting records and safeguards follow from counsel's existing obligations.**

19. Morgan Lewis states that it is aware of no basis for production of billing statements, payment histories, or trust-account records, and that the Custodian "cites to none." ECF No. 80 at 6. The Motion cited Maryland Rules 19-301.15(d) and 19-407 and *Attorney Grievance Commission v. Rand*, 445 Md. 581 (2015). Mot. ¶ 24. Morgan Lewis acknowledges that Rule 19-301.15 "requires a 'full accounting' regarding client property held by an attorney." ECF No. 80 at 6. The ledgers and trust-account records the Motion seeks are the means by which such an accounting is rendered and tested, and Rule 19-407 requires that they be kept. A former client is also entitled, on request, to "inspect and copy any document possessed by the lawyer relating to the representation, unless substantial grounds exist to refuse." Restatement (Third) of the Law Governing Lawyers § 46(2) (Am. L. Inst. 2000). Morgan Lewis itself asserts that Compass still owes it $225,284. ECF No. 77-1 at 1-2. A firm that claims a balance from its former client cannot withhold the ledgers that would prove or disprove it. The Custodian Order identifies the person to whom they are owed. ECF No. 74-2 ¶¶ 1-2.

20. Morgan Lewis also calls the withholding log and the certification of completeness "discovery-style demands." ECF No. 80 at 6. The log applies only to material a firm contends may properly be withheld, Mot. ¶ 26; a firm that withholds nothing has nothing to log. The certification is the usual way a court confirms that an order to produce has been obeyed.

**VI. Neither firm addresses the engagement and authority records.**

21. The Motion seeks the engagement letters and the documents showing who instructed counsel to commence and maintain this action. Mot. at 1-3, ¶ 16; Requested Relief ¶ 2. Neither opposition mentions them. Morgan Lewis has referred to "the governing engagement letters," ECF No. 77-1 at 1, but has produced none. The only engagement document Compass has was found in its own records, produced by another former law firm. It is an October 5, 2020 letter from Troy Brown of Morgan Lewis to the purported CEO, copied to Jeffrey Moorad and countersigned on October 12, 2020. Ex. O. It defines the representation as "limited to" seeking "a pre-litigation settlement"; provides that Mr. Brown would work "closely with you, Jeff Moorad and your team"; and fixes "a 7.5% contingency fee from dollar one on the amount of any settlement." *Id.* at 1-3. The transmittal email describes the fee as the one "that you and Jeff have discussed and agreed upon." *Id.* at 7. No engagement for this litigation has been produced. The March 2022 term sheet describes engagement terms found in no document either firm has produced:

> MLB will bill Seller at a discount of 30% against its standard fee rates (the Hold-Back), with the remainder of MLB prospective fees being deferred and contingent only upon success . . . . MLB will be entitled to (i) a true up equalling the Hold-Back, plus (ii) $165,000, plus (iii) 7.5% of Proceeds ("MLB's Success Fee").

Ex. E at 3. King & Spalding is to bill on the same discount and receive "no more than 7.5% of Proceeds." *Id.* In August 2024, as new counsel was "taking over as lead counsel," the purported CEO promised a litigation funder "the additional engagements for the 3 firms advising and in the

'bullpen,'" and three days later listed Morgan Lewis and King & Spalding among the "Law Firm/Lawyers engaged" holding "interests in the outcome." Exhibit R at 1-3.

22. Mr. Moorad, who wrote to the Custodian in 2021 as a partner of Morgan Lewis and as one of the counsel for Compass and for the purported CEO, Ex. Q at 1, has had financial dealings since 2015 with Compass, with the purported CEO, and with Tagnetics, Inc., where the purported CEO was chairman and chief executive: a purchase of Tagnetics preferred stock from Compass for $1,000,000 by an entity Mr. Moorad controlled in 2015, a second stock purchase agreement in 2016, companion option agreements in his favor, and a consulting agreement circulated with them under the subject "Compass/Moorad Agreements." Exhibits S, T, U. The signature on the 2015 stock purchase agreement purporting to be the Custodian's is not his. *See* Ex. T at 6. On January 26, 2019, replying on a 2016 email thread between the purported CEO and Mr. Moorad under the subject line "3 signature pages attached," the Custodian asked Mr. Moorad to talk so that "any loose ends are tied up." Exhibit V at 1-2. Mr. Moorad forwarded the message to the purported CEO with the note, "Who's this guy??" *Id.* at 1. In August 2021 he wrote to the Custodian's former counsel that the Custodian "knows me personally." Ex. Q at 2. In October 2021 he told the Custodian that "Compass Marketing and John are represented by counsel, and any discussions must be through counsel absent consent." *Id.* at 1. Mr. Moorad and the purported CEO have been partners in PowerShelf since 2016. The complaint names Mr. Moorad seventeen times. It describes him as "an advisor to Compass and a long-time friend of John White" who communicated Compass's contentions to Ascential's chief executive and the chairman of its board in 2021; it does not disclose that he was a partner of the firm that signed it. ECF No. 1 ¶¶ 214-22. On July 1, 2021, Mr. Moorad wrote to Scott Forbes of Ascential that he was "finding it challenging to hold back the litigation side of 3 large law firms," and forwarded

