IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| COMPASS MARKETING, INC., | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-22-379 |
| FLYWHEEL DIGITAL LLC, et al., | * | |
| Defendants. | * | |

**CUSTODIAN'S OBJECTIONS TO THE MAGISTRATE JUDGE'S MEMORANDUM ORDER OF OCTOBER 22, 2026 (ECF NO. 82)**

Daniel J. White, Custodian pendente lite of Compass Marketing, Inc. ("Compass"), objects under Fed. R. Civ. P. 72 and Local Rule 301.5 to the Memorandum Order of October 22, 2026 (ECF No. 82), 2026 WL 3210177 (the "Order"), which denied the Custodian's motion to compel Compass's former counsel to deliver Compass's client files (ECF No. 74). The Custodian asks the Court to set the Order aside and grant the motion.

The Order rests on two propositions: that the Custodian's authority to act for Compass is "contested," so that the Court cannot find him to be "the appropriate recipient of the client case file," and that the Court lacks authority to act because the case is closed and the matter is "collateral." Order at 2–5. The record supports neither.

As to the first, nothing before the Court shows that the Virginia order appointing the Custodian has been stayed, and the record shows that a stay was sought and denied. ECF No. 81-8 (Ex. H). An appeal is not a stay. The Order nonetheless treats the pendency of an appeal, noted sixty-eight days after the Custodian Order was entered, ECF No. 81-13 (Ex. M), as a reason to withhold effect from an order of a Virginia circuit court that a Maryland circuit court has

recognized and that Judge Hollander has given full faith and credit in this Court. That is contrary to law.

As to the second, the Order treats a client's request for its own file, directed to the attorneys who appeared for it in this Court, as "collateral" to the action. The attorneys of record hold the files of their appearance in this case. The client's right to those files is enforced by the rules of this Court, Local Rule 704; Md. Rule 19-301.16(d), and the Fourth Circuit has twice vacated the denial of a motion to compel former counsel to deliver a client's file in a closed case. The Order also reads *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), as if the only occasion for inherent authority were misconduct in a pending case, when *Chambers* lists remedying a fraud upon the court among the core occasions for that authority. The Custodian's motion and reply placed before the Court evidence that this action was filed and maintained in Compass's name without corporate authority, as a vehicle for payment from the persons it accused, under threat of false allegations of criminal conduct. ECF No. 81 at 2, 9–14; ECF Nos. 81-2, 81-3, 81-5, 81-14, 81-15 (Exs. B, C, E, N, O). The Order does not mention that evidence. A court whose process may have been used in that way does not lose the power to inquire because the case has been dismissed, and the first step in any such inquiry is delivery of the files generated in this Court's proceedings to the fiduciary appointed to receive them.

This Court dismissed the Complaint in its entirety, holding the claims against the Flywheel defendants time-barred on the face of the pleading, finding the RICO allegations against the individual defendants "conclusory," and noting that Compass had "mischaracterize[d]" its own Complaint in opposing dismissal. ECF No. 64 at 18, 22–23. The Court also found "implausible" the allegation on which the timeliness of the entire action depended, that Compass had not noticed the loss of its largest clients to Flywheel until 2020. *Id.*

at 16. Compass's counsel pressed the same position in the Fourth Circuit, which rejected it. ECF No. 69-1 at 4–5. The Custodian's reply placed before the magistrate judge the documents on which he relies to show that the accusations against the Flywheel defendants were false, and were known to be false by the persons who directed the suit. ECF No. 81 at 2, 9–14. The attorneys who filed that suit, now appearing as non-parties, tell the Court that they withhold Compass's files not for their own benefit but to protect their former client from the fiduciary a court has appointed for it, notwithstanding an order directing them to produce to him. ECF No. 73-1 ¶ 2; ECF No. 79 at 2–3; ECF No. 80 at 1–2. An attorney who withholds a client's file against a court order directing its delivery to the client's court-appointed fiduciary is not protecting the client. To borrow this Court's word, their claims are implausible.