the message to the purported CEO, Mr. Kritsas, and Mr. Troy Brown. Ex. C at 1-2. In October 2021, Mr. Troy Brown copied Mr. Moorad, at his Morgan Lewis address, on his report that the cease-and-desist letter had gone out. Exhibit W at 1. In April 2021 the purported CEO introduced "Troy/James/Jeff from Morgan Lewis" to Compass's other counsel as the team working on a "business solution," Exhibit X, and in May 2021 he forwarded the firm's settlement presentation to Larry McWilliams, his co-chief executive at Tagnetics, and two others with the note, "We hope to resolve for both Tagnetics and Compass sage [*sic*] done." Ex. B at 1. The 2015 agreements were transmitted for signature, and the 2016 agreements were circulated and revised, by Gerard Kenny of Gibson, Dunn & Crutcher LLP, the firm that now appears for Morgan Lewis. Ex. S at 10; Ex. U at 1. One person was thus at once a fact witness named in the complaint, a participant in the firm's contingent-fee engagement, a consultant to Compass under his own consulting agreement, the purported CEO's partner in PowerShelf and fellow investor in Tagnetics, and a partner of the firm that filed the action. The records the Motion seeks will show who authorized this action and for whose benefit.

**VII. Morgan Lewis received the Motion when filed; the Ward letter is no defense.**

23. Morgan Lewis states that the Motion was filed "without providing service on Morgan Lewis." ECF No. 80 at 3. The Court's notice went that day to Mr. Luxton, who remains of record, and the Court has since had the Motion sent to every attorney who appeared here; Morgan Lewis has filed two papers opposing it. Ex. K at 1-2; ECF No. 78.

24. Morgan Lewis has called the Custodian's conduct "concerningly erratic," ECF No. 77 at 2, and now describes "scattershot demands" on its current and former attorneys. ECF No. 80 at 2. Rachel Ward, the former associate to whom the Custodian wrote, appeared for Compass in this action. ECF Nos. 8, 10. Rule 19-301.16(d) imposes its obligation on the attorney, *see Perez-*

*Chach*, slip op. at 2, and departure from a firm does not extinguish it as to client materials the attorney retains. The Custodian's one-page letter to Ms. Ward informs her of that obligation, apologizes for writing to her government office, and asks her to identify counsel or another channel. The Custodian has asked Morgan Lewis whether it represents its attorneys individually, and it has not said. Ex. I at 7. The Custodian was a prosecutor when Morgan Lewis filed the complaint, and he remains one. The firm's concern about a letter to a former associate contrasts with its decision to allege racketeering without seeking any information from those it accused.

**Conclusion**

Both firms hold a certified order, never stayed, that a Maryland court has now registered, and both say they are prepared to deliver the file to the person authorized to receive it. That person is the Custodian. Morgan Lewis committed in writing on May 22, 2026, to begin the transfer; more than four months later it has produced nothing. Neither firm has identified a stay, a competing order, or a document authorizing the lawsuit filed in Compass's name. Compass respectfully requests that the Court grant the Motion and enter the Proposed Order.

Respectfully submitted,

/s/ Daniel J. White
Daniel J. White, Esq.
Court-appointed Custodian pendente lite of Compass Marketing, Inc.
D. Md. Bar No. 21937 | Md. AIS No. 0201030014 | Va. State Bar No. 98775
Post Office Box 1760, Leonardtown, Maryland 20650
Telephone: 240-298-8156 | daniel.white@danielwhite.law

**Index of Exhibits**

Exhibit A: Order of the Court, *In the Matter of Compass Marketing, Inc.*, No. C-18-CV-26-000352 (Md. Cir. Ct. St. Mary's Cnty.), entered October 1, 2026, with its Exhibit A (cited at pp. 1, 8)

Exhibit B: Compass Marketing, Inc. records: email from John White, May 16, 2021, transmitting Morgan, Lewis & Bockius LLP, "Settlement Presentation: Compass Marketing claims against Flywheel, Ascential, individual wrongdoers" (working draft dated April 27, 2021), excerpts (Bates 300877408.1) (cited at pp. 2, 10, 14)

Exhibit C: Compass Marketing, Inc. records: email of Jeffrey Moorad to Scott Forbes, July 1, 2021, as forwarded to John White, James Kritsas, and Troy Brown (Bates 300877745.1) (cited at pp. 2, 14)

Exhibit D: Compass Marketing, Inc. records: email chain among John White, Mitchell Goldsmith, and Gary Holdren, January 15 and 16, 2022 (Bates 300877406.1) (cited at p. 2)

Exhibit E: Term Sheet, Woodsford, to Compass Marketing, Inc., March 17, 2022 (unsigned) (excerpt) (cited at pp. 2, 12)

Exhibit F: *United States v. Perez-Chach*, No. 25-6951 (4th Cir. July 31, 2026) (per curiam) (unpublished) (cited at p. 4)