On appeal, the Fourth Circuit affirmed on July 3, 2024. Compass's purported counsel petitioned for rehearing and rehearing en banc on July 17, 2024, which stayed the mandate; the petition was denied on September 30, 2024, and the mandate issued on October 8, 2024. ECF Nos. 69, 71, 72; No. 23-1324, Docs. 51–54. The case was in active litigation in this Court and the Court of Appeals until then, and the attorneys whose files are sought appeared for Compass in both courts throughout, through the en banc petition.

The Court need not decide whether the 2022 action was authorized, or whether any misconduct occurred, to resolve this motion. It need only decide whether the operative appointment order authorizes the Custodian to receive Compass's files and whether this Court may direct members of its own bar to deliver to their former client what that client is entitled to receive. The record answers both questions, and the Order resolves both questions incorrectly.

## STANDARD OF REVIEW

A district judge must modify or set aside any part of a magistrate judge's order on a nondispositive matter that is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); Local Rule 301.5(a). Conclusions of law are reviewed de novo. *Int'l Ass'n of Machinists & Aerospace Workers v. Werner-Masuda*, 390 F. Supp. 2d 479, 485–86 (D. Md. 2005). The Order resolves questions of law: whether the Court has authority to act, and what legal effect a sister-state order carries while an appeal is pending. Those questions are reviewed without deference. The Order also "declines" to exercise inherent authority as a matter of restraint. Order at 3. A discretionary ruling that rests on an error of law, or on findings without support in the record, is an abuse of discretion and is clearly erroneous for purposes of Rule 72(a). In the alternative, because the Order disposed of the only matter pending before the Court and ended the proceeding, it is dispositive in effect: whether an order is dispositive turns on what it does, not on how it is labeled, and an order that terminates the only proceeding before the Court disposes of it. The Order should therefore have issued as a report and recommendation subject to de novo review, on which the Court may receive further evidence. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B), (C). Under either standard the result is the same.

## ARGUMENT

### I. The Custodian Order is in effect. A pending appeal does not suspend it, and the Order identifies no stay or other limitation on the Custodian's authority to receive Compass's files.

The record before the magistrate judge contained the certified Order of the Circuit Court for Arlington County entered May 1, 2026, appointing the Custodian "with full authority over its assets, books, records, bank accounts, contracts, and pending litigation" and directing that "all current and former officers, agents, and counsel of Compass" produce records to him on demand. ECF No. 73-1 ¶¶ 1–2. It contained the order of the Circuit Court for St. Mary's County,

Maryland, entered October 1, 2026, recognizing the Virginia order and giving it full force and effect in Maryland, and denying John White's motion to intervene. ECF No. 81-1 (Ex. A). It contained the Arlington court's order of July 1, 2026, denying John White's emergency motion to stay pending appeal. ECF No. 81-8 (Ex. H). And it contained John White's notice of appeal, filed July 8, 2026, which states that it challenges the Arlington court's order of June 8, 2026 "as well as the underlying May 1, 2026 Custodian Appointment Order," and which was filed sixty-eight days after that Order was entered. ECF No. 81-13 (Ex. M) at 2. Nothing in the record shows that any court has stayed, suspended, vacated, or modified the Custodian Order. No stay has been requested in the Court of Appeals of Virginia, and none has been entered.

On that record the Order concludes that "the question of who is the authorized representative is contested" and that there is "an inadequate factual basis" to find the Custodian the proper recipient. Order at 4 - 5. The only facts it cites are the appeal, the existence of the Arlington case itself, and a hearing set in that case for November 9, 2026. Order at 4. None supports the conclusion.

An appeal is not a stay. Under Virginia law, the filing of an appeal does not itself suspend execution of a circuit court order; suspension depends on security or an order of court. Va. Code § 8.01-676.1. No bond has been posted, no suspension has been ordered, and the trial court has denied John White's motion to stay pending appeal. ECF No. 81-8. The Order does not find otherwise; it does not address the question. It treats the pendency of an appeal as if it rendered the order appealed from doubtful. That is not the law.