Exhibit G: Letter from Daniel J. White to Michèle Coffey, June 10, 2026, with the email chain of March 10, May 13, May 15, May 20, and May 22, 2026 (cited at pp. 6, 8)

Exhibit H: Order denying Intervenor's Emergency Motion to Stay Orders and Proceedings Pending Appeal, Circuit Court for Arlington County, Virginia, No. CL21004012-00, entered July 1, 2026 (cited at pp. 6, 8)

Exhibit I: Email from Daniel J. White to Michèle Coffey et al., July 14, 2026, with enclosed letter of July 14, 2026 (BCC line redacted) (cited at pp. 7, 15)

Exhibit J: Email from Daniel J. White to Michèle Coffey et al., July 30, 2026, transmitting the Motion and Proposed Order (BCC line redacted) (cited at p. 7)

Exhibit K: Notice of Electronic Filing, ECF No. 74, July 30, 2026 (cited at pp. 7, 14)

Exhibit L: Notice of Electronic Filing, ECF No. 75, September 1, 2026 (cited at p. 7)

Exhibit M: Notice of Appeal of John White, filed July 8, 2026, Circuit Court for Arlington County, Virginia, No. CL21004012-00 (cited at p. 7)

Exhibit N: Compass Marketing, Inc., Stock Corporation Annual Report, Virginia State Corporation Commission, filed March 7, 2022 (cited at p. 9)

Exhibit O: Engagement letter from Troy Brown, Morgan, Lewis & Bockius LLP, to John White, October 5, 2020, countersigned October 12, 2020 (Compass Marketing, Inc. records, Bates 300877436.1), with Mr. Brown's transmittal emails of October 5 and 7, 2020, copying Jeffrey Moorad (Bates 300877726.1) (cited at pp. 10, 12)

Exhibit P: Compass Marketing, Inc. records: John White email to Alan Howard, Mark Brown, Troy Brown, Mitchell Goldsmith, and James Kritsas, copying Ron Bateman, Stephen Stern, and Heather Yeung, July 16, 2021 (Bates 300877802.1) (names of non-parties redacted) (cited at p. 10)

Exhibit Q: Email from Jeffrey Moorad, Morgan, Lewis & Bockius LLP, to Daniel J. White, October 4, 2021, with the Custodian's email of October 1, 2021 (cited at pp. 11, 13)

Exhibit R: Compass Marketing, Inc. records: email of John White to Legalist, Inc., copying Alan Garten and Brian Tollefson, August 14, 2024, with the email chain of August 11 to 13, 2024 (cited at p. 13)

Exhibit S: Stock Option Agreement between Compass Marketing, Inc. and Jeffrey Moorad, dated as of October 13, 2015, with transmittal email from Gerard Kenny, Gibson, Dunn & Crutcher LLP, to John White and others, copying Jeffrey Moorad, October 14, 2015 (account number redacted) (cited at pp. 13, 14)

Exhibit T: Stock Purchase Agreement between Compass Marketing, Inc. and Deerwood Associates, L.P., dated as of October 13, 2015 (account number redacted) (cited at p. 13)

Exhibit U: Email from Gerard Kenny, Gibson, Dunn & Crutcher LLP, copying Jeffrey Moorad, September 1, 2016, transmitting revised Stock Purchase Agreement, Stock Option Agreement, and Amended and Restated Consulting Agreement, with excerpt of the email chain that followed, September 1 to 5, 2016 (pages 2 to 5 of a five-page printout) (cited at pp. 13, 14)

Exhibit V: Compass Marketing, Inc. records: email from the Custodian to Jeffrey Moorad, January 26, 2019, on the thread "3 signature pages attached," as forwarded to John White (cited at p. 13)

Exhibit W: Compass Marketing, Inc. records: emails of Troy Brown, Morgan, Lewis & Bockius LLP, October 7, 2021, transmitting his letter of that date to Philip Richter, Fried, Frank, Harris, Shriver & Jacobson LLP, copying Mark Brown, King & Spalding LLP, as forwarded to John White (Bates 300877853.1) (cover emails only) (cited at p. 14)

Exhibit X: Compass Marketing, Inc. records: email of John White to Compass's counsel, April 25, 2021 (Bates 300877610.1) (cited at p. 14)

**Certificate of Service**

I HEREBY CERTIFY that on October 5, 2026, the foregoing Reply and its exhibits were filed with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record, including George Hazel, Esq., Gibson, Dunn & Crutcher LLP, counsel for Morgan, Lewis & Bockius LLP, and Mark Brown, Esq., King & Spalding LLP. A copy was also sent by electronic mail to Nancy Hart, Esq., Gibson, Dunn & Crutcher LLP; to Michèle Coffey, Esq., General Counsel, and Nathan Andrisani, Esq., Morgan, Lewis & Bockius LLP; and to the attorneys of Kagan Stern Marinello & Beard, LLC identified in the Motion's certificate of service.

/s/ Daniel J. White
Daniel J. White, Esq.