The hearing the Order cites, set in the Arlington case for November 9, 2026, is a hearing in that case, before the judge who appointed the Custodian, on damages and remedies. It is not a hearing on the custodianship. The appointing court's continued supervision of its own case is not

evidence that the custodianship is in doubt; it is the custodianship operating as Va. Code § 13.1-748 provides. The Order thus identifies one appeal, not two cases. That appeal is from the June 8, 2026 order; to the extent the notice also purports to reach the Custodian Order, it was noted sixty-eight days after that Order was entered, outside the thirty days allowed by Va. Sup. Ct. R. 5A:6(a), and the Custodian has moved to dismiss it, including for failure to file an opening brief; no brief or assignments of error have been filed. Whatever its reach, it is a notice of appeal, not a stay.

The Order's treatment of the Maryland recognition order compounds the error. The Order mentions that order only to observe that the Custodian himself has said Virginia law governs who may act for Compass, and to conclude that he "should therefore allow the Virginia courts to decide the matter." Order at 4. The Virginia courts have decided it. The Arlington court appointed the Custodian, after notice to John White and over his objection, defined his powers, directed Compass's former counsel to produce records to him, and denied John White's motion to stay pending appeal. A Maryland court of general jurisdiction then recognized that order, also after notice to John White and over his objection. ECF No. 81-1. Those judgments are entitled to full faith and credit in this Court, 28 U.S.C. § 1738, and this Court has given it: in *Boshea v. Compass Marketing, Inc.*, No. ELH-21-309, Judge Hollander stated that the Court "gave full faith and credit to the Order in the Virginia Case." *Boshea*, ECF No. 433 at 10 (D. Md. Aug. 21, 2026) (citing 28 U.S.C. § 1738 and *Washington v. Pellegrini*, 125 F.4th 118, 127 (4th Cir. 2025)). The Order does not cite that ruling, and an unexplained departure from a district judge's recognition of the same order, in the same court, is a further reason the finding cannot stand.

Nor has any firm asked the Virginia courts to decide anything further. In the six months since the Custodian Order was entered, none of the three firms has appeared in the Arlington

court to seek clarification of, modification of, or relief from the Order that directs them to produce. If the firms believed the Order left their obligation in doubt, the court that entered it was open to them. They chose instead to await the outcome of John White's appeal and to tell this Court that the question belongs in Virginia.

Finally, the Order adopts former counsel's characterization that the Custodian "and his siblings are presently engaged in contentious litigation across multiple jurisdictions as to which of them controls Compass." Order at 4 (quoting ECF No. 77 at 1). No one has offered evidence of any such litigation other than the Arlington case and John White's appeal, and the Arlington court has resolved the question of control by order. The characterization is argument by the attorneys whose files are sought, and the Order treats it as a finding. The firm's own account of who controlled Compass has not been constant. In January 2023, while this action was pending, Morgan Lewis wrote to opposing counsel that Todd Mitchell was "Compass's CEO" and objected to a proposed agreement that "would have transferred operational control of Compass to Todd Mitchell, which would include authority over the lawsuit." Exhibit 1 at 1.[1] The uncertainty the firm now offers as the reason it cannot act for Compass did not prevent it from acting for Compass then. A finding adopted from the assertion of an interested non-party, against the uncontradicted judgments of two state courts, is clearly erroneous.

## II. The premise that the Custodian is "adverse to Compass" rests on the caption of a suit whose corporate authorization appears nowhere in the record.

The Order gives weight to the fact that the Custodian "was a defendant in this action, and thus a party adverse to Compass." Order at 4. The only evidence of adversity is the caption.

---

[1] Exhibit 1 was produced to the Custodian on October 29, 2026, after the Order issued. To the extent the Court reviews the Order under Rule 72(a), the Custodian relies on Exhibit 1 only as the firm's own statement on the question the Order found "contested." To the extent the Court treats the Order as dispositive in effect, the Court may receive it. Fed. R. Civ. P. 72(b)(3).

Nothing before the Court shows that this action was authorized by Compass's board of directors or by an officer empowered to bind it. Under the law of Compass's state of incorporation, that authority rests with the board. Va. Code § 13.1-673(B). The Complaint does not allege that any officer or the board authorized the action. It identifies John White as Compass's "Executive Chairman," ECF No. 1 ¶ 18, at 11, a title that appears in no Compass corporate record before the Court, and elsewhere describes him, in the past tense and by reference to an organizational chart, as having "ran the Company as CEO" and "served as Compass CEO for the longest period," *id.* ¶ 92, at 33–34. Three weeks after the Complaint was filed, Compass's annual report to the Virginia State Corporation Commission listed Todd Mitchell as Chief Executive Officer and John White only as "Owner." ECF No. 81-14 (Ex. N). In January 2023, Morgan Lewis itself described Todd Mitchell to opposing counsel as "Compass's CEO." Exhibit 1 at 1. Yet in the Fourth Circuit, Kagan Stern Marinello & Beard told the court that Compass was "led by Chief Executive Officer John White" and that John White was "the company's CEO and majority shareholder," No. 23-1324, Doc. 30 at 13, 37 (June 23, 2023); Doc. 46 at 9 (Sept. 11, 2023), and Kagan Stern and King & Spalding repeated in the petition for rehearing en banc that John White was "Compass's CEO," Doc. 51 at 6 (July 17, 2024). In February 2024 and August 2025, in this Court, John White testified for Compass "in his capacity as CEO." *Boshea*, No. ELH-21-309, ECF No. 433 at 1. Compass's counsel thus described the company's leadership differently to this Court, to the Court of Appeals, to the Commonwealth of Virginia, and to opposing counsel, as the occasion required.

The engagement itself was John White's. Morgan Lewis undertook to assist "Compass in further evaluating and seeking to settle pre-litigation its claims against Flywheel," but the engagement letter was addressed to John White, countersigned by him alone, and transmitted

with the note that it "captures the fee agreement that you and Jeff have discussed and agreed upon." ECF No. 81-15 (Ex. O) at 1, 8. "Jeff" is Jeffrey Moorad, the Morgan Lewis partner who held a Compass stock option, who had financial dealings with John White, Compass, and Tagnetics, Inc. going back to 2015, two years before he joined the firm,[2] whom the Complaint itself describes as "a long-time friend of John White," and who opened the approach to Ascential's chairman that preceded this suit. ECF No. 1 ¶ 214; ECF No. 81 at 13–14; ECF Nos. 81-3, 81-19, 81-21 (Exs. C, S, U). The question is not whether Compass was named in the engagement but whether John White, who held no office the corporation's own filings recognized, had authority to bind the corporation to a contingent-fee engagement negotiated with his own business associate, for the purpose of suing, in the corporation's name, the corporation's only other shareholders. ECF No. 73-1 (order under Va. Code § 13.1-748 on the petition of Michael White and others); No. 23-1324, Doc. 30 at 37. Nothing in the record says he did.

A defendant in a suit filed in a corporation's name by persons whose authority to use that name is nowhere shown is not adverse to the corporation. He is adverse to the people who used its name. If the suit was brought without the corporation's authority, the Custodian and Compass stand on the same side of it. The Custodian now holds the corporation's authority by court order, and the interest he asserts in this motion is the corporation's interest in its own files. There is no adversity between Compass and its court-appointed fiduciary, and the Order identifies none.

---

[2] Morgan Lewis announced Mr. Moorad's arrival as a partner on September 11, 2017. Morgan Lewis, *Jeff Moorad Joins Morgan Lewis to Lead Firm's Global Sports Industry Initiative* (Sept. 11, 2017), https://www.morganlewis.com/news/jeff-moorad-joins-morgan-lewis-to-lead-firms-global-sports-industry-initiative. His dealings with John White and Tagnetics, Inc. in 2015 and 2016 are in the record. ECF No. 81 at 13–14; ECF No. 81-21 (Ex. U). The Complaint, filed by his firm, describes him as "acting as an advisor to Compass and a long-time friend of John White." ECF No. 1 ¶ 214.

What the Order describes as a reason for caution is, on this record, the reason the files matter: they are the record of how the corporation's name came to be used in this Court, and by whom.

## III. The Court's authority over the attorneys who appeared before it, and the client's right to the file of that appearance, did not end with the judgment; the Order's refusal to exercise that authority was an abuse of discretion.

The Order states that former counsel "are not practicing before this Court in connection with this action." Order at 3. They appeared for Compass in this Court from February 2022 through the Fourth Circuit's mandate of October 8, 2024, ECF Nos. 1, 71, 72; Morgan Lewis noted the appeal, ECF No. 66, and Kagan Stern and King & Spalding briefed it. The files sought are the files of that appearance. Morgan Lewis and King & Spalding have since appeared again in this action, through counsel, to oppose the motion. ECF Nos. 76, 77, 79, 80. A court's authority over the conduct of attorneys who appeared before it, in the matter in which they appeared, does not end with the entry of judgment, and the client's right to its file is enforced by this Court's own rules. Local Rule 704 (applying the Rules of Professional Conduct adopted by the Supreme Court of Maryland); Md. Rule 19-301.16(d).

The Fourth Circuit has twice vacated a district court's denial of a motion to compel former counsel to deliver the client's file in a closed case, once with instructions to grant the motion. *United States v. Champion*, 794 F. App'x 289 (4th Cir. 2020) (per curiam) (district court "misapprehended the applicable legal principles and abused its discretion in denying" the motion; vacated and remanded with instructions to grant it); *United States v. Perez-Chach*, No. 25-6951, 2026 WL 2211215, at *1 (4th Cir. July 31, 2026) (per curiam); *see United States v. Basham*, 789 F.3d 358, 388 (4th Cir. 2015). Both were criminal cases in which the client sought the file after judgment, and neither opinion treated the closed docket as an obstacle; in each, the obligation enforced was the attorney's duty to the client under the rules of professional conduct. The Order distinguishes *Perez-Chach* on the grounds that it rested on the rule of professional

conduct rather than on ancillary jurisdiction. Order at 3. The distinction does not assist the Order. The rule of professional conduct is a rule of this Court, Local Rule 704, and it binds former counsel here as it bound counsel there. Disputes between a client and the attorneys who represented it in the case are, moreover, among the matters federal courts routinely decide as ancillary to the case, including after it has ended. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395–96 (1990); *Garcia v. Teitler*, 443 F.3d 202, 208–11 (2d Cir. 2006) (ancillary jurisdiction over a criminal defendant's fee dispute with former counsel, as an exercise of the court's authority to manage its proceedings). That the motion concerns a matter "between counsel and client," Order at 3, is a reason to decide it.

The Order's alternative ground, that the Court "declines" to exercise inherent authority as a matter of restraint, Order at 3, fares no better. The Order declined to act because it found the Custodian's authority "contested" and the Custodian "adverse" to Compass. As Parts I and II show, both findings rest on the assertions of an interested non-party rather than on the judgments and record before the Court. The Order does not address the Maryland recognition order, the Arlington court's denial of a stay, or Judge Hollander's recognition of the same Virginia order in this Court, from which it departs without explanation. *Boshea*, ECF No. 433 at 10. A discretionary refusal to act that rests on those grounds is an abuse of discretion, and under Rule 72(a) it is clearly erroneous.

Independently, the Order incorrectly limits *Chambers* in holding that "none of the circumstances the *Chambers* Court used to illustrate the scope of the inherent power are present here." Order at 3. *Chambers* lists among those circumstances the power to "vacate its own judgment upon proof that a fraud has been perpetrated upon the court," and the power to discipline attorneys who appear before it. 501 U.S. at 43–44 (citing *Hazel-Atlas Glass Co. v.*

*Hartford-Empire Co.*, 322 U.S. 238 (1944)). That authority does not expire when a case is closed. *Hazel-Atlas* was itself a proceeding to set aside a judgment years after it had become final. 322 U.S. at 244–46; *see* Fed. R. Civ. P. 60(d)(3). The Custodian's motion and reply placed before the Court evidence bearing on whether this action was such a case: a settlement presentation prepared by Morgan Lewis in April 2021, ten months before suit, framing Compass's "claims against Flywheel, Ascential, individual wrongdoers" as a vehicle for payment, ECF No. 81-2 (Ex. B); the approach to Ascential's chairman, opened by a Morgan Lewis partner who held a Compass stock option and was himself a witness to the transactions at issue, ECF No. 81-3 (Ex. C); ECF No. 81-19 (Ex. S); ECF No. 1 ¶ 214; and litigation-funding solicitations on terms that named Morgan Lewis and King & Spalding as counsel and tied the funding to their retention, ECF No. 81 at 12; ECF No. 81-5 (Ex. E). The Order does not mention any of this. It describes the motion as a matter "between counsel and client," Order at 3, when the motion is a request by the client, through its court-appointed fiduciary, for the files that will show what was done in its name before this Court.

The Order's statement that there is "no need to sanction bad-faith conduct," Order at 3, assumes the answer to the question the motion asks. The Custodian has not asked the Court to sanction anyone on the present record. He has asked for the files, which are Compass's property, so that the record can be completed. A court does not lack authority to obtain documents that would show whether its process was abused merely because it has not yet found that it was. The power to remedy a fraud on the court includes the power to find out whether one occurred: "a court has the power to conduct an independent investigation in order to determine whether it has been the victim of fraud." *Chambers*, 501 U.S. at 44 (quoting *Universal Oil Prods. Co. v. Root Refining Co.*, 328 U.S. 575, 580 (1946)).

**IV. Ancillary jurisdiction exists to vindicate the Court's authority and to effectuate its decrees, and both are implicated.**

*Kokkonen* recognizes ancillary jurisdiction "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." 511 U.S. at 380. The Order holds that there is nothing to vindicate or effectuate because the case is closed. Order at 2. But the heads of ancillary jurisdiction *Kokkonen* describes are not limited to enforcing the terms of a judgment. They include managing the Court's proceedings and vindicating its authority, and that authority is implicated whenever the Court's process has been invoked in a party's name without that party's authority, and whenever attorneys who appeared before it hold the files of that appearance against the party for whom they claim to have acted. Those are not matters "collateral" to the action. They concern how the action came to be before the Court at all.

The authority on which the Order relies does not foreclose the point. *Messer v. Garrison Investment Group, LP*, 177 F.4th 507 (4th Cir. 2026), held that a judgment creditor could not invoke ancillary jurisdiction in a new and separate action to impose liability for a federal judgment on an entity against which no judgment had been entered in the case that produced it. *Id.* at 518–19 (applying *Peacock v. Thomas*, 516 U.S. 349 (1996)). In the course of so holding, the court reaffirmed that "it is well-settled that a federal court may exercise ancillary jurisdiction to enforce its judgments," and that the Supreme Court has approved its exercise "over a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments." *Id.* at 517–18 (quoting *Marino v. Pioneer Edsel Sales, Inc.*, 349 F.3d 746, 752 (4th Cir. 2003), and *Peacock*, 516 U.S. at 356). The Custodian's motion is not a new action, seeks delivery of files rather than enforcement of the judgment against anyone, and is directed to the attorneys of record who filed this case, prosecuted it through two courts, and

hold its files. What it asks the Court to protect is the integrity of its own proceeding: whether its process was invoked in a party's name without that party's authority, and whether the officers of the Court who invoked it may withhold the record of that appearance from the party they say they represented. *Messer* does not speak to that question, and nothing in it suggests the Court lacks authority to answer it.

*Kokkonen* itself forecloses the Order's reading. The Court described its two categories as the purposes for which ancillary jurisdiction has "generally" been asserted, in a doctrine it acknowledged "can hardly be criticized for being overly rigid or precise," and it defined the second category by citing *Chambers* and *United States v. Hudson*, 11 U.S. (7 Cranch) 32, 34 (1812). 511 U.S. at 379–80. The authority to "manage its proceedings" and "vindicate its authority" is the Court's inherent authority. The Order's two conclusions, that there is no ancillary jurisdiction and no occasion for inherent authority, are therefore one conclusion, and it rests on one premise: that a dismissed case is beyond the Court's reach. The Supreme Court has held otherwise. "It is well established that a federal court may consider collateral issues after an action is no longer pending," and the determination "whether the attorney has abused the judicial process" is such an issue, one that "may be made after the principal suit has been terminated." *Cooter & Gell*, 496 U.S. at 395–96. The Fourth Circuit likewise recognizes that common-law ancillary jurisdiction "over related proceedings that are technically separate from the initial case" survives the supplemental jurisdiction statute and "remains governed by case law." *Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 363 (4th Cir. 2010). The Order treats the word "collateral" as a reason the Court cannot act; in *Cooter & Gell* the same word describes what a court may decide after judgment. The authority invoked here concerns the Court's own

proceeding and the conduct of its own bar in that proceeding; it is not a request to alter a record, or to grant relief, for reasons unconnected to the Court's functioning.

*Kokkonen* cannot be read to hold that attorneys may invoke a federal court's process in a corporation's name, on knowingly false accusations of criminal conduct against the individual defendants, members of their families, and more than a dozen other named non-parties, that the court then dismisses as conclusory, and may afterward withhold from the corporation the record of what they did in its name on the ground that the inquiry is "ancillary." Where credible evidence that the Court's process was so used is placed before it, the Court has jurisdiction to make a reasonable inquiry, and that inquiry begins with the files. This case presents that question squarely.

**V. The relief sought is Compass's own property, and no interest of former counsel is prejudiced.**

Former counsel have told the Court that they will deliver the files to a person authorized to act for Compass. Order at 4; ECF No. 79 at 2–3; ECF No. 80 at 1–2. The Custodian is that person by order of the court with exclusive jurisdiction over Compass and all its property wherever located. Va. Code § 13.1-748(A); ECF No. 73-1 ¶ 1. The client file is the client's property under the rules of this Court and of all Maryland courts. Local Rule 704; Md. Rule 19-301.16(d). Denial leaves former counsel free to continue withholding a client's files from its court-appointed fiduciary on the strength of their own professed doubt about an order two courts have entered and no court has stayed, a result broader than the position either firm took: each told the Court it would deliver the file to the person authorized to receive it.

**CONCLUSION**

The Custodian respectfully asks the Court to set aside the Memorandum Order of October 22, 2026, and to grant the motion at ECF No. 74 by ordering Morgan, Lewis & Bockius

LLP, King & Spalding LLP, Kagan Stern Marinello & Beard LLC, and the attorneys who appeared in this court to deliver to the Custodian, within fourteen days, the complete client files of Compass Marketing, Inc. in this action and in No. 23-1324 in the Fourth Circuit, including the petition for rehearing en banc, together with the engagement, authorization, billing, and litigation-funding records identified in the motion, and to identify in writing any item withheld and the basis for withholding it. In the alternative, the Custodian asks the Court to direct former counsel to deliver the files to the Clerk of this Court, to be held pending further order of this Court; or to set the matter for hearing.

Dated: November 4, 2026

Respectfully submitted,

/s/ Daniel J. White
Daniel J. White, Esq.
Court-appointed Custodian pendente lite of Compass Marketing, Inc.
D. Md. Bar No. 21937
Md. AIS No. 0201030014
Va. State Bar No. 98775
Post Office Box 1760, Leonardtown, Maryland 20650
Telephone: 240-298-8156
daniel.white@danielwhite.law

**Index of Exhibits**

Exhibit 1: Letter of Troy Brown, Morgan, Lewis & Bockius LLP, to Stewart Webb, Venable LLP, January 23, 2023 (Compass Marketing, Inc. records) (cited in Parts I and II)

**CERTIFICATE OF SERVICE**

I certify that on November 4, 2026, the foregoing Objections, with Exhibit 1, were filed with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record, including George Hazel, Esq., Gibson, Dunn & Crutcher LLP, counsel for Morgan, Lewis & Bockius LLP, and Mark Brown, Esq., King & Spalding LLP. A copy was also sent by electronic mail to Stephen Stern, Esq., Michael Marinello, Esq., and Meagan Borgerson, Esq., Kagan Stern Marinello & Beard, LLC, which has not appeared in this action.

/s/ Daniel J. White
Daniel J. White